IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>       Plaintiff,<br><br>v.<br><br>WERNER ENTERPRISES, INC.,<br><br>       Defendant;<br><br>and<br><br>ANDREW DEUSCHLE,<br><br>       Plaintiff Intervenor,<br><br>v.<br><br>WERNER ENTERPRISES, INC.,<br><br>       Defendant. | **CASE NO.: 8:18CV329**<br><br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF STEVEN ARNDT AND PORTIONS OF THE EXPERT TESTIMONY OF DON OLDS** |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>       Plaintiff,<br><br>v.<br><br>DRIVERS MANAGEMENT, LLC and WERNER ENTERPRISES, INC.,<br><br>       Defendants. | **CASE NO.: 8:18CV462**<br><br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF STEVEN ARNDT AND PORTIONS OF THE EXPERT TESTIMONY OF DON OLDS** |

**I.   INTRODUCTION**

    In this employment discrimination case, the only disputed issue relevant to the instant motion is whether there was any means by which Intervenor Andrew Deuschle and Victor Robinson, both of whom are totally deaf, could have safely communicated

with their driver trainers while in the observed over-the-road driving portion of Werner's placement driver program for new and inexperienced truck drivers.[1] Werner contends that it could not identify any method by which Deuschle and Robinson could have communicated with their driver trainers without diverting their eyes from the road, thereby creating a hazardous situation for themselves, their driver trainers, and the motoring public. Plaintiffs disagree. Although the issue in dispute is narrow, Plaintiffs seek to offer testimony by driver trainer Don Olds ("Olds") on a number of broad-ranging topics that are wholly irrelevant to the issues of whether, and if so, how Deuschle and Robinson could have safely communicated with their driver trainers while traveling over the road. In addition, Plaintiffs intend to offer cumulative opinions in which Plaintiffs' expert Steven Arndt ("Arndt") acts as a mouthpiece to repeat Olds' opinions. Because the opinions to be offered by Plaintiffs' experts are not relevant to the narrow issue to be determined in this case, do not meet the standards for admissible expert testimony, and are cumulative, Werner's Motion to Exclude the Expert Testimony of Arndt and portions of the Expert Testimony of Olds should be granted.

**II.     ARGUMENT**

    **A.     Olds' Opinions A, B, C, and Portions of Olds' Opinion D in Olds' Report and Opinions A, B, and C in Olds' Rebuttal Report are not relevant to the limited issues in this case.**

The majority of Olds' opinions are not relevant to the narrow issue in this case: whether Werner could have safely accommodated Deuschle's and Robinson's disability during the over-the-road driving portion of Werner's placement driver program, without undue burden. (See Filing 246-2,[2] Deposition of Jaime Maus ("Maus Depo.") 123:3-124:16). Although Plaintiffs argue Olds should be permitted to testify about topics *other than* Deuschle's and Robinson's ability to communicate during the over-the-road portion of the training program, Plaintiffs never explain why Olds' opinions on those issues are

---

[1] Although the EEOC has also asserted a claim regarding an alleged facially unlawful policy and an alleged unlawful question on an old version of Werner's employment application, Plaintiffs' experts do not address those claims so they are not relevant to the instant motion.

[2] All references to filing numbers herein are to Lead Case 8:18-CV-329, unless otherwise indicated.

2

relevant to the narrow issue in dispute or would help the jury determine any fact in issue. (See generally Filing 254 (hereinafter "Plaintiffs' Brief"), pp. 3-8). Contrary to Plaintiffs' unsupported arguments, whether Deuschle and Robinson satisfied the minimum hiring requirements under the Federal Motor Carrier Safety Regulations ("FMCSR"), completed basic CDL training before they applied to Werner, or are capable of performing other essential trucking duties has no bearing on whether and if so, how, they could safely communicate with their driver trainers during the observed over-the-road driving portion of Werner's placement driver program.

