IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                Plaintiff,<br><br>vs.<br><br>DRIVERS MANAGEMENT, LLC,<br>and WERNER ENTERPRISES, INC.<br><br>                Defendants. | 8:18-CV-462<br><br>MEMORANDUM AND ORDER |

This matter comes before the Court on both parties' motions in limine (filing 278, filing 282, filing 290). For the convenience of the parties, the Court has organized this Order into three categories of motions – the first of which are uncontested and will all be granted, the second of which will all be overruled without prejudice and may be reasserted if or as needed at trial, and the final the Court will handle in the ways described below.

I. UNCONTESTED MOTIONS

The plaintiff's #9, 12, 13, 21, and 24 are uncontested and granted. The defendants' #7, 8, 11, 12, 13, 15 are uncontested and granted.

II. OVERRULED WITHOUT PREJUDICE

Several of the parties' motions will be better adjudicated during the trial. Based on the briefs and assurances made by both parties, these motions do not raise an issue of unfair prejudice and the Court does not consider it prudent to rule on these matters prior to hearing the evidence. The plaintiff's #11, 14, 16,

22, and 23, and the defendants' #10, 14, and 16, are overruled without prejudice and may be reasserted if needed during the trial.

## III. OTHER MOTIONS

### PLAINTIFF'S MOTIONS
#### Plaintiff's #1: Medical Records

The plaintiff seeks to exclude some of Victor Robinson's medical records related to his high blood pressure and counseling he received. The plaintiff argues these records are excludable under both Fed. R. Evid. 401 and 403 as irrelevant or, if relevant, unfairly prejudicial. The plaintiff also argues that Robinson's psychiatric records are privileged. The defendants assert that Robinson has waived any privilege, and the documents are relevant to Robinson's claim for damages for emotional distress.

The plaintiff has indicated it does not intend to produce evidence at trial related to Robinson's blood pressure as support for its claim for emotional distress. It follows that the defendants could not introduce evidence of that physical manifestation of his emotional distress. The defendants may question Robinson about any alleged inconsistent statements regarding whether the rejection from Werner raised his blood pressure, but they cannot introduce extrinsic evidence to prove the inconsistent statements. Fed. R. Evid. 608(b). The plaintiff's motion regarding the blood pressure medical records is therefore granted.[1]

---

[1] But, if the plaintiff inquires about the effect Werner's rejection had on Robinson's blood pressure, the issue would not be collateral, and the defendants could introduce the medical records. *See Batiste-Davis v. Lincare, Inc.,* 526 F.3d 377, 381 (8th Cir. 2008).

Other counseling records are not collateral, however, and may be admitted. By seeking damages for emotional distress, Robinson has put his medical condition at issue, and has waived the psychotherapist-patient privilege. *See Batiste-Davis,* 526 F.3d at 381 (citing *Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir. 2000).

If the plaintiff introduces evidence, including any testimony, as to physical pain or emotional suffering, the defendants can counter with their own evidence. The plaintiff argues this case is distinguishable and the privilege has not been waived because the plaintiff is only seeking damages for "garden variety emotional distress," rather than damages related to a diagnosis of post-traumatic stress disorder as alleged in *Batiste-Davis* or "extreme emotional distress" as alleged in *Schoffstall*. The Court will cabin the admissible evidence within the framework of the types of emotional damages claimed by the plaintiff. In this respect, the plaintiff's motion is overruled without prejudice to be reasserted if needed at trial.

<u>Plaintiff's #2, 7, 8: Robinson's Job Performance at Other Companies</u>

The plaintiff seeks to exclude references to accidents in which Robinson was involved and references to Robinson's job performance at companies he worked at after Werner failed to hire him. According to the plaintiff, these issues "did not occur during his truck driver training," and so they are irrelevant and excludable under Rule 401. Further, the plaintiff argues that such evidence is excludable under Rule 403 due to the danger of confusing the issue in this trial with "broader issue of the safety of deaf truck drivers generally." Filing 283 at 4. The Court agrees.

The accidents are relevant to the issue of backpay. But for reasons explained below, evidence of the accidents will not be admitted in front of the jury for this purpose because the Court, not the jury, will determine whether

3

and in what amount Robinson is entitled to backpay. And the post-rejection accidents could not have effected whether Werner was reasonable in its decision not to hire Robinson.

Under Fed. R. Evid. 403, the Court finds that the relevance and probative value, if any, of Robinson's subsequent job performance is outweighed by the risk of confusing the issues, undue delay, and wasting time. Asking about the various accidents will devolve into examinations of each accident, who was at fault, what could have been done to prevent it, etc. Ultimately, the accidents have little relevance to the subjects about which Robinson will testify – his personal experience with Werner, and his experience and knowledge about how trucking companies train deaf drivers. Further, evidence of Robinson's performance with subsequent employers, including personnel files, are also irrelevant and inadmissible.

