IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DRIVERS MANAGEMENT, LLC and WERNER ENTERPRISES, INC.,<br><br>Defendants. | CASE NO: 8:18-CV-462 |

### PLAINTIFF'S BRIEF IN SUPPORT OF EQUITABLE RELIEF

Consistent with the Court's October 4, 2023, Text Minute Entry (Doc. 334), the Equal Employment Opportunity Commission (EEOC) submits the following brief as a closing statement in support of injunctive relief and back pay damages in this matter, including Proposed Findings of Fact and Conclusions of Law (Exhibit 1) and a Proposed Order on Injunctive Relief (Exhibit 2):

After four days of trial a jury returned a verdict of $36,075,000 for the EEOC and, in doing so, determined that Werner violated the Americans with Disabilities Act (ADA) by denying employment opportunities to Victor Robinson, a qualified deaf truck driver. Evidence presented at trial demonstrates that Werner continues to violate the ADA by denying employment opportunities to other qualified deaf truck drivers. Therefore, the EEOC asks this Court to enter an Order enjoining Werner from engaging in further discriminatory employment practices and requiring Werner to take actions to ensure they provide equal employment opportunities, including reasonable accommodations, to qualified deaf truck drivers as required by the ADA.

1

The EEOC also asks this Court to award lost wages and benefits, including interest, to make Victor Robinson whole for the damages he suffered as a result of Werner's unlawful actions.

I. **The Court has the power to enter an injunction which ends Werner's unlawful conduct and ensures that conduct does not recur.**

The law empowers the Court to order equitable relief to guarantee the end of Werner's unlawful conduct. To do so, the Court should order targeted and specific injunctive relief that takes aim at Werner's ADA violations as revealed at trial. Specifically, the Court should order Werner to end its discriminatory practice of refusing to hire qualified deaf truck drivers, order Werner to provide reasonable accommodations to enable qualified deaf truck driver applicants and employees to enjoy equal employment opportunities as non-disabled truck drivers, including participation in the company's training program, order Werner to notify job seekers that it will hire and provide reasonable accommodation to qualified deaf truck drivers, order Werner to train employees involved in hiring and recruiting truck drivers of the company's obligations under the ADA, appoint a Special Master to ensure Werner's compliance with the Court's order, and order Werner to report information to the Special Master and the EEOC to demonstrate its compliance. Such relief, while powerfully targeted, is narrowly tailored to effectuate the purposes of the ADA and vindicate the public interest.

    A.    **The Court has authority to enter equitable relief, including an injunction.**

The EEOC seeks injunctive relief to end Werner's admitted and long-held practice of denying employment opportunities to qualified deaf truck drivers. Doc. 1, pp. 7–8 (Complaint); Doc. 286, p. 5 (Pretrial Order, Unresolved Issues, ¶ 19). The request is consistent with the ADA's incorporation of Title VII's enforcement provisions, providing courts with a broad grant of equitable authority. 42 U.S.C. § 12117; *Gibson v. Arkansas Dep't of Correction*, 265 F.3d 718, 721 (8th Cir. 2001). "The powers, remedies, and procedures set forth in Title VII, 42 U.S.C. §

2000e-5, are extended to any person alleging employment discrimination on the basis of disability." *Baker v. Union Pac. R.R. Co.*, No. 8:20CV315, 2022 WL 4120188, at *3 (D. Neb. Sept. 9, 2022) (citing 42 U.S.C. § 12117 which makes § 2000e-5 applicable to ADA claims brought by the EEOC). After determining an employer "has intentionally engaged in or is intentionally engaging in an unlawful employment practice . . . the court may enjoin the [employer] . . . and order such affirmative action as may be appropriate." 42 U.S.C. § 2000e-5; *Gibson*, 265 F.3d at 721 ("Equitable relief such as injunctions are also available to enforce ADA rights."); *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997) ("injunctive relief is authorized once the court has found that the defendant intentionally engaged in an unlawful employment practice."); *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 467 (6th Cir. 1999) (in a Title VII case "upon a finding of any intentional employment discrimination, a district court possesses broad discretion to craft an injunction that will ensure the employer's compliance with the law"); *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 (9th Cir. 1987) (EEOC is authorized to seek to enjoin discrimination against similarly-situated individuals, "even when it only alleges individual acts of discrimination"); *EEOC v. Old Dominion Freight Line, Inc.*, No. 2:11-CV-02153, 2015 WL 3895095, at *8 (W.D. Ark. June 24, 2015) (issuing a permanent injunction to compel the defendant's compliance with the ADA).

