IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DRIVERS MANAGEMENT, LLC and<br>WERNER ENTERPRISES, INC.,<br><br>　　　　　Defendants. | CASE NO: 8:18-CV-462 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF EQUITABLE RELIEF**

**I.   Introduction**

Werner refuses to grapple with the fact that a Nebraska jury determined that a deaf truck driver was in fact "qualified" for a Werner driving position and found that the company was liable for $36 million in punitive damages for refusing to acknowledge that fact. At trial and in post-trial briefing, Werner has made clear that, regardless of an applicants' qualifications, they will continue to refuse employment to deaf drivers who need to complete Werner's over-the-training. Werner's repeated insistence that the verdict in *Deuschle* somehow matters here reveals the lack of seriousness with which the company takes its responsibility to comply with the ADA.[1] It is clear. Without the Court's intervention, Werner will never correct their unlawful behavior.

It is the same with back pay. Werner refuses to take responsibility for the consequences of its unlawful behavior. Instead, it cavils about Victor Robinson's nearly continuous

---

[1] As this Court already noted, "[T]he *Deuschle* jury verdict cannot vindicate Werner . . . because a jury verdict (in a separate proceeding with *different issues*) is not evidence." Doc. 303, Memorandum and Order, p. 15 (citation omitted) (emphasis in original).

1

employment after presenting almost no evidence of its own regarding back pay, confining itself to cross-examination and foregoing its own expert.

Rescued by the statutory cap on damages, Werner will pay only a fraction of the jury's award. Without injunctive relief, it will no doubt comply with the law fractionally as well. An order from this Court granting injunctive relief and Mr. Robinson's full backpay damages is therefore necessary to ensure the purpose of the ADA is fulfilled.

**II.     The Court should end Werner's violation of the ADA and exercise its discretion to enter an injunction tailored to the facts.**

The EEOC proposes a tailored injunction that springs from the facts of the case – that Werner not only deemed Victor Robinson as "unqualified" for hire because he is deaf, but that the company deems *all* deaf drivers as "unqualified" unless they have certain prior driving experience. Werner's brief makes clear that this remains the company's position, and that it will not comply with the ADA's requirement that it offer equal employment opportunities to inexperienced *qualified deaf* drivers – a group it does not believe exists. Werner never asserts injunctive relief is unnecessary because it has already changed its unlawful ways and will now hire deaf drivers. Instead, the company has doubled down on its discriminatory policy. Under these circumstances, injunctive relief is not only appropriate, but also necessary.

**A.     Injunctive relief is appropriate.**

Werner claims injunctive relief is only appropriate if the EEOC shows a threat of future irreparable harm to Mr. Robinson. Not so. Upon a finding of a violation of Title VII or the ADA, a Court may act to remedy the violation, regardless of proof of discrimination beyond the claimant's case. *See* Doc. 349 at 4–6 for citations on this point. The cases Werner cites say nothing to the contrary. For example, in *Wedow v. City of Kan. City*, 442 F.3d 661 (8th Cir. 2006), the court found defendant had a plan to remedy the discriminatory conduct, and the

plaintiff, whom defendant still employed, was no longer subject to the discriminatory environment. In other words, there was no ongoing violation of Title VII. Here, in contrast, Werner has no plan to remedy its discriminatory conduct; instead, it is adamant that it will not voluntarily comply with the ADA and will continue to deny employment to deaf drivers. Tellingly, in every case Werner cites where the EEOC was the plaintiff, courts ordered some form of injunctive relief, including permanent injunctions in some cases.

