IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff,

vs.

DRIVERS MANAGEMENT, LLC,
and WERNER ENTERPRISES, INC.

Defendants.

8:18-CV-462

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

The plaintiff, the Equal Employment Opportunity Commission (EEOC), sued the defendants, Drivers Management, LLC and Werner Enterprises, Inc. (collectively "Werner"), on behalf of Victor Robinson. In September 2023, a jury returned a verdict in favor of the plaintiff, awarding $75,000 for Robinson's pain and suffering and $36,000,000 in punitive damages.[1] Filing 323 at 2.

Under 42 U.S.C. § 1981a(b)(2), an award of backpay in this type of case is equitable relief, though monetary in nature. *See Pedigo v. P.A.M. Transp., Inc.,* 60 F.3d 1300, 1303 (8th Cir. 1995); *Maitland v. Univ. of Minn.,* 155 F.3d 1013, 1018 (8th Cir. 1998). Because a jury determined that Werner discriminated against Robinson on the basis of his disability, the Court must determine whether and in what amount Robinson is entitled to backpay. *See Arroyo v. Volvo Grp. N.A., LLC.,* No. 12-cv-6859, 2017 WL 2985649, at *4 (N.D. Ill. July 13, 2017); *EEOC v. Wal-Mart Stores, Inc.,* No. 17-cv-739, 2020 WL 1527324, at *1-2 (W.D. Wisc. March 31, 2020). To make this determination,

---

[1] Werner moved to reduce the judgment for compensatory and punitive damages to the statutory cap. Filing 337. The motion will be granted. *See* 42 U.S.C. § 1981a(b)(3)(D).

and to determine the nature and scope of any other equitable relief under 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(g)), this Court held a bench trial on October 4, 2023.

## I. FINDINGS OF FACT

Having presided over the jury trial and subsequent bench trial, the Court is quite familiar with the facts. To the extent those facts remain disputed, the Court finds the following narrative to have been proven by a preponderance of the evidence.

Victor Robinson applied to work for Werner in January 2016. He is deaf, with a commercial driver's license and an exemption from the Federal Motor Carrier Safety Administration (FMCSA) physical qualification standards concerning hearing for interstate drivers. *See* 80 Fed. Reg. 18924-01 (Apr. 8, 2015). Werner did not hire Robinson. The EEOC sued Werner, alleging that Werner discriminated against Robinson on the basis of his deafness.

Werner's position was that it could not safely train inexperienced deaf drivers like Robinson. *E.g.,* filing 322 at 6, 12; filing 345, *passim*. Werner specifically argued that Robinson, and other FMCSA hearing exemption holders, could not complete the trainer-observed over-the-road component of Werner's training program. Under this program, Werner required drivers with less than six months' trucking experience to drive alongside a trainer on a real over-the-road trucking route. Werner claimed that it believed there was no way a trainer could safely communicate with a deaf driver while the two were driving together. Despite the federal government's approval, and despite evidence of other trucking companies' ability to train deaf drivers (*e.g.*, filing 344 at 83), Werner argued that it could not hire inexperienced deaf drivers because of safety concerns.

A jury rejected Werner's position and determined that Robinson was qualified to perform the job to which he applied, he could have safely performed the essential functions of the job with a reasonable accommodation, and Werner's refusal to hire Robinson was not based on business necessity. *See* filing 322; filing 323. The Court determined, because a jury found Robinson was qualified and could have performed the essential functions of the job with a reasonable accommodation, the plaintiff had shown as a matter of law that Werner failed to hire Robinson because of his disability. Filing 316 at 5.

The jury also determined that Werner acted with malice or reckless indifference towards Robinson's right not to be discriminated against on the basis of his deafness. And, the jury determined that Werner did not act in good faith when it rejected Robinson. Pursuant to those factual findings, the jury awarded damages intended to punish Werner for its misconduct.