Similarly, Olds' opinions about how *experienced* drivers may perform their jobs **after** completing the placement driver program has no bearing on whether an *inexperienced* driver (like Deuschle and Robinson were at the time they applied to Werner) can effectively communicate with a trainer during the observed over-the-road portion of driver training. Because an experienced driver does not have a trainer in the cab, the experienced driver does not have any need to communicate with someone in the passenger seat. As a result, unlike when a placement driver is traveling with a trainer, there is no concern that an experienced driver who is driving solo will be required to divert his eyes from the road in order to communicate.

Likewise, Olds' opinions that deaf drivers are generally "less distracted" or "no more prone to make mistakes" when compared with hearing drivers have no bearing on the issues that must be determined by the jury and nothing to do with Werner's over-the-road training. (Plaintiffs' Brief, p. 5, 18). To the contrary, this Court has already **rejected** Plaintiffs' attempt to portray the hiring decisions in this case as affecting "deaf drivers" in general and has recognized this is not a pattern and practice case. (Filing No. 228, Order, p. 8). Consistent with the Court's conclusions in that regard, testimony about whether deaf drivers in general are more or less distracted or more or less prone to mistakes as compared to hearing drivers when operating a CMV is not relevant to the narrow issue in dispute: whether Deuschle and Robinson could have safely communicated with their driver trainers when completing the over-the-road portion of the placement driver program as inexperienced drivers.

In a misguided effort to establish relevance where none exists, Plaintiffs incorrectly suggest Werner has taken the position that Deuschle and Robinson were

3

generally unable to operate commercial motor vehicles. (Compare Plaintiffs' Brief, p. 6 with Maus Depo. 124:4-16). Plaintiffs are wrong. Contrary to this unsupported argument, this Court already recognized that it is Werner's position that it did not hire Deuschle and Robinson because Werner could not safely accommodate their disability in a way that would enable Deuschle and Robinson *to complete Werner's training program*. (Filing No. 228, Order, p. 8). Similarly, Jaime Maus ("Maus"), Werner's Vice President of Safety and Compliance and Terminal Management, confirmed during her deposition that Robinson would have been hired if he had at least 6 months of previous verifiable experience (e.g., sufficient experience to bypass the placement driver program) and met the other basic hiring criteria, such as a clean motor vehicle record and background check. (Maus Depo. 123:3-124:3). Specifically, Maus testified as follows:

> Q. And is the reason that you're saying that· he -- he -- that a -- a -- a deaf commercial truck driver with multiple years of experience who otherwise meets all of Werner's qualifications that you just listed, is the reason that that person could be hired without -- without having to be reasonably accommodated in the way that you've described is because they wouldn't have to go through the over-the-road training program?
> A. That is correct.
> Q. **So the only barrier to entry is the over-the-road training program?**
> A. **Yes**.

(Maus Depo. 124:4-16) (emphasis added). As this testimony confirms, Werner has *not* taken the position that Deuschle and Robinson were generally incapable of operating commercial motor vehicles. It is undisputed that both men had their commercial drivers' licenses when they applied to Werner. Werner's position is simply that it was unable to identify any means by which Deuschle and Robinson could have safely communicated with their driver trainers during the observed over-the-road driving portion of Werner's placement driver program, without diverting their eyes from the road. Plaintiffs cannot establish the relevance of their proffered expert testimony by misstating Werner's position in this lawsuit.

Plaintiffs are also wrong when they argue that Olds' opinions will assist the jury in determining whether Werner's placement driver training program is an "essential

function" of the job. Olds has never opined about whether Werner's training is an essential function of the job, so he cannot testify to that issue at trial. (Compare Plaintiffs' Brief, p. 7 n.2 with Olds' Report).

### B. Olds is not qualified to opine as to another expert's alleged "bias," which is not a proper topic for expert testimony.

Although Plaintiffs intend to offer expert opinions regarding alleged "bias" Olds believe is held by Werner's expert witness William Adams, Plaintiffs provide **no** authority whatsoever to support their argument that Olds' "bias" opinion is admissible. Although Plaintiffs vaguely assert that Olds' rebuttal opinions are "clearly" within his experience and expertise, they do not explain how his experience in the trucking industry renders him qualified to opine that Werner's expert is "biased" and "close minded." To the contrary, because Olds clearly has no qualifications to render such opinions and his personal beliefs regarding Werner's expert's alleged state of mind are not the proper subject for expert testimony, Olds' rebuttal opinions should also be excluded. See Fed. R. Evid. 702; Hartle v. Firstenergy Generation Corp., 7 F. Supp. 3d 510, 526 (W.D. Pa. 2014) (excluding an expert's opinion that another expert was biased because an "[e]xpert opinion about the credibility of other witnesses generally is not helpful as it undermines the jury's credibility-finding function").