However, Werner is welcome to inquire as to any accidents or issues which occurred while Robinson was in training, because this is relevant to Werner's safety arguments. Therefore, the plaintiffs' motions on these issue is granted, except as to any accidents which occurred while Robinson was in training.

### Plaintiff's #3 / Defendants' #5: References to Deuschle Case

The plaintiff seeks to exclude the outcome and verdict of the related case tried by this Court earlier this year, *E.E.O.C. and Andrew Deuschle v. Werner Enterprises*, case no. 8:18-cv-329. Filing 282 at 1. The defendants seek to exclude "[e]vidence of or reference to claims brought against Werner" in the *Deuschle* case, "including but not limited to any reference to the currently-pending Count III. . . except if Andrew Deuschle is called," in which case the defendants want to reference the lawsuit as it relates to Deuschle's bias and credibility. Filing 278 at 1. Both motions will be granted.

4

A jury's verdict is not evidence. *Anderson v. Genuine Parts Co., Inc.,* 128 F.3d 1267, 1272 (8th Cir. 1997). "Rather, a jury's verdict simply represents findings of fact, based on the evidence presented to it." *Id.* The plaintiff may present facts surrounding Werner's treatment of Deuschle. *Id.* And Deuschle's involvement in a lawsuit against one of the defendants is fair game for impeachment. But the verdict itself is not evidence, and may not be referenced, nor may the plaintiff inquire as to discrimination lawsuits filed against the defendants. If either party needs to reference the *Deuschle* case for impeachment purposes, the parties shall refer to the case as "another proceeding." *Anderson,* 128 F.3d at 1272 n.4.

### Plaintiff's #4: Jamie Hamm's Research

The plaintiff asserts that Jamie Hamm has not been identified as an expert and should not be permitted to testify regarding "her work with industry groups, including the FMCSA, her limited search of scientific literature, and speaking with an unidentified employee of the Nebraska Department of Transportation," which allegedly informed her decision not to hire Robinson. Filing 283 at 6.

Lay witnesses may opine as to their personal knowledge or perception acquired through their industry experience. *E.g., Burlington N. R.R. Co. v. State of Neb.,* 802 F.2d 994, 1004 (8th Cir. 1986). The alleged deficiencies in Hamm's decision-making process do not merit excluding that evidence because these deficiencies can be contested on cross-examination. The Court will allow Hamm to testify as to the reasons behind her decision not to hire Robinson – and will allow the plaintiff to cross-examine regarding any shortcomings it sees

5

in her research, rationale, or credentials in making the hiring decision.[2] *See Hartzell Mfg., Inc. v. Am. Chem. Tech., Inc.,* 899 F.Supp. 405, 409 (D. Minn. 1995).

Notably, the statements and documents on which Hamm relied are hearsay, and may only be referenced as to their effect on Hamm's decision, and may not be offered for their truth.

### Plaintiff's #5, 10: Reasons for Not Hiring Robinson

The plaintiff argues that the defendants should be precluded from arguing that Werner failed to hire Robinson for any reason other than his deafness. It is unclear to the Court what, in particular, the plaintiff seeks to exclude or prevent, and so these motions are overruled without prejudice to be reasserted at trial.

### Plaintiff's #6, 7, 8, and Supplemental: Backpay

In a reversal of positions from the previous trial, the plaintiff seeks to prevent the jury from hearing evidence of backpay and mitigation while the defendants seek to introduce it. Whether, and in what amount, Robinson is entitled to backpay is an issue for the Court to decide. *See Pedigo v. P.A.M. Transp., Inc.,* 60 F.3d 1300, 1303 (8th Cir. 1995); *see also Maitland v. Univ. of Minn.,* 155 F.3d 1013, 1018 (8th Cir. 1998). The Court determined in the *Deuschle* case that it would submit the backpay issue to the jury in an advisory capacity, in the interests of judicial efficiency and because the backpay compensatory damages would be relevant to any award of punitive damages. The Court is solely responsible for managing efficiency.

---

[2] This line of questioning may also support a punitive damages award because it is relevant to whether Werner's decision not to hire Robinson was made in good faith.

6

In this case, the backpay and mitigation issue is more contentious than the *Deuschle* case. It is therefore proper and more efficient for the Court to determine these issues following the trial, outside the presence of the jury, to avoid keeping the jury longer than necessary. The defendants will not be prejudiced by excluding this evidence because the jury will only have emotional distress damages to consider as a reference for punitive damages, which would be a lower dollar amount than if the jury considered both wages and emotional distress.