The availability of equitable remedies is central to the statutory goals of protecting civil rights and redressing violations of those rights. "[T]he district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) (discussing Title VII). Thus, "upon a finding of any intentional

employment discrimination, a district court possesses broad discretion to craft an injunction that will ensure the employer's compliance with the law." *Frank's Nursery,* 177 F.3d at 467.

The number of aggrieved individuals for whom EEOC sought relief does not diminish the Court's authority. "The EEOC may obtain a permanent injunction even where it does not allege a pattern or policy of discrimination." *Id.* at 468 (citing, as an example, *EEOC v. HBE Corp.*, 135 F.3d 543, 557 (8th Cir. 1998)). "The section of Title VII authorizing injunctive relief does not itself require that a pattern or practice of unlawful conduct be shown . . . . [I]njunctive relief is appropriate even where the Commission has produced no evidence of discrimination going beyond the particular claimant's case." *Ilona of Hungary*, 108 F.3d at 1578; *see also Baker*, 2022 WL 4120188 at *4 ("[T]he Court finds the [employer's] argument that the Court is without authority to issue an across-the-board injunction in an individual case is without merit.").

Here, the evidence presented at trial established that Werner intentionally discriminated, and continue to intentionally discriminate, against qualified truck drivers with hearing-related disabilities—namely, drivers who Werner would require to complete the company's over-the-road training. A Werner executive testified the company rejected Victor Robinson because she believed his deafness prevented him from receiving adequate training. Doc. 346, Trial Transcript Vol. IV, p. 819:7–14. The same witness also testified that she continues to believe over-the-road training of deaf drivers cannot be accomplished, and the company continues to refuse to train qualified deaf truck drivers to this day. *Id.* at 822:1–5, 822:24–823:6. "Injunctive relief is especially appropriate where the record does not demonstrate a cessation of the unlawful practices." *Baker*, 2022 WL 4120188 at *3 (citing *United States v. Gregory*, 871 F.2d 1239, 1246 (4th Cir. 1989)). "In cases in which a discriminatory atmosphere has been shown, the more common forms of relief, such as reinstatement and back pay, may not be appropriate or adequate,

and the district court should fashion injunctive relief to alleviate the unlawful practice before it." *Taylor v. Jones*, 653 F.2d 1193, 1204 (8th Cir. 1981). In these circumstances, it is the employer's burden to prove that a violation is "not likely to recur." *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir. 1993) (summarizing and citing with approval *Goodyear*, 813 F.2d at 1544 ("Generally, a person subjected to employment discrimination is entitled to an injunction against future discrimination . . . unless the employer proves it is unlikely to repeat the practice.")); *Ilona of Hungary*, 108 F.3d at 1578 (citing *Goodyear* with approval for the same proposition); *EEOC v. United Parcel Service*, 94 F.3d 314, 318 (7th Cir. 1996) (same).

> "Since the court, in Title VII cases, has a special responsibility in the public interest to devise remedies which effectuate the policies of the Act as well as afford private relief to the individual employee instituting the complaint, an employment discrimination suit may be treated as a class action as to all forms of relief by any class member, and that relief should be available to all who were damaged by the unlawful employment practice regardless of whether they filed charges with the EEOC."

*Baker*, 2022 WL 4120188, at *3 (citing *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1202 (7th Cir. 1979) and *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 721 (7th Cir. 1969)).