Werner also claims a consistent practice of discrimination is necessary. But the case it cites says nothing of the sort. While the court in *Briscoe v. Fred's Dollar Store*, 24 F.3d 1026 (8th Cir. 1994), exercised its discretion to issue an injunction because it found a "consistent practice," the court did not hold injunctive relief was *only* appropriate in that circumstance. *See EEOC v. Autozone, Inc.*, No. CV 06-926-PHX-SMM, 2009 U.S. Dist. LEXIS 130096 *13 (D. Ariz. Nov. 9, 2009) (single instance of sexual harassment hostile work environment sufficient to warrant injunctive relief). To award injunctive relief, the Court need only find the employer intentionally engaged in an unlawful employment practice and consider whether the discriminatory conduct could occur in the future. *EEOC v. Autozone, Inc.*, 707 F.3d 824, 840–41 (7th Cir. 2013); *see also EEOC v. Corinth, Inc.*, 824 F. Supp. 1302, 1312 (N.D. Ind. 1993); *EEOC v. DCP Midstream*, CIVIL NO. 07-167-P-H, 608 F. Supp. 2d 107, 109–10 (D. Me. April 9, 2009); *EEOC v. Old Dominion Freight Line*, CASE NO.: 2:11-CV-02153, 2015 U.S. Dist. LEXIS 81977 at **21–22 (W.D. Ark. June 24, 2015); *EEOC v. Wal-Mart Stores E. LP*, Case No. 17-C-70, 2022 U.S. Dist. LEXIS 30382, **5–6 (E.D. Wisc. Feb. 22, 2022).[2]

The circumstances here warrant extensive injunctive relief. In *EEOC v. Custom Cos.*, Case Nos. 02 C 3768, 03 C 2293, 2007 U.S. Dist. LEXIS 16691 (N.D. Ill. March 8, 2007), the

---

[2] Werner relies on and cites all these cases in its opposition brief.

court found extensive relief warranted because, among other reasons, the defendant had "not accepted responsibility for the violations that occurred, but have bitterly contested every issue in this suit." *Id.* at \*59. Denying an injunction against future discrimination is only ever based on a finding that the harm will not occur in the future. *See EEOC v. Convergys Customer Mgmt. Group, Inc.*, No. 4:04-CV-846 CAS, 2006 U.S. Dist. LEXIS 46182 \*13 (E.D. Mo. July 7, 2006) ("the Court does not believe that there is a threat of a future violation of the ADA"); *Dehne v. Med. Shoppe Int'l, Inc.*, No. 4:01-CV-137 CAS, 261 F. Supp. 2d 1142, 1145 (E.D. Mo. March 31, 2003) ("there is no reasonable expectation that the discriminatory conduct will recur" (internal citation omitted)). And it is well-established that the "EEOC represents the public interest when litigating claims, and, through injunctive relief, seeks to protect not only the rights of the individual claimant, but those of similarly situated employees by deterring the employer from future discrimination." *Old Dominion*, CASE NO.: 2:11-CV-02153, 2015 U.S. Dist. LEXIS 81977 at \*22 (internal quotation omitted). Here, over the more than seven years since Werner rejected Mr. Robinson, it has taken no action to comply with the ADA in hiring inexperienced deaf drivers, and it intends to continue refusing employment opportunities to deaf and hard of hearing drivers based on its erroneous belief that it cannot safely train them. Indeed, in *Autozone,* the court found an injunction was appropriate where the defendant's "inaction over eight years was sufficient to convince the judge that compliance with the law will not be forthcoming without an obey-the-law injunction." *Autozone,* 707 F.3d at 843.

    **B.**     **Injunctive relief does not conflict with Werner's obligations under the FMCSA regulations.**

Werner again attempts to use safety regulations to excuse its violation of the ADA. It claims it must verify that every applicant without an FMCSA Hearing Exemption can pass a "forced whisper" test, and that accommodating people with hearing disabilities who do not

4

require an exemption would somehow violate the regulations. But Werner has never claimed, nor presented any evidence, that it independently tests all drivers' hearing. Instead, new drivers must pass a medical examination to obtain their CDLs, and those who cannot pass the hearing test must first receive an FMCSA Hearing Exemption before ever attending driving school. Doctors, the FMCSA, and the states issuing CDLs ensure this occurs, not Werner. And the EEOC does not, nor could it, propose altering or avoiding this process.

### C. A knowledgeable and experienced training consultant is necessary because Werner insists it cannot safely train deaf drivers.