*Robinson's Over-the-Road Trucking Jobs*

Robinson learned that Werner would not hire him around February 15, 2016. Between that day and May 14, 2020, when he no longer possessed an FMCSA hearing exemption, Robinson worked at the following companies as a commercial truck driver:

| Company | Timeline | Reason for Leaving |
|---|---|---|
| Covenant | Mar. 2016 – Sept. 2016 | Wanted more compensation (quit) |
| Jacobson Transport (XPO) | Sept. 2016 – Oct. 2016 | Wrong type of truck (terminated) |
| U.S. Xpress, Inc. | Oct. 2016 – Apr. 2017 | "Cruel" customers (quit) |
| J.B. Hunt | May 2017 – Jan. 2018 | Unethical, long hours (quit) |
| Marten Transport | Jan. 2018 – Aug. 2018 | Accident (terminated) |
| Stan Koch Trucking | Sept. 2018 – Sept. 2019 | Accepted different job (quit) |

| Western Express | Oct. 2019 – May 2020 | Medical reasons (quit) |
|---|---|---|

Robinson's job at each of these companies is comparable to the position he applied to at Werner. One distinction is that Robinson would have been an "over-the-road" driver had he been hired by Werner, meaning he would have spent days or weeks away from home. But when Robinson worked for Marten and J.B. Hunt,[2] he was a "local" driver, meaning he was home every night.

The plaintiff presented an expert, economist Dr. Nathan Adams, to calculate Robinson's backpay. In his expert report, trial exhibit 86, Adams utilized information from Werner to calculate the average pay an employee in the position to which Robinson applied would have earned between February 2016 and December 2019. Adams extrapolated the salary data from Werner to calculate what an employee in that position would have earned between January and May 2020 and presented those numbers for the first time at the bench trial. Adams also calculated the value of the health insurance and 401(k) benefits Robinson would have been expected to take advantage of had he been employed by Werner. Because Adams did not have the exact hire dates for Robinson's other employment, his calculations assume that Robinson was employed for the entire month. During months where Robinson held two jobs, Adams assumed he was employed half of the month in both jobs. This likely led to an overestimation in what Robinson earned at these jobs. *See* ex. 86 at 7. Adams' relevant calculations from his report are as follows:

---

[2] Robinson testified that he left J.B. Hunt because had he actually driven home every night, he would have driven more hours than legally allowed, so it was not truly a local driver job, and he found the company to be unethical for this reason.

4

Table 2: **CONFIDENTIAL** Estimated annual compensation from Werner

| Year | Mean annual salary | Benefits 401(k) | Benefits Stock | Benefits Medical | Total |
|---|---|---|---|---|---|
| *Panel A: Mr. Robinson* | | | | | |
| 2016 | $37,382.43 | $258.25 | $0 | $6,252.75 | $43,893.44 |
| 2017 | $48,932.35 | $733.99 | $0 | $9,535.56 | $59,201.89 |
| 2018 | $51,727.13 | $775.91 | $0 | $7,464.48 | $59,967.52 |
| 2019 | $53,941.47 | $809.12 | $0 | $5,505.96 | $60,256.55 |

Table 3: Mr. Robinson's post-application earnings

| Company | Wages | Medical Benefits | Total |
|---|---|---|---|
| *Panel A: 2016* | | | |
| Covenant | $17,222.17 | $3,588.82 | $20,810.99 |
| XPO | $675 | $0 | $675 |
| US Xpress, Inc. | $9,975.00 | $0 | $9,975.00 |
| **Total** | $27,872.95 | $3,588.82 | $31,461.77 |
| *Panel B: 2017* | | | |
| US Xpress, Inc. | $17,887.00 | $3,204.67 | $21,091.67 |
| J.B. Hunt | $33,336.00 | $2,440.00 | $35,776.00 |
| **Total** | $51,223.00 | $5,644.67 | $56,867.67 |
| *Panel C: 2018* | | | |
| J.B. Hunt | $1,887.00 | $399.00 | $2,286.00 |
| Marten | $21,390.05 | $4,550.61 | $25,940.66 |
| Stan Koch | $10,824.50 | $0 | $10,824.50 |
| **Total** | $34,101.55 | $4,949.61 | $39,051.16 |
| *Panel D: 2019* | | | |
| Stan Koch | $31,998.76 | $6,211.15 | $38,209.91 |
| Western Express | $3,855.06 | $2,149.47 | $6,004.53 |
| **Total** | $35,853.82 | $8,360.62 | $44,214.44 |