### C. Olds' opinions regarding the Blake case are not relevant and lack foundation.

Plaintiffs again misstate the record when they argue that Olds' opinions regarding the Blake case are relevant and admissible. Contrary to Plaintiffs' unsupported arguments, Werner is not relying on the Blake case and has *never* argued that Blake is relevant to its defense in this lawsuit in any way. The Blake case did not even involve a deaf driver. Accordingly, Olds' purported opinions about the Blake case do not reasonably bear on the issues of whether, and if so, how, Deuschle and Robinson could safely complete the over-the-road portion of Werner's placement driver program.

In response to these irrefutable facts, Plaintiffs incorrectly argue Maus identified the Blake case as evidence that "training deaf drivers could 'lead to potential serious injury or catastrophic loss,'" disingenuously fault Maus for "barely" recalling the name of that case, and then bizarrely suggest that Olds' opinions regarding the Blake case will help the jury determine whether Werner's proffered safety concerns were real or

5

pretextual. Plaintiffs are just wrong. Contrary to Plaintiffs' unsupported arguments, Maus identified the Blake case in response to a specific question by counsel regarding accidents. However, Maus did not testify regarding the facts of the Blake case, did not suggest the Blake case was relevant to this dispute, and did not testify that the Blake case had to do with deaf drivers (which it did not). (See generally Maus Depo. pp. 190-196). Moreover, it should come as no surprise that Maus was not prepared to discuss the Blake case or other accident cases because Plaintiffs ***never requested Rule 30(b)(6) deposition testimony about the Blake case or any other accident involving a Werner driver***. (Maus Depo. 9:25-10:21 & Exhibit 1 to Maus Depo.). Maus was asked to testify about certain topics on Plaintiffs' Rule 30(b)(6) Notice, ***none of which addressed the Blake case or other lawsuits or accidents.*** (Id.). Accordingly, Plaintiffs are simply wrong when they suggest that Maus' inability to recall details about the Blake case suggests that Werner's safety concerns regarding Deuschle and Robinson are pretextual. Because the Blake case did not even involve a deaf driver and Werner has never relied on the Blake case in this lawsuit, Olds' opinions about the Blake case are irrelevant and inadmissible.

Plaintiffs also ignore the fact that Olds lacks foundational knowledge regarding the Blake case. Plaintiffs do not dispute that Olds' purported knowledge of that case is based entirely upon his review of a single advertising report prepared by a third-party legal services vendor, which was provided to him by counsel for Plaintiff EEOC. (Olds' Report, p. 24, n. 32 ("Summary of Blake accident, https://tellthewinningstory.com/wp-content/uploads/2018/06/Blake-Case-Tell-The-Winning-Story.pdf (2018)"). Olds does not purport to have personal knowledge about the Blake case and Plaintiffs have not made any showing that this advertising report is the type of record reasonably relied upon by experts in Olds' field, as required for the admission of expert testimony. Fed. R. Evid. 703. Accordingly, in addition to being irrelevant, Olds' testimony about the Blake case should be excluded because his opinions are based entirely on inadmissible and unreliable hearsay and Olds has no personal knowledge regarding the Blake case. Fed. R. Evid. 703; Fed. R. Evid. 602; Fed. R. Evid. 802.