The plaintiffs' motions on this issue are granted. Evidence regarding backpay and mitigation, personnel files from Robinson's other employers, and Robinson's performance at jobs held after Werner rejected him will not be presented to the jury.

### Plaintiff's #15: Direct Threat and Undue Hardship

The plaintiffs seek to exclude references to Werner's dismissed affirmative defenses, and ask that Werner be prohibited "from offering any evidence, statement, or argument that Mr. Robinson would pose a direct threat of harm if employed or that his employment would create an undue hardship." Filing 283 at 14. The plaintiffs further seek the Court to prohibit the use of the phrases "direct threat" and "undue hardship" on the basis of Fed. R. Evid. 403. The Court agrees, and such language or evidence will not be allowed. To the extent these phrases appear on exhibits, such as answers to interrogatories, these phrases should be redacted. However, Werner will still be able to put on evidence of safety or other concerns with deaf drivers. Some evidence which pertains to these issues may be ruled on subject to an appropriate objection at trial. The plaintiffs' motion in this respect will be granted.

### Plaintiff's #17 / Defendants' #4: Werner's Treatment of Deaf Applicants

7

The plaintiffs argue that Werner's hiring of hearing-impaired employees for non-driver positions is not relevant and should be excluded. The defendants argue that the plaintiffs should not be able to introduce evidence of Werner's treatment of other deaf applicants.

The plaintiffs are seeking punitive damages against Werner, arguing that Werner has animus towards hearing-impaired and/or deaf people. The fact that Werner has hired deaf or hearing-impaired people for jobs other than truck driving is relevant to this issue, and is probative of whether Werner was motivated by safety concerns or by animus in denying Deuschle's application for employment. On this matter, the plaintiffs' motion is denied.

One issue in this case is whether Werner didn't hire Robinson because it could not safely train him, or whether that reason was pretextual and motivated by animus. Evidence of other deaf drivers, who may have not been hired for a variety of reasons, is relevant to this issue, and relevant to the punitive damages claim. Werner may identify any deaf applicants it did hire to rebut this evidence.

Plaintiff's #18: Robinson's Obligation to Propose Accommodations

The plaintiff seeks "to prohibit Werner from offering any argument, evidence, or suggestion that Victor Robinson had an obligation to propose all possible accommodations at the time of his application." Filing 283 at 15. The motion will be granted.

A plaintiff is not required to specifically identify an accommodation; he must only provide "enough information that, under the circumstances, [it] can be fairly said to know" that the plaintiff sought accommodation for his disability. *Ballard v. Rubin,* 284 F.3d 957, 962 (8th Cir. 2002) (quoting *Taylor v. Phoenixville Sch. Dist.,* 174 F.3d 142, 159 (3d. Cir. 1999)). The defendants may inquire as to the conversations between Hamm and Robinson about any

8

accommodations that might be feasible or workable, as these conversations speak to the reasonableness of Werner's actions. But the plaintiff's motion that the defendants may not offer argument, evidence, or suggestion that Robinson had an *obligation* to propose *all possible accommodations* is granted.

### Plaintiff's #19: Expert Reports

The reports relied on by the plaintiff's experts are fair game for cross-examination and impeachment . . . unless, of course, the "door is opened" on other evidentiary grounds. The motion is granted as to the admissibility of those reports and studies as substantive evidence.

### Plaintiff's #20: FMCSA Hearing Exemption Process

The plaintiff objects to introducing evidence or argument regarding the FMSCA hearing exemption, both as a process on its own and as Robinson actually engaged in it. Werner is entitled to a higher standard of safety than the federal regulations. So, Werner may present evidence to the jury about any alleged deficiencies in the regulatory process of providing hearing waivers, both generally and as engaged in by Robinson.[3] Werner may contest the belief that a driver in possession of an FMCSA waiver is just as safe as any other driver by contesting the regulatory process. On these issues, the plaintiffs' motion is denied.

---

[3] If Werner engages in this line of questioning, this opens the door for the plaintiffs to explain the rationale behind the waiver process, and the regulatory process by which the Department of Transportation created the rule. This would likely lengthen the trial. Caution should be exercised – there had better be some "meat on the bones" before entering into this line of inquiry.

9

DEFENDANTS' MOTIONS

Defendants' #1: Subjective Beliefs of Discrimination

Relying on Rule 401, 403 and 701, and on some case law, Werner seeks to exclude statements by the plaintiff and by Werner employees. Werner cites cases suggesting that a plaintiff's "subjective beliefs and bare allegations" that he or she was discriminated against "are insufficient to establish" an ADA prima facie case. *Erenberg v. Methodist Hosp.*, 240 F. Supp. 2d 1022, 1031 (D. Minn. 2003).