Finally, the EEOC's interest in seeking Werner's compliance with the ADA is broader than simply obtaining relief for Mr. Robinson or ensuring Werner does not engage in further discrimination against him. "The EEOC represents the public interest when litigating claims, and, through injunctive relief, seeks to protect not only the rights of the individual claimant, but those of similarly situated employees by deterring the employer from future discrimination." *Old Dominion*, 2015 WL 3895095 at *7 (internal citations omitted). "When the EEOC acts, . . . it acts . . . to vindicate the public interest in preventing employment discrimination." *General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 326 (1980). "The EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief

obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately." *In re Bemis Co., Inc.*, 279 F.3d 419, 421 (7th Cir. 2002). The EEOC's ability to prevent recurring violations of the law through injunctive relief is thus unaffected by whether Mr. Robinson might someday reapply to Werner.

**B. The Court should craft equitable relief that reasonably, but effectively, addresses Werner's discriminatory employment practices.**

The Court has wide discretion when determining the nature and scope of the injunctive relief it enters. "Title VII has vested broad equitable powers in the federal courts to fashion a decree which will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Gilbert v. City of Little Rock*, 799 F.2d 1210, 1215 (8th Cir. 1986) (internal citations omitted); *Briscoe v. Fred's Dollar Store*, 24 F.3d 1026, 1028 (8th Cir. 1994) ("District courts have broad discretion to issue an injunction once discrimination has been established in a Title VII action.") (internal citations omitted).

Here, the evidence demands an equitable remedy including at least four key elements: (1) end Werner's denial of employment opportunities to qualified deaf truck drivers; (2) require Werner to provide reasonable accommodations to enable qualified deaf truck drivers to enjoy equal employment opportunities as non-disabled drivers, including participation in Werner's over-the-road training; (3) require Werner to notify job seekers that it will hire and provide reasonable accommodation to qualified deaf truck drivers and train employees involved in hiring and recruiting truck drivers of the company's obligations under the ADA; and (4) require Werner to report its compliance with the Court's order to a Special Master and the EEOC.

1. **The injunction should end Werner's prohibition on hiring deaf drivers who need to complete Werner's new-driver training program.**

Werner continues to refuse employment to qualified deaf truck drivers if they would need to complete Werner's new-driver training (currently referred to as the "placement" driver training program). This Court should therefore require Werner to comply with the ADA and provide equal employment opportunities, including new-driver training, to deaf truck drivers otherwise qualified for Werner's "OTR driver" position. Without an injunction, redressing further violations of the law would require individual lawsuits along with the attendant administrative prerequisites each time—a seven-year process in this case.

This type of injunction would not be novel. Courts have enjoined future violations of federal employment discrimination law upon a finding of intentional employment discrimination. *See, e.g., EEOC v. HBE Corp.*, 135 F.3d 543 (8th Cir. 1998) (upholding injunctive relief enjoining future race discrimination and retaliation); *EEOC v. Garden City Plastics Equip. & Supply Co.*, No. CIV.A.04-00726-CV-DW, 2006 WL 3207714 (W.D. Mo. Oct. 18, 2006) (sex harassment); *EEOC v. New Prime, Inc.*, No. 6:11-CV-03367 MDH, 2016 WL 3033773 (W.D. Mo. May 26, 2016) (sex discrimination); *EEOC v. Wal-Mart Stores, Inc.*, 11 F. Supp. 2d 1313, 1331 (D.N.M. 1998) (disability discrimination); *EEOC v. Corinth, Inc.*, 824 F. Supp. 1302, 1312 (N.D. Ind. 1993) (pregnancy discrimination).