Based on the facts as presented at trial and Werner's clear intent to continue denying employment opportunities to inexperienced dear drivers, a training consultant will provide the most effective remedy to bring Werner into compliance with the ADA. As the evidence demonstrated, precisely how a trainer and trainee should interact and communicate is highly individual and should be worked out in a flexible and fluid manner. *See* Doc. 349 at 8 n.1 for citations to the record on this point. An experienced driver trainer committed to accommodating deaf drivers is thus in the best position to evaluate Werner's training program. This provision of the injunction also avoids ordering specific accommodations—particular hand signals for example—that might work for some but not others.

In opposing this portion of the EEOC's proposed injunction, Werner erroneously claims a court has denied a training consultant under similar circumstances in *EEOC v. Autozone, Inc.*, No. CV 06-926-PHX-SMM, 2009 U.S. Dist. LEXIS 130096 (D. Ariz. Nov. 9, 2009). But *Autozone* involved a request for a consultant to evaluate the defendant's sexual harassment policies. The court found the monetary judgment, as well as the court's ordered employee training and notices were sufficient. Here, Werner refuses training to new deaf drivers as a matter of policy, and the EEOC is not suggesting a consultant educate Werner on the law as in

*Autozone*. Rather, the purpose of a training consultant is to effectuate the accommodations Werner is unwilling to implement on its own. And while Werner bristles at a five-year term for training, it has made clear it will forever continue its discriminatory practices without being ordered by the Court to do otherwise. Werner is one of the largest motor carriers in the country—retaining such a consultant for only five years is reasonable to bring the company into compliance with the law.

Werner's concern regarding the absence of the word "qualified" from various proposed injunctive provisions is a problem of its own making. Because Werner insists that deaf drivers are not "qualified," it will never include deaf drivers in that group. Similarly, limiting relief to the "placement driver program" would permit Werner to avoid compliance by simply renaming or restructuring its new driver training.

> **D.  Werner's assertion, without documentation, that it already provides training is insufficient to avoid further requirements, and notice to applicants is necessary to counter Werner's public assertions that it will not hire inexperienced deaf drivers.**

Werner points to a mere two lines of testimony as evidence that it sufficiently trains "recruiters and other employees" regarding the ADA. Doc. 350, p. 22. But the evidence at trial established that Werner's training must be deficient because recruiting employees were permitted to joke about disabled applicants without discipline and the company's Vice President of Safety refused to engage in the type of interactive process required by the ADA. *See* Doc. 345, Trial Transcript Vol. III at 543–55; Trial Exhibits 23, 25 and 26; Doc. 346, Trial Transcript Vol. IV 870–71. Even since the trial, Werner has publicly stated that it is justified in discriminating against deaf drivers. Under these circumstances, training is required to bring Werner's employment practices into compliance with the ADA.

6

Public notice is also necessary to ensure deaf and hard of hearing drivers are not discouraged from applying to Werner. Injunctive relief ordering some form of notice to potentially impacted individuals is common. *See EEOC v. Autozone, Inc.*, No. CV 06-926-PHX-SMM, 2009 U.S. Dist. LEXIS 130096 **9–10 (Nov. 9, 2009) (ordering updated posters with more specific information regarding expectations of the defendant's conduct and remedies available to employees who are victims of discrimination to be placed in an entire region of stores); *EEOC v. Wal-Mart Stores, Inc.*, 11 F. Supp. 2d 1313, 1331 (D.N.M. 1998); *EEOC v. Custom Companies, Inc*., Nos. 02C3768, 03C2293, 2007 WL 734395, at *20 (N.D. Ill. Mar. 8, 2007); *EEOC v. Corinth, Inc.*, 824 F. Supp. 1302, 1312 (N.D. Ind. 1993). In the only case Werner cites where a court denied a request for notice as part of the injunctive relief, the court instead ordered training for all employees with verified reports of the training then sent by the defendant to the EEOC. *EEOC v. Dolgencorp, LLC,* 277 F. Supp. 3d 932, 964 (E.D. Tenn. 2017). That court found the training sufficient to achieve the purposes of the requested notice. *Id.*