| Year | Werner Wages+Benefits | Mitigation Wages+Benefits | Subtotal | Interest | Total |
|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) |
| *Panel A: Mr. Robinson* | | | | | |
| Tax Penalty | — | — | $606.00 | $218.25 | $824.25 |
| 2016 | $43,893.44 | $31,461.77 | $12,431.67 | $1,856.26 | $14,287.93 |
| 2017 | $59,201.89 | $56,867.67 | $2,334.23 | $245.36 | $2,579.58 |
| 2018 | $59,967.52 | $39,051.16 | $20,916.36 | $1,150.40 | $22,066.76 |
| 2019 | $60,256.55 | $44,214.44 | $16,042.11 | $0 | $16,042.11 |
| **Total** | $223,319.41 | $171,595.03 | $52,330.37 | $3,470.26 | **$55,800.63** |

The "tax penalty" line item represents losses that Robinson allegedly incurred when he made early withdrawals from his retirement account to support his family while he was unemployed (including interest on those losses). Adams' report indicates that he calculated prejudgment interest by using the IRS interest rates used for the underpayment of taxes. The plaintiff asserts that Robinson is owed $81,100 in backpay for the period between February 2016 and May 2020, inclusive of prejudgment interest and exclusive of compensation Robinson earned at his other trucking jobs. Filing 349 at 11.

## II. CONCLUSIONS OF LAW

### 1. BACKPAY

Claimants who prove employment discrimination are presumptively entitled to backpay. *Stragapede v. City of Evanston, Ill.,* 865 F.3d 861, 868 (7th Cir. 2017); *see also Albarmarle Paper Co. v. Moody*, 422 U.S. 405, 421-22 (1975). To calculate backpay, the Court will:

- Determine the amount of any wages and fringe benefits the plaintiff proved Robinson would have earned throughout the date of the verdict, or some other cut-off date;

- Subtract the amount of earnings and benefits that Robinson received from other employment;

- Reduce the damages by the amount Werner proved Robinson could have avoided by taking advantage of an opportunity reasonably available to him; and

- Consider any other reductions justified by independent reasons proven by Werner as to why Robinson would not have been employed by Werner before the verdict.

*E.g., Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061-62 (8th Cir. 2002); *Cleverly v. W. Elec. Co.,* 450 F. Supp. 507, 511 (W.D. Mo. 1978), *aff'd*, 594 F.2d 638 (8th Cir. 1979); *see Arroyo,* 2017 WL 2985649, at *4 (collecting cases); *Wal-Mart Stores,* 2020 WL 1527324, at *1-2.

### *Cut-Off Date*

The cut-off date asserted by the plaintiff is May 14, 2020, when Robinson stopped working as a commercial truck driver and no longer held an FMCSA hearing exemption. *See* filing 349 at 13. Werner argues that the Court should limit Robinson's backpay through August 2016, February 2017, or August 2018, based on Robinson's performance at other trucking companies and based on Robinson's choice to quit various jobs for personal reasons. Filing 350 at 3.

In the interests of equity, based on Werner's evidence of the high turnover rate in the industry, *see* filing 350 at 9, and Robinson's own work history, the Court will limit the backpay period to the end of 2018. The preponderance of the evidence indicates that Robinson would likely not have been employed by Werner beyond that date.[3] *See E.E.O.C. v. Delight Wholesale Co.,* 973 F.2d 664, 670-71 (8th Cir. 1992).

### *Calculation*

According to the plaintiff's calculations, had Robinson worked at Werner from February 2016 to December 2018, he would have earned $163,062.85, inclusive of wages and benefits. Robinson actually earned $127,380.60, inclusive of wages and benefits, during that time. Ex. 86 at 15. The backpay award, then, is $163,062.85 less $127,380.60, which equals $35,682.25.