6

### D. Werner was not required to depose Olds to learn about his undisclosed opinions.

Plaintiffs are also wrong when they suggest that because Werner did not depose Olds, Olds should be allowed to offer opinions that were not disclosed in his report. Contrary to Plaintiffs' argument, Plaintiffs were required by Rule 26 to provide a ***complete*** statement of ***all*** opinions by Olds. Fed. R. Civ. P. 26(b)(2)(B)(i) (emphasis added). Plaintiffs' argument is contrary to case law from this District, which confirms that Werner was not required to depose Olds in order to learn the content of his opinions. See Circle R, Inc. v. Trail King Indus., No. 8:98CV281, 1999 U.S. Dist. LEXIS 23533, at *10-11 (D. Neb. Aug. 11, 1999) (recognizing that the complete expert report required under the revisions to Rule 26 "may eliminate the need for a deposition" and reasoning that a defendant's choice to depose the plaintiff's expert did not excuse the plaintiff's failure to provide a complete expert report) (internal citation omitted). Consistent with these authorities, Plaintiffs were required to disclose the bases and reasons for Olds' opinions in his report and Olds should not be permitted to testify to opinions he has not disclosed in his Reports.

### E. Allowing Olds' irrelevant expert testimony would be unfairly prejudicial to Werner.

Plaintiffs make no attempt to refute Werner's argument that Werner will be unfairly prejudiced if Olds is permitted to testify to the broad and irrelevant topics in his report having nothing to do with Deuschle's and Robinson's ability to communicate with a trainer while driving over-the-road. (See generally Plaintiffs' Brief). Although Plaintiffs ignore that argument, the Rule 403 analysis is particularly important for expert testimony because of the significant potential that a jury will be misled by expert testimony. See Daubert, 509 U.S. at 595; Vance, 2004 U.S. Dist. LEXIS 31168 at *11-12. Here, introducing "expert" testimony about other driving-related minimum requirements that Deuschle and Robinson indisputably meet would confuse the jury regarding the disputed issues in the case and unfairly prejudice Werner by incorrectly suggesting Plaintiffs can established that Deuschle and Robinson were qualified for the position merely by establishing that Deuschle and Robinson could meet *different* driving requirements that do not involve non-verbal communications while driving. Fed. R. Evid. 403; see also Kline v. City of Kan. City, 175 F.3d 660, 666 (8th Cir. 1999) (affirming

exclusion of evidence that "had little or no probative value but did present a substantial risk of confusion of the issues and unfair prejudice"). In light of the significant potential for unfair prejudice to Werner, Olds' irrelevant opinions should be excluded.

### F. Arndt's testimony is unreliable because it is not supported by any expert rationale or analysis.

Arndt's testimony in this case should be excluded because his opinions are unreliable and not supported by his so-called "human factors" expertise. Although Plaintiffs tout Arndt's background as a basis for denying Werner's motion, they ignore the fact that Arndt fails to explain *how* his so-called expertise informs his opinions in this case. Plaintiffs are simply wrong when they conclude, without explanation, that Arndt "bases his opinions" on his expertise: **nowhere** in his report does Arndt provide *any* rationale connecting his opinions to his human factors background. (Plaintiffs' Brief, p. 14 (citing Arndt Report, p. 7-46)). Arndt must do much more than state his credentials and his conclusions. He must **connect** his "years of training, education, and experience […] to [his] opinions and testimony in this case." Elbert v. Am. Colloid Co., No. 20-CV-3-J, 2022 U.S. Dist. LEXIS 74043, at *29-30 (D. Wyo. Mar. 11, 2022) (internal citations omitted); see also Rodewald v. Wisconsin Cent., Ltd., No. 20-CV-843-JDP, 2022 U.S. Dist. LEXIS 46417, *24 (W.D. Wis. Mar. 16, 2022) (admitting Arndt's testimony only after concluding that Arndt had created a model of the crash scenario and "provided a detailed explanation of the methodology and data that he used in reaching his opinions, and his reasons for choosing particular methods and data"). Because he fails to provide any rationale "showing the path from the facts to [his] opinions" here, Arndt's opinions are "valueless" and should be excluded. Elbert v. Am. Colloid Co., No. 20-CV-3-J, 2022 U.S. Dist. LEXIS 74043, at *29-30 (D. Wyo. Mar. 11, 2022) (internal citations omitted).