But here, the plaintiff's subjective beliefs are not the only ones proffered. And the allegations are not "bare." Rather, the testimony of other employees of Werner supports the plaintiffs' claim that Werner intentionally and perhaps maliciously discriminated against deaf drivers. The evidence is not unfairly prejudicial because it is coming from Werner's own employees, who are testifying as to their personal knowledge. Even if these employees were not personally involved in the decision not to hire Robinson, this testimony would help the jury to understand how Werner employees felt about deaf drivers generally and how they felt about their own actions.

To the extent Werner seeks to exclude testimony because it is a "legal conclusion" that will "confuse the jury," this only justifies preventing the plaintiffs from specifically asking whether certain behavior was "discrimination" or "discriminatory." Allowing witnesses to opine as to whether certain behavior was "discrimination" might confuse the jury once they read the jury instructions—they may conflate the colloquial, common understanding of "discrimination" with the legal claim of "disability discrimination" as alleged in this case. The plaintiffs can inquire as to how people felt about certain behaviors, but may not ask whether certain behavior

10

was discriminatory. (There are plenty of other ways to phrase such questions that do not literally implicate the legal issues in this case.)

### Defendants' #2: Stray Remarks

Werner seeks to exclude certain emails and chat messages where its employees made discriminatory remarks about deaf applicants. Werner claims these are "stray remarks," which are insufficient to establish discrimination. *Fitzgerald v. Action, Inc.,* 521 F.3d 867, 876-77 (8th Cir. 2008) (citing *Fisher v. Pharmacia & Upjohn,* 225 F.3d 915, 922 (8th Cir. 2000)). However, stray remarks are neither irrelevant nor inadmissible. *Id.*

The defendants argue that Jamie Hamm was the sole person responsible for not hiring Robinson, and evidence of other decision-makers' comments would be irrelevant and unfairly prejudicial. However, the plaintiff asserts that Marsh "supervised Robinson's recruiter, communicated with Robinson about his application, had private conversations about Robin's application with" Jamie Hamm, "was present on the phone call in which Werner rejected Robinson, and, in fact, directed Robinson to make that phone call to the company." Filing 289 at 3. These facts indicate that Marsh was a high-level Werner official whose statements are relevant to whether Werner discriminated against Robinson. These statements are relevant to the punitive damages claim and to whether Werner was motivated by safety or by animus in failing to hire Robinson.

The defendants' motion on this issue will be overruled without prejudice to reassert at trial. The Court may sustain any objection to statements where the content, context, and timing do not evidence discrimination from high-level

11

Werner employees sufficiently related to Robinson, either by the timing of the statements or the identity of the declarant.[4]

### Defendants' #3: Other Trucking Companies

Werner seeks to exclude all evidence of other trucking companies' policies regarding hearing-impaired drivers as irrelevant. The plaintiffs seek to introduce deposition testimony from five other trucking companies which train deaf drivers. Evidence of other companies' training policies is relevant to the issue of whether Werner's refusal to train deaf drivers is reasonable.

Werner cites a Seventh Circuit Court of Appeals case, *EEOC v. Schneider Nat., Inc.,* 481 F.3d 507, 510 (7th Cir. 2007), for the unremarkable position that an employer "is entitled to determine how much risk is too great for it to be willing to bear," and "[t]he fact that another employer and . . . the worker himself are willing to assume a risk does not compel [an employer] to do likewise." But no one is compelling Werner to behave the same way as other companies. Evidence of how other companies train and accommodate hearing-impaired drivers will be helpful to the jury in determining the *reasonableness* of Werner's safety decisions. Werner may inform the jury that it is entitled to have a higher level of safety than other companies, but the jury will determine whether that decision is reasonable. (And contrary to Werner's arguments, a jury verdict regarding a different case with significantly different facts *and issues* than this one does not vindicate Werner's position on safety. A jury verdict is not evidence. *Anderson,* 128 F.3d at 1272.)

Werner argues the evidence compares other companies' 2021 policies to Werner's 2016 policies, which makes them irrelevant. The other companies'

---

[4] The parties are advised that the Court is likely to make the same rulings as to particular chat messages and emails which were admitted in the *Deuschle* proceedings.

2021 policies, however, are relevant because these policies have a tendency to show a material fact—the reasonableness of Werner's actions—is less likely. Werner had the opportunity to challenge the policies of its competitors on cross-examination and inquire as to those companies' 2016 policies, and Werner has designated testimony from these depositions for the jury to hear. Werner is not unfairly prejudiced, nor is the evidence irrelevant.