2. **The injunction should require Werner to accommodate deaf drivers during the company's over-the-road training.**

At trial, Werner continued to deny that it is possible to accommodate qualified deaf drivers like Mr. Robinson in its over-the-road training, even though much of the evidence presented addressed how Werner could do so. Where a company lacks adequate policies and procedures to reasonably prevent future violations of the law, courts have granted injunctive

relief requiring the institution of new policies and procedures. *See, e.g., Wal-Mart Stores, Inc.*, 11 F. Supp. 2d at 1331. This Court should therefore require Werner to provide reasonable accommodation to qualified deaf truck drivers, including in the company's over-the-road training.

The EEOC's case at trial centered on how Werner (at its Roadmaster driving school), and companies like it, can and do accommodate deaf truck drivers during observed, over-the-road training. While the evidence provided many examples of these accommodations, the EEOC's case also made clear that training of this kind should be flexible and tailored to the needs of trainer and trainee.[1] For that reason, rather than order any specific accommodations the Court should require Werner to employ a training consultant with experience in the methods used to accommodate deaf truck drivers in over-the-road training to ensure that Werner provides such

---

[1] *See* Doc. 342, Trial Transcript, Vol. I, pp.154:16–155:10, 165:1–170:20 (Mr. Olds trains deaf drivers in over-the-road training at CDL school using hand signals, ASL, and making notes of topics to discuss later when not driving); Doc. 344, Trial Transcript, Vol. II, pp.258:3–267:23 (describing Dr. Arndt's opinion that deaf drivers can safely be trained over-the-road using additional pre-trip planning, hand signals and simple graphical signs); Doc. 344, Trial Transcript, Vol. II, pp.361:10–363:15 (a mentor at Covenant Transport trained Mr. Robinson in over-the-road training using gestures and writing on two white boards, one for quick instructions and the other for notes of topics to discuss when not driving); representatives from five interstate trucking companies testified as to how their companies accommodated FMCSA Hearing Exemption-holders in over-the-road behind-the-wheel training: Doc. 345, Trial Transcript Vol. III, p.478:2–17 (Exhibit 3, attached hereto, Transcript of Video Deposition of Clarence Easterday, Jr., corporate representative for Western Express, pp.16:14–23:6); Doc. 342, Trial Transcript, Vol. I, pp.234–35 and Vol. II pp.242–43 (Exhibit 4, attached hereto, Transcript of Video Deposition of Lindsay Wilbert, corporate representative for Swift Transportation, pp.9:9–11:25); Doc. 344, Trial Transcript, Vol. II, pp.319:14–17, 322:17–323:22, 325:1–5 (Wayne Cedarholm, corporate representative for C.R. England); Doc. 345, Trial Transcript, Vol. III, pp.473–74 (Exhibit 5, attached hereto, Transcript of Video Deposition of Christopher Hilkemann, corporate representative for Crete Carrier Corporation, pp.27:15–29:24,); Doc. 344, Trial Transcript, Vol. II, pp.434:14–436:25, 439:3–441:20, 442:21–443:16 (Lathen Whited, corporate representative for Covenant Transport).

training opportunities to deaf drivers. To ensure compliance, the Court should require Werner to report the results of the consultant's work to a Special Master and the EEOC.

> **3.   The injunction should require Werner to train recruiting employees of their obligations to comply with the ADA and to inform job seekers that the company will hire and provide reasonable accommodation to deaf truck drivers going forward.**

Evidence presented at trial established that employees in Werner's recruiting department – including supervisors – did not abide by the company's anti-discrimination policies and exhibited explicit bias against deaf individuals. Therefore, it is crucial that the company train these employees regarding the ADA's prohibition on disability discrimination as well as the mandates of the injunction itself. *See, e.g., EEOC v. Custom Companies, Inc.*, Nos. 02C3768, 03C2293, 2007 WL 734395, at *20 (N.D. Ill. Mar. 8, 2007); *Wal-Mart Stores, Inc.*, 11 F. Supp. 2d at 1331. Similarly, because deaf driver applicants are likely to have heard that Werner is unwilling to train deaf drivers, it is important that the Court require the company to notify potential applicants through advertisements and on its website that it will hire and provide reasonable accommodation to qualified deaf truck drivers. *See, e.g., Custom Companies, Inc.*, 2007 WL 734395 at *20; *Wal-Mart Stores, Inc.*, 11 F. Supp. 2d at 1331; *Corinth, Inc.*, 824 F. Supp. at 1313.

> **4.   The Court should appoint a Special Master to ensure Werner complies with the ADA and the Court's Order.**

To monitor compliance with the law and other equitable relief, record-keeping and periodic reporting are often ordered to ensure the effectiveness of any injunctive relief. *See, e.g., Custom Companies, Inc.*, 2007 WL 734395 at *20 (reporting); *Wal-Mart Stores, Inc.*, 11 F. Supp. 2d at 1331 (reporting on completion of training requirement). In this case, requiring Werner to periodically report to a Special Master and the EEOC regarding its compliance with the Court's

9

order, and requiring the company to retain related documents and information, will help facilitate the company's compliance while minimizing the burden on the Court to monitor such compliance.

II. **The Court has the power to award backpay relief, with interest, to Mr. Robinson and should do so in the amount of $81,100.**

There is a strong presumption that an employee who has suffered discrimination should receive back pay. *EEOC v. Rath Packing Co.*, 787 F.2d 318, 329 (8th Cir. 1986); *see also Ordahl v. Forward Tech. Indus., Inc.*, 301 F. Supp. 2d 1022, 1030 (D. Minn. 2004) ("A prevailing claimant under the ADA is presumptively entitled to compensatory damages in the form of back pay that would have accrued from the termination date to the entry of judgment.") (internal citations omitted). "Absent extraordinary circumstances, back pay is awarded to fashion the most complete relief possible for proscribed discrimination." *Womack v. Munson*, 619 F.2d 1292, 1299 (8th Cir. 1980) (internal citations omitted). This presumption can only be overcome if back pay would "frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975). The trial court "has broad equitable discretion to fashion back pay awards in order to make the Title VII victim whole." *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 669–70 (8th Cir.1992). Absence of bad faith is not a sufficient reason to deny back pay. *Womack*, 619 F.2d at 1299 (citing *Albemarle*, 422 U.S. at 422).

In support of an award of equitable backpay relief for Mr. Robinson, the EEOC presented the testimony and report (Trial Exhibit 86) of economic expert Dr. Nathan Adams and Mr. Robinson's testimony. Dr. Adams testified to his qualifications as an expert economist. Doc. 348,

Transcript of Bench Trial, pp.15:19–16:19. All documents considered by Dr. Adams are listed in Dr. Adams's report, in Appendix A. *Id.* at 17:9–11.

> **A. The EEOC's economic expert Dr. Adams calculated Mr. Robinson's backpay damage amount with prejudgment interest to be at least $81,100.**

Dr. Adams based his calculations on the value of wages and benefits Mr. Robinson would have earned at Werner less earnings Mr. Robinson actually earned after applying. *Id.* at 17:12–18:6, 18:14–19:22. Dr. Adams calculated the value of what Mr. Robinson would have earned had he been hired at Werner in February 2016, based on pay and benefits information Werner provided during discovery. Doc. 348, Transcript of Bench Trial, pp.18–19. The results of these calculations are reflected, by year, in Dr. Adams's report as follows:

Table 2: **CONFIDENTIAL** Estimated annual compensation from Werner

| Year | Mean annual salary | Benefits 401(k) | Stock | Medical | Total |
|---|---|---|---|---|---|
| Panel A: Mr. Robinson | | | | | |
| 2016 | $37,382.43 | $258.25 | $0 | $6,252.75 | $43,893.44 |
| 2017 | $48,932.35 | $733.99 | $0 | $9,535.56 | $59,201.89 |
| 2018 | $51,727.13 | $775.91 | $0 | $7,464.48 | $59,967.52 |
| 2019 | $53,941.47 | $809.12 | $0 | $5,505.96 | $60,256.55 |

Trial Exhibit 86, p.6, Table 2.

Dr. Adams calculated the value of the pay and benefits Mr. Robinson earned subsequent to his rejection by Werner using Mr. Robinson's pay and tax documents reflecting Mr. Robinson's subsequent employment. *Id.* at 19:23–20:7. Those interim earnings are reflected in Dr. Adams's report:

Table 3: Mr. Robinson's post-application earnings

| Company | Wages | Medical Benefits | Total |
|---|---|---|---|
| *Panel A: 2016* | | | |
| Covenant | $17,222.17 | $3,588.82 | $20,810.99 |
| XPO | $675 | $0 | $675 |
| US Xpress, Inc. | $9,975.00 | $0 | $9,975.00 |
| **Total** | $27,872.95 | $3,588.82 | $31,461.77 |
| | | | |
| *Panel B: 2017* | | | |
| US Xpress, Inc. | $17,887.00 | $3,204.67 | $21,091.67 |
| J.B. Hunt | $33,336.00 | $2,440.00 | $35,776.00 |
| **Total** | $51,223.00 | $5,644.67 | $56,867.67 |
| | | | |
| *Panel C: 2018* | | | |
| J.B. Hunt | $1,887.00 | $399.00 | $2,286.00 |
| Marten | $21,390.05 | $4,550.61 | $25,940.66 |
| Stan Koch | $10,824.50 | $0 | $10,824.50 |
| **Total** | $34,101.55 | $4,949.61 | $39,051.16 |
| | | | |
| *Panel D: 2019* | | | |
| Stan Koch | $31,998.76 | $6,211.15 | $38,209.91 |
| Western Express | $3,855.06 | $2,149.47 | $6,004.53 |
| **Total** | $35,853.82 | $8,360.62 | $44,214.44 |

Trial Exhibit 86, p.10, Table 3.

Dr. Adams calculated Mr. Robinson's backpay losses through the end of 2019, including interest, as at least $55,800, as reflected in Table 5 of his report, reproduced below.

| Year (1) | Werner Wages+Benefits (2) | Mitigation Wages+Benefits (3) | Subtotal (4) | Interest (5) | Total (6) |
|---|---|---|---|---|---|
| *Panel A: Mr. Robinson* | | | | | |
| Tax Penalty | — | — | $606.00 | $218.25 | $824.25 |
| 2016 | $43,893.44 | $31,461.77 | $12,431.67 | $1,856.26 | $14,287.93 |
| 2017 | $59,201.89 | $56,867.67 | $2,334.23 | $245.36 | $2,579.58 |
| 2018 | $59,967.52 | $39,051.16 | $20,916.36 | $1,150.40 | $22,066.76 |
| 2019 | $60,256.55 | $44,214.44 | $16,042.11 | $0 | $16,042.11 |
| **Total** | $223,319.41 | $171,595.03 | $52,330.37 | $3,470.26 | **$55,800.63** |

Trial Exhibit 86, p.15, Table 5. *See also* Doc. 348, Transcript of Bench Trial, p.26:1–5.

12

Though Dr. Adams's report provides calculations through the end of 2019, reflecting the information available at the time he produced the report in February 2020, Mr. Robinson testified that he continued to work as an over-the-road truck driver through approximately May 14, 2020. Doc. 348, Transcript of Bench Trial, 55:11–14. At that point he stopped working as a truck driver for medical reasons unrelated to his deafness. *Id.* at 94:22–95:24. The EEOC seeks backpay damages for Mr. Robinson—that is, what he would have earned at Werner minus what he actually earned—through May 14, 2020, including prejudgment interest on that amount. Mr. Robinson testified that he worked consistently as a truck driver during that time.[2] And while Werner asked Dr. Adams questions about whether he considered Werner's turnover rate for drivers, courts in the Eighth Circuit need not consider employee tenure data in fashioning a back pay award. *See EEOC v. Dial Corp.*, 469 F.3d 735 (8th Cir. 2006) (finding the district court did not err in refusing to consider employer's high turnover rate to calculate backpay).[3]

Dr. Adams testified that, using the information already available to him, for the period January 1 through May 14, 2020, he calculated an additional $13,200 in backpay for Mr. Robinson for a total of approximately $65,500, exclusive of interest. Doc. 348, Transcript of Bench Trial, pp.28:5–30:1. With interest through the present, the backpay damages Mr. Robinson accrued from the time Werner failed to hire him through May 14, 2020, is approximately

---

[2] Mr. Robinson testified that, after Werner rejected him, he worked as truck driver for Covenant Transport from March 2016–September 2016; Jacobson for three weeks in September 2016; U.S. Xpress from October 2016–April 2017; J.B. Hunt from May 2017–January 2018; Marten from January 2018–August 2018; Stan Koch and Sons from September 2018–September 2019; and Western Express from October 2019–May 14, 2020. Doc. 348, Transcript of Bench Trial, pp.7:20–8:9; 9:14–20; 10:25–12:2; 12:18–21; 13:20–14:1; 51:10–14, 52:9–13; 53:16–54:8; 54:23–55:14.

[3] Werner also offered no sworn testimony regarding its turnover rates, only an unsworn response to a request for production that purports to address Werner's hires in 2015, a full year before Mr. Robinson applied. Trial Ex. 177.

$81,100—that is $65,500 in lost pay and benefits plus $15,600 in interest through the date of Dr. Adams's testimony.[4] *Id.* at 29:21–30:10. The EEOC therefore seeks backpay damages for Mr. Robinson in the amount of $81,100.

### B. The Court has the authority to award back pay damages that include prejudgment interest.

"Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *W. Virginia v. United States*, 479 U.S. 305, 310 n. 10 (1987). It is "an element of complete compensation." *Id*. at 310. Since prejudgment interest is not a damage separate from backpay, but rather the value of that money over time, it is immaterial that the EEOC did not specifically request it in the Pretrial Conference Order (Doc. 286). Further, such interest is a form of equitable relief, *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 442 (3d Cir. 2009) (internal citations omitted) (recognizing "the now-universal acceptance of another form of equitable relief—prejudgment interest on back pay awards), and the Pretrial Conference Order contains under "Controverted and Unresolved Issues" whether "the Court should order equitable or injunctive relief and the nature and scope of such relief, if any." Doc. 286 at p. 3 § C, ¶19. It is therefore appropriate for the Court to include prejudgment interest in its back pay award.

### III. Conclusion

Werner's illegal conduct must end. The jury's finding was a powerful first step, but only the Court can ensure Werner complies with the ADA going forward. The EEOC therefore asks

---

[4] Dr. Adams also testified that, if the backpay period terminated at the end of 2019, total backpay damages with interest through the present would be $66,200. Doc. 348, Transcript of Bench Trial, pp.27:19–28:4.

14

the Court to enter equitable relief in the form of its Proposed Order on Injunctive Relief, to award lost benefits and interest, and for all further relief the Court deems necessary.

Respectfully submitted,

*/s/ Meredith S. Berwick*
Meredith Berwick, MO Bar No. 64389
Equal Employment Opportunity Commission
1222 Spruce Street, Room 8.100
St. Louis, MO 63103
Phone: (314) 798-1909
Fax: (314) 539-7895
meredith.berwick@eeoc.gov

Joshua M. Pierson, KS Bar No. 29095
Lauren M. Wilson, FL Bar No. 1024850
Equal Employment Opportunity Commission
400 State Avenue, Suite 905
Kansas City, Kansas 66101
Phone: (913) 359-1807
Facsimile: (913) 551-6957
joshua.pierson@eeoc.gov
lauren.wilson@eeoc.gov

*Attorneys for Plaintiff EEOC*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief contains 4666 words, which includes all text, including the caption, headings, footnotes, and quotations, as determined by Microsoft Word for Office 365 ProPlus.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Meredith S. Berwick*