E. **A Special Master is warranted.**

This litigation was contentious, particularly regarding the discovery of information about other deaf applicants. *See* Docs. 122, 124, 131, 133, 138, 140, 159 and 166. The EEOC thus anticipates disputes will arise concerning the interpretation and enforcement of any injunction. The authority Werner primarily relies upon in opposition to a special master—a grab bag of four cases from around the country—are far from "overwhelming" as Werner claims. Doc. 350, p. 24. In fact, those cases relate to isolated incidents of discrimination, *EEOC v. Dolgencorp, LLC,* 277 F. Supp. 3d 932, 964 (E.D. Tenn. 2017), speculation that others could be harmed, *EEOC v. HBE Corp.*, 135 F.3d 543, 558 (8th Cir. 1998), a situation where the court found the monetary award sufficient to discourage re-offense by the defendant, *Kulling v. Grinders For Industry, Inc.*, 185

7

F. Supp. 2d 800, 822–23 (E.D. Mich 2002), and a circumstance where the court found a monitor unnecessary because the company had already suspended and replaced the discriminatory policy, *EEOC v. New Prime, Inc.*, No. 6:11-CV-03367 MDH, 2016 U.S. Dist. LEXIS 74962, at *6 (W.D. Mo. May 25, 2016).

In contrast, this case involves a continuing policy applied to an entire group of disabled individuals who will continue to suffer from Werner's unlawful employment actions in the absence of a Court order. There is no indication the jury's verdict will have any impact on Werner's behavior; in fact, Werner has indicated it will keep rejecting deaf driver applicants who need to undergo over-the-road training. Finally, Werner's "primary contact" person with the special master should not be from the Safety Department because the head of that department lied at trial about her efforts to find accommodations for Mr. Robinson and maintains that she still will not approve accommodations for deaf drivers in over-the-road training. *Compare* Doc. 346, Vol. IV at 870–71 (testimony of Nebraska Investigator Lance Knapp) with Doc. 346, Vol. IV at 808–12 and 847–49 (testimony of Jaime Hamm); Doc. 346, Vol. IV at 822–23.

    **F.**     **Document preservation and reporting obligations are appropriate relief under the facts of this case.**

Werner objects to providing information to the special master and the EEOC to establish its compliance with the injunction. But Werner provides no current document preservation policy or other evidence to establish that it even minimally complies with the law regarding document preservation. The requested reporting does not ask for detailed personal information about applicants, just name and contact information. See Proposed Injunction, ¶E.20. The reporting in the Proposed Injunction covers "suspected deaf or hard of hearing individuals" so Werner cannot, for instance, simply encounter a phone relay system or see a deaf school listed on an application and stop processing the applicant at that point. Werner ignores the fact that

individuals have limited time to file a Charge of Discrimination, so a potential violation could become irreparable if not timely uncovered. Werner asserts without basis that such reporting will be used for "fishing expeditions on a whim." Indeed, a benefit of a special master is that potential violations could be addressed and remedied voluntarily, before any victim is forced to resort to filing a charge of discrimination or a lawsuit.

**III.     The court should award Mr. Robinson $81,100 in back pay damages.**

"A prevailing claimant under the ADA is presumptively entitled to compensatory damages in the form of back pay that would have accrued from the termination date to the entry of judgement." *Ordahl v. Forward Tech. Indus., Inc.*, 301 F. Supp. 2d 1022, 1030 (D. Minn. 2004) (internal citations omitted). Accordingly, Mr. Robinson is presumptively entitled to back pay damages from the date of Werner's rejection of his application for employment through the entry of judgment. "A party harmed by discriminatory employment decisions has an affirmative duty to mitigate his damages by reasonably seeking and accepting other substantially equivalent employment." *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 904–905 (8th Cir. 2006) (internal citations omitted). The plaintiff's burden of mitigating damages "is not onerous," but it does require the plaintiff to exercise "reasonable diligence." *Benson v. City of Lincoln*, No. 4:18CV3127, 2023 WL 4865817 at *8 (D. Neb. July 31, 2023) (citing *Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 502 (8th Cir. 1998), cert. denied, 526 U.S. 1115 (1999)); *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 670 (8th Cir. 1992) (claimant's duty to mitigate includes exercising reasonable diligence to maintain suitable employment). A claimant does not fail to exercise reasonable diligence after voluntarily quitting employment if the resignation "is motivated by unreasonable working conditions or an earnest search for better employment." *Delight Wholesale Co.*, 973 F.2d at 670 (internal citations omitted).

It is the employer's burden to prove that the claimant did not mitigate his damages. *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 992 (8th Cir. 2007) (internal citations omitted). To carry its burden, the employer must show that "substantially equivalent work was available and that the claimant did not exercise reasonable diligence to obtain the employment." *New Prime, Inc.*, No. 6:11-CV-03367-MDH, 2015 WL 8757318 at *6. If the employer proves a failure to mitigate, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." *Delight Wholesale Co.*, 973 F.2d at 670 (quoting 42 U.S.C. § 2000e–5).

### A. Each of Werner's proposed calculations for Mr. Robinson's back pay damages is incorrect, unreasonable, and contrary to law.

Werner proposes three incorrect theories for calculating Mr. Robinson's back pay damages.[3] Each is taken in turn.

#### 1. Werner's request to terminate back pay after August 2016 is contrary to law and Defendants' stipulation.

Werner requests the Court cut off back pay after August 2016 when it alleges Mr. Robinson quit working with Covenant Transport. However, during the October 4, 2023, bench trial on back pay, Werner's counsel stipulated September 2016 was the date Mr. Robinson quit working for Covenant. Doc. 348, Transcript of Bench Trial, 69:3–8. For that reason alone, the request to terminate back pay in August 2016 should be denied.

---

[3] Contrary to Werner's assertions, the EEOC did not wait until the "eve" of trial to disclose its calculation. Doc. 350, p. 2. The EEOC informed Werner that it was cutting off the back pay period, rather than presumptively requesting back pay through the date of judgment, on August 21, 2023, six weeks before the bench trial on back pay. Werner already knew Dr. Adams's methodology for calculating back pay from his report disclosed in 2020 and cannot now assert prejudice.

Moreover, cutting off back pay because Mr. Robinson resigned from Covenant is unsupported by the record and case law. A claimant does not fail to mitigate damages by quitting in an "earnest search for better employment." *See Delight Wholesale Co.*, 973 F.2d at 670. Mr. Robinson testified he left Covenant to seek better wages. Doc. 348, Transcript of Bench Trial, 8:23–24. Contrary to Werner's assertions, it is immaterial that, at the time of his resignation, he worked as a solo driver. Working as a solo driver does not equate to making less money and Werner presented no evidence to support that point. Rather, as Mr. Robinson testified, though solo drivers may make less per mile, the number of miles they drive is not split between a team member such that it is possible to make equal or substantially equivalent pay driving solo despite the different pay rate. Doc. 348, Transcript of Bench Trial, 98:19–99:2. Mr. Robinson also testified that he left Covenant because he was not consistently receiving enough miles to afford to continue his employment there. Doc. 348, Transcript of Bench Trial, 99:3–7. Under these facts, it is undisputed Mr. Robinson left Covenant in an honest search for better employment.

To the extent Werner argues Mr. Robinson's subsequent employment history dictates the termination of back pay in August 2016, this position is simply unsupported by case law. Allegedly sporadic employment does not terminate back pay. *New Prime, Inc.*, No. 6:11-cv-03367-MDH, 2015 U.S. Dist, LEXIS 166656 at *31–32. And in this case, Mr. Robinson's employment was hardly sporadic; he worked as a truck driver from March 2016 through May 24, 2020, with only short breaks in between jobs.[4] Further, Defendants seek to use the trucking industry's turnover rate to argue contradicting positions: Defendants want credit for an industry norm on the one hand—asking the Court to limit backpay based on Werner's turnover rate—

---

[4] Doc. 348, Transcript of Bench Trial, 7:20–8:9; 9:14–20; 10:25–12:2; 12:18–21, 13:20–14:1; 51:10–14, 52:9–13; 53:16–54:8; 54:23–55:14.

11

while seeking to fault Mr. Robinson for "job-hopping" on the other. Doc. 350, p. 9. Regardless, the Court should not engage with either argument because this Court need not consider turnover rates in its calculation. *See EEOC v. Dial Corp.*, 469 F. 3d 735 (8th Cir. 2006) (finding the district court did not err in refusing to consider employer's high turnover rate to calculate back pay).[5]

Should the Court find that Mr. Robinson's voluntary resignation from Covenant was not the result of an earnest search for better employment, the Court should not terminate the back pay period. It is well-established that in such a case, the Court should toll the back pay period or reduce back pay damages by the amount the claimant would have made had he remained employed. *See Delight Wholesale Co.*, 973 F.2d at 670 (citing 42 U.S.C. § 2000e–5). Mr. Robinson is presumptively entitled to back pay damages through the date judgment is entered, and his resignation from Covenant does not render that principle obsolete. *See Ordahl v. Forward Tech. Indus., Inc.*, 301 F. Supp. 2d 1022, 1030 (D. Minn. 2004) (internal citations omitted). Finally, the undisputed record is that Mr. Robinson stopped working at Covenant in September 2016, then worked at his next trucking employer for three weeks also within September 2016, indicating at most a minimal interruption in employment. Doc. 348, Transcript of Bench Trial, 9–10.

> 2. **Werner's request to cut off back pay after February 2017 is faulty and unsupported by case law.**

Next, Werner argues that Mr. Robinson never held any trucking position for more than one year and urges the Court to therefore terminate Mr. Robinson's back pay damages in February 2017. Werner does not cite any authority in support of this position and the EEOC

---

[5] Werner also offered no evidence of their own or industry turnover rates in support of this position.

cannot identify a single case adopting the logic. The Court thus need not engage with this novel theory and should deny Werner's request, particularly in light of the principle that even allegedly sporadic employment does not terminate back pay damages. *See New Prime, Inc.*, No. 6:11-cv-03367-MDH, 2015 U.S. Dist, LEXIS 166656 at **31–32.

### 3. Werner's request to cut off back pay in August 2018 mischaracterizes the record and is unreasonable.

Finally, Werner argues that Mr. Robinson's back pay damages should be cut off in August 2018 when he was terminated from Marten Transport. In doing so, Werner mischaracterizes the record and cites inapposite case law.

First, Mr. Robinson was not terminated for misconduct. As he testified, he was terminated for violating company policy after his truck was struck by another truck driver. Doc. 348, Transcript of Bench Trial, 52:14–25. Mr. Robinson repeatedly testified that he was not at fault for the accident and that Marten's policy assesses points for an accident regardless of fault. *Id*. at 55:20–56:4. The points depend on the value of the damage to the truck. *Id.* at 53:1–4. Mr. Robinson was assessed twelve points for the accident and, despite having no points on his record before the accident, was consequently terminated. *Id.* at 52:14–25, 53:1–4, 88:24–89:18. On this undisputed record, the circumstances do not constitute misconduct. Werner received Mr. Robinson's personnel file in discovery and deposed him as well. The company could have learned more about this accident and Marten's policies to challenge Mr. Robinson's account, but it did not. Accordingly, the undisputed record supports finding Robinson's termination from Marten was not the result of misconduct.

Additionally, Werner cites inapposite cases. First, it relies upon *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1278–79 (4th Cir. 1985), where both plaintiffs failed to meet behavioral expectations at a subsequent employer, with one plaintiff doing so on at least three

separate occasions. Those plaintiffs also failed to exercise reasonable diligence to maintain suitable employment. Based on these facts, the court found it appropriate to toll back pay damages. *Id.* Importantly, even though it found the plaintiffs in *Brady* failed to mitigate their damages, the *Brady* court did not terminate back pay damages, as Werner urges here, but instead tolled the back pay period for an appropriate time. *Id.* at 1280.

Further, in another case Defendants rely on, *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937 (5th Cir. 1996), the employer terminated the plaintiff for excessive absences and personal use of company telephones, and the court vacated the back pay award to account for proper tolling of the back pay period. *Id.* at 937. Here, the record reflects that Mr. Robinson did not engage in misconduct—he was transparent and cooperative regarding responses to the accident. There is no evidence he caused the accident, and he should not be further punished for someone else's actions.

> **B.  Victor Robinson exercised reasonable diligence to mitigate his damages and the Court should award $81,100 in back pay.**

Mr. Robinson was employed for nearly the entirety of the backpay period. He fulfilled his duty to mitigate by accepting "substantially equivalent employment." *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d at 904–5 (internal citations omitted). The duty to mitigate does not require a claimant obtain identical employment but rather positions "commensurate with [his] education and skill levels." *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 618 (8th Cir. 2000) (affirming back pay award and finding no failure to mitigate where claimant did not obtain employment in the same industry but did obtain positions commensurate with her education and skill levels).

Here, the record demonstrates Mr. Robinson obtained substantially equivalent employment by working as a truck driver continually throughout the back pay period. All

14

positions required similar education and skill levels and were within the trucking industry. Moreover, Werner has offered no evidence Mr. Robinson refused a position that was substantially similar or that he failed to use reasonable care in obtaining employment. On these facts, Werner has not met its burden to prove a failure to mitigate, and the Court should deny Werner's request to terminate back pay. *See Henderson*, 217 F.3d at 618 (affirming back pay award where the defendant proffered "no evidence that [plaintiff] refused a position that was substantially similar to her previous employment or that she failed to use reasonable care in obtaining a suitable position.").

Should the Court agree that Mr. Robinson failed to obtain substantially equivalent employment at any time during the back pay period, it should only toll or reduce his back pay damages through October 2019, when he began working as an over-the-road truck driver for Western Express. Doc. 348, Transcript of Bench Trial, 55:3–4; 96:9–11; *see Delight Wholesale Co.*, 973 F.2d at 670 (citing 42 U.S.C. § 2000e-5).

### 1. All of Mr. Robinson's resignations were the result of unreasonable working conditions or the earnest search for better employment.

"Although a claimant fails to mitigate damages by voluntarily quitting comparable interim employment for personal reasons, a voluntary quit does not toll the back pay period when it is motivated by unreasonable working conditions or an earnest search for better employment." *Delight Wholesale Co.*, 973 F.2d at 670 (citing *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1277–78 (4th Cir. 1985)). "There is no requirement that a victim of discrimination must stay with a single employer, only that [h]e make reasonable efforts to mitigate." *New Prime, Inc.*, No. 6:11-cv-03367-MDH, 2015 U.S. Dist, LEXIS 166656 at *31–32. All of Mr. Robinson's resignations were motivated by unreasonable working conditions or the honest search for better employment, and the Court should not toll or reduce back pay damages.

15

Mr. Robinson resigned from Covenant Transport to seek better wages, an earnest search for better employment. Doc. 348, Transcript of Bench Trial, 8:23–24. Mr. Robinson then worked for Jacobson, where he was let go because, despite Jacobson's prior assertions, it could not provide him with a ten-speed truck. *Id*. at 10:12–15, 99:11–18. He next worked for U.S. Xpress until he resigned due to abusive working conditions. *Id*. at 12:8–9. Abusive working conditions constitute unreasonable working conditions, and this Court should decline tolling the back pay period.

Next, Mr. Robinson worked for J.B. Hunt until he resigned because the company pressured him to violate regulations by working overtime and carrying overweight loads. *Id*. at 14:5–9. Violating regulations also constitutes unreasonable working conditions, and Mr. Robinson's back pay period should not be tolled. *See Maverick Transp., LLC v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 739 F.3d 1149, 1157 (8th Cir. 2014), as corrected (Jan. 17, 2014) (declining to toll back pay period where claimant quit subsequent employer because it pressured him to violate hour-of-service regulations, creating unreasonable working conditions).

Mr. Robinson then worked for Marten Transport until he was terminated after another vehicle struck his truck. *Id*. at 52:14–25. Mr. Robinson next drove for Stan Koch & Sons until he left for Western Express in an earnest search for better employment, as driving flatbed trucks was an opportunity and his dream. *Id*. at 54:9–11. Under these circumstances—which Werner subjected to cross-examination but otherwise did little to challenge—each job change was motivated by unreasonable working conditions or the earnest search for better employment. Accordingly, Mr. Robinson made reasonable efforts to mitigate his damages, and the Court should grant back pay damages through May 2020.

In the alternative, should the Court find Mr. Robinson failed to mitigate his damages at any time, the Court should only toll or reduce Mr. Robinson's back pay damages in accordance with the wages he would have made had he mitigated his damages. *See Delight Wholesale Co.*, 973 F.2d at 670 (citing 42 U.S.C. § 2000e–5).

### 2. Mr. Robinson is entitled to recover back pay damages through May 14, 2020, including 401(k) distributions and matching contributions he would have earned at Werner.

Mr. Robinson would have made 401(k) contributions at Werner. Trial Exhibit 86, Adam's Expert Report, p. 3. Werner cites no case law to support the denial of matching contributions because of a failure to make contributions at subsequent employers. Werner also never cross-examined Mr. Robinson about his claim that he would have chosen 401(k) distributions and matching contributions from Werner. Moreover, to the extent Werner takes issue with Dr. Adams "extrapolating" Werner pay and benefits for his updated calculations, Werner failed to cooperate with the EEOC request to update its pay and benefits information made in May 2022. *See* Ex. 1, attached. It cannot now fault Dr. Adams for extrapolating information it failed to provide. Doc. 350, p. 13. It also did not depose Dr. Adams regarding his expert report, nor did it hire its own expert to counter his calculations. On this record, included the undisputed testimony that Mr. Robinson worked as a truck driver through May 14, 2020, he is entitled to recover back pay damages through May 14, 2020, including for 401(k) distributions and matching contributions.

### 3. Mr. Robinson is entitled to prejudgment interest.

Mr. Robinson is entitled to prejudgment interest included in the back pay award. Werner ignores the EEOC's argument that prejudgment interest is both not a separate damage and is a form of equitable relief.

Werner takes further issue with Dr. Adams's interest calculation, arguing the EEOC failed to disclose the exact interest rate used to update its interest calculation. Doc. 350, p. 14. But Dr. Adams's report made clear he uses the Internal Revenue Service's ("IRS") interest rate. Trial Exhibit 86, Dr. Adams' Expert Report, p. 9. The IRS's interest rate is publicly accessible, and Werner could have accessed this information at any time. Further, Werner could have consulted its own expert or examined a witness regarding Werner's preferred interest rate but chose not to do so. Under these facts, Werner has not shown any prejudice from Dr. Adams's not stating the exact interest rate used to update his interest calculation. Accordingly, this Court should award Mr. Robinson prejudgment interest as part of the back pay award.

## IV.     Conclusion

A jury determined Werner violated the law and did so with malice or reckless disregard for Mr. Robinson's rights, awarding $36,000,000 in punitive damages. In making its determination, the jury necessarily found Mr. Robinson, though deaf, was qualified to participate in Werner's over-the-road training program. Unphased by the jury's rebuke, Werner now asks permission to continue discriminating against other deaf drivers. The Court should hold the company to its obligations and enter injunctive relief. The Court should also make Mr. Robinson whole and award him the backpay he is entitled to under the law.

Respectfully submitted,

*/s/ Meredith S. Berwick*
Meredith Berwick, MO Bar No. 64389
Equal Employment Opportunity Commission
1222 Spruce Street, Room 8.100
St. Louis, MO 63103
Phone: (314) 798-1909
Fax: (314) 539-7895
meredith.berwick@eeoc.gov

Joshua M. Pierson, KS Bar No. 29095  
Lauren M. Wilson, FL Bar No. 1024850  
Equal Employment Opportunity Commission  
400 State Avenue, Suite 905  
Kansas City, Kansas 66101  
Phone: (913) 359-1807  
Facsimile: (913) 551-6957  
joshua.pierson@eeoc.gov  
lauren.wilson@eeoc.gov  

*Attorneys for Plaintiff EEOC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 5906 words, which includes all text, including the caption, headings, footnotes, and quotations, as determined by Microsoft Word for Office 365 ProPlus.

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Meredith S. Berwick*