Robinson also seeks repayment for losses he incurred when he made early withdrawals from his retirement account after Werner did not hire him.

---

[3] Because the Court is cutting off the backpay period, it need not address Werner's argument that the plaintiff failed to disclose certain calculations between January and May 2020.

But Robinson did not prove by a preponderance of the evidence that he made those withdrawals because Werner did not hire him. Robinson found a comparable job and he was paid on March 11, 2016. The plaintiff did not provide any evidence—bank statements or otherwise—showing when Robinson made the alleged withdrawals. *See* filing 348 at 62. The backpay award will not include any losses associated with the "tax penalty" in Adams' report.

*Interest*

The Court must also determine whether to include prejudgment interest in the plaintiff's backpay award. The award of prejudgment interest, in the absence of statutory directives, rests in the discretion of the district courts. *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 313 F.3d 1087, 1093 (8th Cir. 2002) (quoting *Cargill, Inc. v. Taylor Towing Serv., Inc.,* 642 F.2d 239 (8th Cir. 1981)). Prejudgment interest "is part of full compensation" under the ADA, and is "necessary to carry out the federal policies of compensation and deterrence." *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1297 (7th Cir. 1987) (collecting cases).

Werner argues that the plaintiff waived the right to collect *any* prejudgment interest because it failed to include this request in the final pretrial conference order, or any other pleading. Filing 350 at 11 (citing *Crabar/GBF, Inc. v. Wright,* No. 8:16-cv-537, 2023 WL 6125519, at *4 (D. Neb. Sept. 19, 2023)). The Court is not convinced.

The Supreme Court has allowed parties to request prejudgment interest for the first time even in a postjudgment motion. *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 175 (1989); *see also Leonard v. S.W. Bell Corp. Disability Income Plan,* 408 F.3d 528, 533 (8th Cir. 2005) (allowing a party to request prejudgment interest on remand); *cf. Travelers Prop. Cas. Ins. Co. of*

*Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.,* 735 F.3d 993, 1008 (8th Cir. 2013) ("[A] party's failure to request postjudgment interest is not fatal to a prevailing party's entitlement to such interest"). This makes sense, because unlike categories of damages like lost profits—a fact issue determined by a jury—prejudgment interest is part of "full compensation" determined by the Court and awarded solely in the Court's discretion. *See West Virginia v. United States,* 479 U.S. 305, 310 (1987); *Turn Key Gaming,* 313 F.3d at 1093; *cf. Crabar,* 2023 WL 6125519, at *4 (citing Fed. R. Civ. P. 16 committee notes on 1983 amendment (requiring counsel to identify "factual issues worthy of trial" by including those issues in a pretrial conference order)).

Based on the foregoing, the plaintiff is not even required to *disclose* prejudgment interest calculations, contrary to Werner's assertions. The Court, not the plaintiff, has the responsibility to determine an appropriate interest rate and to calculate interest. *See Leonard,* 408 F.3d at 533; *Sanders v. Union Pac. R.R. Co.,* No. 4:20-cv-3023, 2022 WL 3446132, at *2-3 (D. Neb. Aug. 17, 2022); *Turn Key Gaming,* 313 F.3d at 1092-93; *Arroyo,* 2017 WL 2985649, at *10; *Miller v. Bd. of Regents of Univ. of Minn.,* 402 F. Supp. 3d 568, 591 (D. Minn. 2019); *Ohio River Co. v. Peavey Co.,* 731 F.2d 547, 549 (8th Cir. 1984) ("We have approved different approaches to deriving a rate of interest which will make the plaintiff whole," including the average prime interest rate during the relevant period, and the prevailing rate of interest (citations omitted)).

The Court has now determined the appropriate backpay award. The plaintiff's expert's report provides little guidance in how interest was calculated. *See* ex. 86 at 15. Recognizing the need for additional evidence, the Court will permit the plaintiff to request a specific prejudgment interest amount in a Rule 59(e) motion to amend the judgment. *See Osterneck,* 489 U.S. at 175; *Leonard,* 408 F.3d at 533; *Sanders,* 2022 WL 3446132, at *1.

9

The Court is inclined to award prejudgment interest based on the total backpay award, including benefits and wages.[4] *See Doyne v. Union Elec. Co., 755 F. Supp. 866, 869 (E.D. Mo. 1991)* (citing *Behlar v. Smith, 719 F.2d 950, 954 (8th Cir. 1983), cert. denied, Univ. of Ark. Bd. of Tr. v. Greer, 466 U.S. 958 (1984))*; *Sanders, 2022 WL 3446132, at \*2*; *but see Arroyo, 2017 WL 2985649, at \*10-11.* The plaintiff is encouraged to review the cases cited by the Court, provide *detailed* calculations for prejudgment interest to be added to the $35,682.25 backpay award, and explain why the chosen rate is suitable to make Robinson whole. Werner may contest the plaintiff's numbers and provide its own calculations. In the interests of efficiency, knowing the Court will award prejudgment interest, the parties *are encouraged* to stipulate to an appropriate interest award.

### 2. OTHER EQUITABLE RELIEF

If a court finds that a defendant "has intentionally engaged" in disability discrimination, the Court, in its discretion, may provide any appropriate equitable relief. §§ 2000e-5(g), 12117(a); *see also Wedow v. City of Kansas City, 442 F.3d 661, 676 (8th Cir. 2006)* (citing *Franks v. Bowman Transp. Co., 424 U.S. 747, 764 (1976))*; *Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998)*. Once a party has demonstrated success on the merits, the Court must balance three factors to determine whether injunctive relief is merited: (1) the threat of irreparable harm; (2) the harm suffered by the nonmoving party; and (3) the public interest. *E.g., Layton, 143 F.3d at 472*; *see Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)*.

---

[4] But, since the plaintiff has already met the statutory cap for compensatory damages, no interest may be awarded for those damages. *See § 1981a(b)(4).*

The plaintiff has succeeded on the merits. Based on the above factors, injunctive relief is appropriate in this case. The evidence adduced at trial and the jury's verdict indicate that Werner intentionally refused to hire inexperienced deaf drivers, and has continued to discriminate against FMCSA hearing exemption holders on the basis of their disability, at least as of Robinson's trial. However, the plaintiff's proposed injunctive relief does little more than order Werner to obey the law, and the Court does not find such an order proper in this case. *See* filing 349 at 2; *Powell v. Noble,* 36 F. Supp. 3d 818, 836-37 (S.D. Iowa 2014) ("obey the law" injunctions are "routinely found inappropriate under Fed. R. Civ. P. 65(d)" (citing *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.,* 824 F.2d 665, 669 (8th Cir. 1987))).

The scope of injunctive relief against continued discrimination should be designed to prevent similar misconduct, and must be related to the violation with which the defendants were originally charged. *EEOC v. HBE Corp.,* 135 F.3d 543, 557-58 (8th Cir. 1998); *EEOC v. AutoZone, Inc.,* 707 F.3d 824, 842-43 (7th Cir. 2013) (quoting *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 767 (4th Cir. 1998)). "[U]pon a finding of any intentional employment discrimination, a district court possesses broad discretion to craft an injunction that will ensure the employer's compliance with the law." *EEOC v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 468 (6th Cir. 1999); §§ 2000e-5(g), 12117(a). And the plaintiff may obtain general injunctive relief to correct discrimination uncovered during an investigation of the charge of just one individual. *Frank's Nursery,* 177 F.3d at 468-69 (collecting cases); *see also HBE Corp.,* 135 F.3d at 557.

A jury rejected Werner's argument that it was concerned about safety. Instead, the jury awarded a multi-million dollar punitive damages award, intending to punish Werner for its malice or reckless indifference towards the

11

right of Robinson and other deaf individuals not to be discriminated against. Werner's repeated assertions that it would not hire inexperienced deaf drivers, despite knowing the law and complying with federal antidiscrimination laws in other respects, constitutes intentional discrimination. *E.g.*, filing 345, *passim*; filing 346, *passim*; filing 316. But the statute caps punitive damages at $300,000, not even *one percent* of the jury's intended award—an amount which will do little to deter Werner from future discriminatory hiring decisions. Werner discriminated against Robinson nearly eight years ago, and this lawsuit has dragged on for over five years. The EEOC was unable to identify other deaf applicants who were not hired by Werner because Werner, it says, does not keep that kind of information.

Injunctive relief should be targeted at assisting the EEOC in identifying discrimination by Werner. In a typical disability discrimination case, the EEOC has to wait for a victim of discrimination to come to it. But if Werner is required to report any deaf applicants and the disposition of their application to the EEOC, the EEOC can proactively find those applicants and investigate Werner's hiring decision accordingly.

It's clear, from the different outcomes of this case and the companion *Dueschle* case (no. 8:16-cv-329), that employment decisions rest on complicated factual issues. Litigating those facts through contempt orders in an injunction is impracticable. Werner is entitled to defend its employment decisions on a case-by-case basis, with the full due process afforded by the ADA and Federal Rules of Civil Procedure. But based on the jury's verdict, Werner has not acted in good faith and did not comply with antidiscrimination laws when it intentionally discriminated against Robinson on the basis of his deafness.

For these reasons, the Court finds that injunctive relief imposing semi-annual recording and reporting requirements on Werner will serve the

interests of equity and the public. Such a requirement is in line with injunctive relief premised on employment discrimination in this jurisdiction. *See HBE Corp.*, 135 F.3d at 557-58. Balancing the harms to each party, these requirements will not harm Werner so long as Werner complies with federal law. The reports may even enable Werner to avoid future lawsuits by demonstrating its good faith efforts to comply with the ADA.

Werner (including any subsidiaries) will be expected to keep a record of any deaf truck driving applicants, and will be expected to report those records to the EEOC. Those records shall include, at a minimum:

- The name and available contact information for any hearing-impaired applicant for an over-the-road truck driving position.
- The date of that application.
- Whether or not the applicant was hired.
- The dates on which the employment decision was made and communicated to the applicant.
- The basis for declining to hire any of the above-described applicants.
- Whether any applicant hired remains employed with Werner six months after being hired, and if not, the reason for the separation.

Werner shall provide those records to the EEOC through the EEOC's counsel in this case or other office of the EEOC's choosing, no less frequently than every six months, starting from the date of this order. Werner shall, upon compliance with that reporting requirement, file a certificate of service with this Court. Werner will bear all the costs associated with these recording and reporting requirements. The requirements will be imposed for a period of three years, after which the Court will convene a hearing to determine whether Werner has

complied with the Court's order, and whether the injunction should be modified, extended, or terminated.

Accordingly,

IT IS ORDERED:

1.  The Court finds that the defendants intentionally engaged in discrimination when they failed to hire Robinson on the basis of his disability in violation of 42 U.S.C. § 12112(a).

2.  The Court finds that Victor Robinson is entitled to backpay in the amount of $35,682.25 pursuant to 42 U.S.C. § 12117 (incorporating § 2000e-5(g)).

3.  The Court finds that injunctive recording and reporting requirements are warranted pursuant to § 2000e-5(g).

4.  The plaintiff shall request prejudgment interest in a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) no later than 28 days after the entry of judgment.

5.  The defendants' motion to apply the statutory maximum for compensatory and punitive damages (filing 337) is granted.

6.  The Clerk of the Court shall set a status report deadline for June 10, 2024, with the following docket text: Check for certificate of service for records reporting.

14

7.    The Clerk of the Court shall set a case management deadline for January 10, 2027, with the following docket text: Schedule hearing to evaluate injunction.

8.    A separate judgment will be entered.

Dated this 10th day of January, 2024.

BY THE COURT:

_____

John M. Gerrard
Senior United States District Judge

15