These failures do not merely go to the weight of Arndt's testimony or his credibility, as Plaintiffs incorrectly argue. (See Plaintiffs' Brief, p. 13). If an expert's opinion is fundamentally unsupported, it can offer no assistance to the jury and must be excluded. GE v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Plaintiffs are also incorrect when they argue Arndt makes "measurable scientific findings regarding how long certain activities actually require drivers to take their eyes off the road." To the contrary, Arndt's report contains no such "measurable scientific findings." Although Arndt concedes that a driver glancing away from the road for more than 1.5 seconds poses a "high risk," he does not make or cite any "measureable scientific findings" regarding **how long** it would take to effectively communicate through the non-verbal signals he suggested Werner could use, all of which require the driver to look away from the road. (See generally Arndt Report & Arndt Report at p. 65).

Plaintiffs are also just wrong when they argue Werner has taken contradictory positions that (1) only an experienced CDL-holder may opine regarding driver distractions, on the one hand; and (2) an ordinary juror can understand driver distractions, on the other hand. (Plaintiffs' Brief, p. 14 n.3). Contrary to Plaintiffs' distorted interpretation, Werner argued that because Arndt has no experience driving a commercial motor vehicle, Arndt is no more qualified than the average juror to make determinations regarding the potential for driver distraction during the observed over-the-road portion of Werner's placement driver program. As a result, Arndt's purported "expert" testimony is not helpful to the trier of fact and is therefore inadmissible, because the average lay person already understands driver distraction issues from every day experience and Arndt is no better suited than the average lay person to opine on those issues. See United States v. Clapp, 46 F.3d 795, 802 (8th Cir. 1995) (expert testimony that is within "the ken of people of ordinary experience" is not needed and should be excluded); Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 883 (8th Cir. 1998) (expert testimony is "not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury"). Because Plaintiffs cannot refute this argument, they pretend to misunderstand it.

### G.    Arndt's testimony on different topics in different cases does not factor into the Rule 702 analysis here.

Next, Plaintiffs ask this Court to deny Werner's Daubert motion because Arndt has testified as an expert in other cases. Contrary to Plaintiffs' unsupported argument, this Court should not rubber stamp Arndt as an expert in this case simply because he has testified in other cases. As outlined below, a brief review of the other cases in which

9

Arndt has testified confirms that his testimony did not address deaf drivers or how an inexperienced deaf driver would communicate while driving over-the-road:

| Topic of Testimony | Case |
|---|---|
| Whether a driver had sufficient visual and auditory cues to inform him of an oncoming train based on circumstances present at the time of the accident | Rodewald v. Wisconsin Cent., Ltd., No. 20-CV-843-JDP, 2022 U.S. Dist. LEXIS 46417 (W.D. Wis. Mar. 16, 2022) & Filing Nos. 164-1 (3/7/2022) & 211 (3/27/2022) in Case No. No. 20-CV-843-JDP |
| The flammability hazard associated with natural gas in the home and safety implications of the use of natural gas in the home | Alexander v. Mont.-Dakota Utils. Co., No. CV-18-82-GF-BMM, 2020 U.S. Dist. LEXIS 197784, at *15-16 (D. Mont. Oct. 23, 2020) & Filing No. 53-2 (7/13/2020) in Case No. CV-18-82-GF-BMM |
| The mechanics and cause of a trip-and-fall accident resulting in personal injury to the plaintiff | Bennett v. William Beaumont Hosp., No. 342238, 2019 Mich. App. LEXIS 401, *6-8 (Ct. App. Feb. 26, 2019). |
| Whether the defendant could avoid colliding with the decedent's car based on the specific conditions existing at the time of the accident | Pennington v. UPS Ground Freight, Inc., No. 3:16-CV-00248-NBB-JMV, 2018 U.S. Dist. LEXIS 66327, *2-5 (N.D. Miss. Apr. 18, 2018). |
| The design and manufacturing risks associated with the defendant's lock screw assembly | Chesapeake La., L.P. v. Innovative Wellsite Sys., No. 12-2963, 2014 U.S. Dist. LEXIS 124602, at *4 (W.D. La. Sep. 5, 2014). |
| The design defects of a Ford Explorer Sport | Vega v. Ford Motor Co., No. EP-11-CA-450-FM, 2013 U.S. Dist. LEXIS 169019, *7 (W.D. Tex. Apr. 3, 2013). |
| The directional stability and control of the plaintiff's vehicle during and after a tread detachment event resulting in an automobile accident | Trenado v. Cooper Tire & Rubber Co., No. 4:08-cv-249, 2010 U.S. Dist. LEXIS 160764, *3-4 (S.D. Tex. Jan. 6, 2010). |
| The adequacy of the labeling and instructional material provided with firefighting gear | Cushing v. Morning Pride Mfg., L.L.C., Civil Action No. 05-3612, 2008 U.S. Dist. LEXIS 6914, *25 (E.D.N.Y. Jan. 30, 2008). |

Because the admissibility of expert testimony must be determined based on the facts of the case and with respect to the "task at hand," other cases in which Arndt has testified about different topics do not establish that Arndt is qualified to testify as an expert in this case. See Fed. R. Evid. 702; Russell v. Whirlpool Corp., 702 F.3d 450, 456 (8th Cir. 2012) (quoting Kumho Tire, 536 U.S. at 141 (in its role as "gatekeeper," the district court must "ensur[e] that an expert's testimony…is relevant to the task at hand")). Quite the contrary. The fact that Arndt has given purported expert testimony on such a wide variety of topics simply confirms that Arndt is precisely the type of "'all purpose' expert" which courts routinely exclude: he "**resemble[s] the old time 'jack of all trades'; 'he is master of none**.'" Calvit v. P&G Mfg. Co., 207 F. Supp. 2d 527, 528-29 (M.D. La. 2002) (emphasis added).

Plaintiffs are also incorrect when they argue Arndt may opine as an expert regarding the ADA and the case law to which they cite says nothing of the sort. (Plaintiffs' Brief, p. 13, 15). For example, the Camacho court simply held that an *attorney* who was an "*expert in securities law*" could testify about standard language for the issuance of a new security. Camacho v. Nationwide Mut. Ins. Co., 13 F. Supp. 3d 1343, 1366 (N.D. Ga. 2014) (internal citations omitted) (emphasis added) citing Huddleston v. Herman & MacLean, 640 F.2d 534, 552 (5th Cir. 1981), modified on other grounds, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983)). Specifically, that court concluded that a "***passing reference*** to a legal principle or assumption in an effort to place [the expert's] opinions in some sort of context will not justify the outright exclusion of the expert's [testimony] in its entirety[.]" Id. The Camacho court did not condone an uninformed "broad discourse over the range of applicable law," as Plaintiffs incorrectly argue. See also Sabata v. Neb. Dep't of Corr. Servs., 337 F.R.D. 215, 230 (D. Neb. 2020) (permitting expert testimony about facts and practices regarding the defendant's grievance procedure but prohibiting testimony on "whether federal law was contravened"); Denoewer v. UCO Indus., No. 2:17-cv-0660, 2019 U.S. Dist. LEXIS 239790, at *10-11 (S.D. Ohio Sep. 29, 2019) (permitting experts to testify to legal terms that were "within the experts' professional vernacular"). By contrast, Arndt is not a lawyer or other legal expert and does not purport to have any experience or expertise in the ADA, deafness/hardness-of-hearing, disability accommodations, or communication

11

in general. (See generally Arndt Report & Plaintiffs' Brief). Accordingly, Arndt's unsupported legal opinions should be excluded.

### H. Arndt's testimony should also be excluded because it is cumulative of Olds' testimony.

Next, Plaintiffs misstate their own expert's opinions in a weak attempt to refute Werner's argument that Arndt's opinions are cumulative of Olds' opinions. Despite Plaintiffs' efforts at misdirection, the cumulative nature of Arndt's opinions could not be more obvious. In his report, Arndt first explains that he observed Olds in order to reach his conclusions and then recommends the exact same type of accommodations proposed by Olds. In an effort to avoid this inconvenient truth, Plaintiffs incorrectly argue that Arndt recommends "different accommodations[.]". (Plaintiffs' Brief, p. 17 (citing Arndt's Report at pp. 18-19, 27, 39-40, 50, and 66)). Plaintiffs are simply wrong. The only examples of reasonable accommodations that Arndt identifies as viable options for in-cab communications are allocating extra time before driving to establish "ground rules" of communications, communicating through established hand gestures, signs or graphic displays signs while driving, and instructing the driver to stop and pull over – the very same strategies advocated by Olds. (Compare Arndt Report, p. 50, 66-67 with Olds Report at pp. 19-24). While Arndt's Report listed other accommodations generally available to compensate for "lack of auditability," such as voicemail transcription and vibrating pagers, his opinion regarding the accommodations that could have been used by Werner **does not include any reference to such devices**. (Compare Arndt Report, pp. 18-19, 27) (listing general devices available in 2014-2016); with pp. 50 et seq. (limiting proposed reasonable accommodations to those proffered by Olds: extra time to plan and visual or graphical cues)).

Plaintiffs also weakly argue Arndt's testimony is not cumulative because Arndt's background differs from Olds' background. Contrary to Plaintiffs' argument, it is plainly apparent that Arndt is nothing more than a mouthpiece for Olds because Arndt determined the accommodations proposed in his Report *by watching Olds*. (See, e.g., Arndt Report, p. 53-54). By contrast, none of the cases cited by Plaintiffs involved one expert who *simply observed another expert and then relied on those observations to reach the same conclusions offered by the other expert*. (Plaintiffs' Brief, p. 17). Accordingly, those cases are not helpful here.

12

Plaintiffs are also just wrong when they suggest the Elbert ruling excluding duplicative expert testimony was based solely on a local rule. (Plaintiffs' Brief, p. 18). Elbert v. Am. Colloid Co., No. 20-CV-3-J, 2022 U.S. Dist. LEXIS 74043, at *20 (D. Wyo. Mar. 11, 2022). The Elbert court expressly reasoned that the duplicative expert testimony at issue was inadmissible under Rule 403, stating, "[a]llowing both [experts] to testify regarding the same issues would not only be cumulative and duplicative but would prejudice Defendants by allowing the jury to hear the same or similar testimony from two experts," which would "unfairly bolster each expert's testimony." Elbert, 2022 U.S. Dist. LEXIS 74043, at *20. Like the prejudicial and cumulative testimony in Elbert, Arndt's testimony should be excluded. Id.

### III.  CONCLUSION

For the foregoing reasons and those stated in Werner's opening Brief, Werner respectfully asks this Court to grant its motion in limine and exclude from evidence portions of the testimony of Olds related to Opinions A, B, C, D(1), D(2)(a), and D(3)(d)(iii) of Olds' Report; and Opinions A, B, and C of Olds' Rebuttal Report; exclude from evidence the testimony and opinions of Steven Arndt in their entirety; exclude from evidence any expert opinions not disclosed in Olds' Reports or Arndt's Reports; and prohibit Plaintiffs, their counsel, and any other witnesses from mentioning, making reference to, eliciting testimony regarding, or offering evidence of the excluded opinions and testimony.

DATED this 16th day of September, 2022.

        WERNER ENTERPRISES, INC. and
        DRIVERS MANAGEMENT, LLC,
        Defendants.


By: */s/ Sarah L. (Sally) McGill*
    Patrick J. Barrett, #17246
    Elizabeth A. Culhane, #23632
    Sarah L. (Sally) McGill, #24790
    FRASER STRYKER PC LLO
    500 Energy Plaza
    409 South 17th Street
    Omaha, NE 68102-2663
    Telephone: (402) 341-6000
    Facsimile: (402) 341-8290
    pbarrett@fraserstryker.com
    eculhane@fraserstryker.com
    smcgill@fraserstryker.com
    WERNER ENTERPRISES, INC. and
    DRIVERS MANAGEMENT, LLC,
    Defendants

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the word limit set forth in NECIVR 7.1(d)(1)(A) because it contains 4,805 words. The undersigned further certifies that the word-count function of Microsoft Word was applied to include all text, including the caption, headings, footnotes, and quotations.

/s/ Sarah L. (Sally) McGill

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the United States District Court for the District Court of Nebraska using the CM/ECF system on this 16th day of September, 2022, which system sent notification of all parties' counsel of record.

/s/ Sarah L. (Sally) McGill

2883778.06