Werner also suggests that the five company policies offered by the plaintiffs are both too many and too few. Filing 279 at 10. These concerns are overruled. While potentially prejudicial to Werner, this evidence is not unfairly so, and will be admitted. Werner's motion on this matter is denied.

### Defendants' #6: Subsequent Remedial Measures

Like in the *Deuschle* case, the defendants assert that the plaintiff's exhibits showing Werner's current policies regarding its application process are excludable as irrelevant and as subsequent remedial measures under Fed. R. Evid. 407. The plaintiff argues this evidence goes to "feasibility of precautionary measures," an exception to Rule 407. In the *Deuschle* case, these measures were admissible as relevant to the "feasibility of whether Werner could have safely trained Deuschle, and whether the over-the-road aspect of Werner's placement driver training program was an 'essential function' of employment." Filing no. 327 in case no. 8:18-cv-329.

Unlike Deuschle, who had five months of trucking experience before applying to Werner, Robinson had no trucking experience. But, Werner's policy change still speaks to whether its over-the-road portion of the placement driver training program was truly an "essential function" at the time Robinson applied, if this portion of the training was later significantly reduced. The evidence is less probative than in the *Deuschle* case, but its relevance still outweighs any potential prejudice. The feasibility and relevance of Werner's

change in policies is relevant to the issues in this case, despite the factual differences between Robinson's and Deuschle's claims.

### Defendants' #9: Punitive Damages

The defendants assert that punitive damages should not be submitted to the jury in this case. The defendants rely on Eighth Circuit case law that punitive damages are not warranted in an ADA case if the theory of discrimination is "novel." Filing 279 at 13 (citing *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.,* 439 F.3d 894 (8th Cir. 2006)).

The plaintiff's theory of discrimination is not novel. The plaintiff alleges that Werner intentionally and, potentially maliciously or recklessly, discriminated against deaf people in contravention of their civil rights. The plaintiff does not assert, as the defendants claim, that Werner was *required* to hire a deaf applicant, or that Werner is not entitled to consider safety in its hiring decisions. Rather, the plaintiff asserts Werner acted with unlawful discriminatory intent by failing to hire Robinson based on *unreasonable* or pretextual concerns for safety. The issues in this case, for the jury to decide, are whether Werner was motivated by safety or by animus in failing to hire Robinson, whether Werner's decision that it could not safely train a deaf driver in its placement driver program was reasonable, and whether Werner could have reasonably accommodated a deaf person in that position.

In *Canny,* punitive damages were not warranted where an employer "*reasonably* perceived itself caught between federal regulations under the Occupational Safety and Health Administration and federal law under the ADA." 439 F.3d at 903 (emphasis added). While Werner claims that it acted only considering safety in not accommodating deaf applicants for its driver training program, the plaintiff intends to present evidence which rebuts that. This evidence includes remarks made by Werner employees mocking deaf

14

applicants, which, in the other proceeding, a witness admitted were insensitive and embarrassing. Other expected testimony would corroborate potential inferences the jury can make about the alleged animus behind Werner's failure to hire Robinson.

The defendants argue that the plaintiff's "novel" theory of discrimination was rejected by a jury already, and evidence of that rejection should be admitted if punitive damages are submitted to the jury. But the theory is not novel, and the *Deuschle* jury verdict cannot vindicate Werner in this case because a jury verdict (in a separate proceeding with *different issues*) is not evidence. *Anderson*, 128 F.3d at 1272.

As in the last case, the jury may be instructed (if the evidence is sufficient) that it may award punitive damages if the defendants "acted with malice or reckless indifference" to Robinson's right not to be discriminated against on the basis of a disability. The jury will be properly instructed on the plaintiff's burden in assessing whether to award punitive damages. The plaintiff's expected evidence, if believed, would support a jury's finding that the defendants acted with reckless indifference or malice towards Robinson's right not to be discriminated against.

The Court will handle punitive damages, and evidence of Werner's financial status, in the same way they were handled in the *Deuschle* case. Prior to presenting evidence of Werner's financial status and net worth, the plaintiff, outside the presence of the jury, must seek the Court's determination and permission on the issue of punitive damages.

IT IS ORDERED:

1. The plaintiffs' motion in limine (filing 282) is granted in part and denied in part.

15

2. The plaintiffs' supplemental motion in limine (filing 290) is granted.

3. The defendants' motion in limine (filing 278) is granted in part and denied in part.

Dated this 23rd day of August, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge