IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DRIVERS MANAGEMENT, LLC and WERNER ENTERPRISES, INC.,<br><br>Defendants. | CASE NO: 8:18-CV-462<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL OR TO ALTER OR AMEND THE JUDGMENT** |

On September 1, 2023, a jury of eight Nebraskans swiftly returned a unanimous $36,075,000 verdict in favor of the Plaintiff Equal Employment Opportunity Commission (EEOC). Now, Werner seeks to overturn the jury's verdict and the Court's decision to order injunctive relief. But a new trial is not warranted because the Court properly decided certain issues—including causation, undue burden, and direct threat—as a matter of law, and its evidentiary rulings were sound. And Werner is not entitled to judgment as a matter of law because possessing an FMCSA Hearing Exemption does not, as Werner argues, make a deaf driver "unqualified" to drive a tractor-trailer, and there was more than sufficient evidence from which the jury could reasonably find that Victor Robinson was qualified to work as a truck driver for Werner as well as for punitive damages. Finally, the Court should not alter or amend the judgment; the Court was authorized to order injunctive relief, and the injunction is narrow and tailored to the facts of this case.

I. Argument

    A. There is no legal basis for granting a new trial because the Court's evidentiary rulings and instructions to the jury were proper.

1

Werner asserts that this Court must throw out the jury's verdict and give the company a "do-over" based on two theories – that the Court improperly instructed the jury and that it made erroneous evidentiary rulings during trial. Neither of these assertions is true. This Court properly ruled on causation, undue hardship, and direct threat as a matter of law, removing those issues from the jury's purview, and it properly placed the issue of punitive damages in the jury's capable hands. Similarly, the Court's evidentiary rulings were proper under Eighth Circuit precedent and the Federal Rules of Evidence; but even if any error existed, it would not meet the high standard required to order a new trial.

To the extent Werner's request for a new trial is based on the Court's alleged failure to give the jury a proposed instruction, the company must show the Court abused its discretion and that "the omitted instruction (1) correctly state[d] the applicable law; (2) address[ed] matters not adequately covered by the charge; and (3) involve[d] a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case." *Am. Family Mut. Ins. Co. v. Graham*, 792 F.3d 951, 958 (8th Cir. 2015) (internal quotations omitted). "A district court has broad discretion in formulating jury instructions." *Lighting & Power Servs. v. Roberts*, 354 F.3d 817, 819 (8th Cir. 2004). Review of jury instructions "is limited to determining whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and applicable law to the jury." *Id.* (citing *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1058–59 (8th Cir. 2002)).

To the extent Werner requests a new trial based on allegedly erroneous evidentiary rulings, it "must show the error[s] affected [its] substantial rights and that a new trial would likely produce a different result." *Graham*, 792 F.3d at 957 (citing *Pointer v. DART*, 417 F.3d 819, 822 (8th Cir. 2005) and Fed. R. of Evid. 103). In weighing whether to order a new trial, the

Court must determine whether the evidentiary rulings at issue were so prejudicial as to require a new trial which would be likely to produce a different result. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200 (8th Cir. 1990).

Here, neither of these standards are met. The Court did not abuse its discretion by determining the causation, undue hardship, and direct threat issues as a matter of law, or by giving a punitive damages instruction. And the Court's evidentiary rulings were not erroneous. For the reasons explained below, none of the seven issues raised by Werner support throwing out the jury's verdict and re-trying this case.

> 1. The Court correctly determined causation as a matter of law based on the overwhelming uncontroverted evidence—including Werner's own admissions—that Werner rejected Robinson because he is deaf.

"But for" causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton Cnty., GA*, 140 S. Ct. 1731, 1739 (2020) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). "Often, events have multiple but-for causes." *Bostock*, 140 S. Ct. at 1739. "So long as the plaintiff's [disability] was one but-for cause of th[e employer's] decision, that is enough to trigger the law." *Id*.

Here, but for Robinson's disability, Werner would have hired him. Throughout this litigation, from discovery through trial, Werner consistently claimed it did not hire Robinson because it believed it was impossible to accommodate his deafness. As the company stated in response to interrogatories:

> "Werner did not hire Robinson because it believes that Robinson could not safely complete Werner's student driver training program. Werner's over-the-road training involves a trainer communicating to the student driver while the student is driving or while the trainer is driving. *Because Robinson is deaf*, that communication would have been given to him by sign language or signs, which would require either Robinson or the driver trainer to divert his attention from the road[.]"

Trial Ex. 60, Werner's Supplemental Answers to EEOC's First Interrogatories, No. 5 (emphasis added). At trial, Werner identified no other reason for its hiring decision, and it has also identified no other reason for its belief that Robinson could not safely complete its training program. Trial Transcript Vol. IV at 855–56. Werner itself unequivocally established the "causal link" between Robinson's disability and its employment decision—specifically, that but for Robinson's deafness, it would have hired him. *See Brown v. City of Jacksonville*, 711 F.3d 883, 889 (8th Cir. 2013) (recognizing that the ADA requires a plaintiff to establish a "causal link" between his disability and an adverse action).

Werner seeks to distinguish between a "consequence of" Robinson's disability and his disability itself, relying on *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997), and *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1219 n.3 (8th Cir. 1999). Werner also seeks to equate causation with animus. But *Matthews* and the cases relying upon it are inconsistent with the ADA on these points.[1] Contrary to *Matthews*, a plaintiff need not establish animus to prove disability discrimination, because "the [ADA] speaks in terms of causation, not animus." *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018) (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–17 (6th Cir. 2012) (en banc)). The ADA prohibits discrimination "on the basis of disability," which includes limiting an employee in ways that adversely affect his opportunities or status "because of [his] disability." 42 U.S.C. § 12112(a), (b)(1). "An employer violates the [ADA] whenever it discharges an employee 'on the basis of disability' (a necessary requirement for liability), not

---

[1] *Matthews* and *Mole* are decisions from 1997 and 1999 respectively, predating the definitive *Bostock* decision, with its clear holding on the meaning of "but for" causation, by more than twenty years.

4

only when it harbors ill will (a sufficient way of establishing liability). 42 U.S.C. § 12112(a)." *Dolgencorp, LLC*, 899 F.3d at 436.

Further, there is no legitimate distinction between the "consequences" of an individual's disability and the fact that they are disabled. In this case, Werner claims that it treated Robinson differently because of the company's safety standards, not because of Robinson's disability. But Werner's alleged safety concerns are directly tied to Robinson's inability to hear. But for Robinson's deafness, Werner would have hired him. Causation was uncontroverted. Rather, Werner's alleged safety concerns were relevant to the issue of whether Robinson was qualified for the job with Werner – an issue that was decided by the jury. Doc. 316 at 3 ("Rather than disproving causation, Werner's evidence and arguments raise a contestable issue of fact that Robinson was qualified to do the over-the-road truck driver job for which he applied.").

Similarly, Werner's focus on "contemporaneous communication" is simply another way of expressing Werner's view that hearing is a job requirement. Werner wants drivers to utilize their sense of hearing to accomplish over-the-road training. But again, this is relevant to an applicant's qualifications, not causation. Robinson's inability to hear is not a consequence of his disability, it is his disability. Simply rephrasing "hearing" as "contemporaneous communication" does not create a separate cause distinct from Robinson's disability. Moreover, Werner's position that deaf drivers must communicate the same way hearing individuals communicate directly contradicts the purpose of the ADA. "Were [courts] to give conclusive weight to the employer's opinion on this issue ... any employer ... would escape ADA and MHRA liability simply by defining job duties in a manner that excludes disabled employees." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 787 (8th Cir. 2004).

An employer cannot resolve causation in its favor by claiming the reason it relied upon for the adverse employment action included no animus toward the protected group. In *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702 (1978), a case cited in *Bostock*, the employer required women to make larger pension fund contributions than men. The employer defended by arguing that it was not sex which caused the difference but women's likelihood of living longer, "a statistically accurate statement about life expectancy." *Bostock*, 140 S. Ct. at 1743. Still, the Court in *Manhart* held the defendant violated Title VII. The employer "could not 'pass the simple test' asking whether an individual female employee would have been treated the same regardless of her sex." *Id.* (citing *Manhart*, 437 U.S. at 711). Here, too, Werner cannot say that Robinson would have been treated the same, regardless of his disability.

Finally, it is absurd for Werner to now claim the jury could have found that because Robinson "lacked the requisite six months of driving experience required for the position," his deafness was not the "but for" reason for his rejection. The only reason Werner has ever given for why it rejected Robinson was alleged safety concerns. Werner readily admits it hires drivers with less than six months' experience, and that it requires such drivers to complete its placement driver training program before becoming solo drivers. Trial Transcript Vol. III at 483 and Trial Transcript Vol. IV at 785.

Werner complains that the jury instructions referred to the wrong job position, but Werner's assertion that drivers who must complete its placement driver training program were not over-the-road (OTR) drivers is not supported by the evidence. The only job description presented at trial was for "OTR Driver, Truckload," and Werner did not object to admission of this exhibit. *See* Trial Exhibit 1. Erin Marsh, Werner's Senior Manager of Driver Recruiting, who handled Robinson's application, was unequivocal that he applied to be an OTR driver:

6

> Q. So this -- now there's a title at the top. It says position description: OTR truckload; right?
> A. Yes.
> Q. OTR means over-the-road driver; right?
> A. That's correct.
> Q. So Mr. Robinson applied to be an over-the-road driver with Werner; correct?
> A. Yes.

Trial Transcript Vol. III at 519:11–18. Marsh also clarified that "student driver" (now known as "placement driver") is a program for new drivers, not a separate position with its own job description.

> Q. Okay. Now, if we look under minimum qualifications, the second bullet point there, that says, "One year previous tractor trailer driving experience unless applying as a student driver." Right?
> A. Yes.
> Q. Okay. Now, that student driver, that's the program we talked about a little earlier, right, for new drivers?
> A. Yes.
> Q. But there is no position description for a student driver; correct?
>         MS. CULHANE: Object on foundation.
>         THE COURT: Overruled.
> A. Correct.

Trial Transcript Vol III at 520:5–17.

The jury instruction that excluded causation did not impair Werner's ability to present its case. It argued to the jury that "contemporaneous communication" during training necessary for the position. It presented copious evidence of, and cross-examined witnesses on, why it believed Robinson's deafness could not be safely accommodated in that training. And Werner has never asserted that it made its decision based on Robinson's lack of prior professional truck driver experience. Those arguments were appropriately left for whether Robinson was qualified for the position. It was therefore not error for the Court to grant the EEOC judgment on causation and instruct the jury as to the OTR driver position.

2. The Court correctly dismissed Werner's "undue hardship" affirmative defense on summary judgment, and Werner has never produced any evidence sufficient to establish this defense.

As a matter of law, to establish that an accommodation would cause an "undue hardship," a defendant must prove the accommodation would force it to incur "significant difficulty or expense," considering several factors listed in 29 C.F.R. § 1630.2(p)(2). An accommodation poses an undue hardship only if it would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business. 29 C.F.R. Pt. 1630 App., § 1630.2(p). In this case, Werner has never claimed that accommodating Victor Robinson would pose any financial burden or hardship. The only "hardship" Werner has ever identified was a conclusory assertion—offered without any factual support—that accommodating Robinson would "fundamentally alter" the nature of its trucking business. Specifically, Vice President of Safety Jaime Hamm testified that accommodating a deaf driver during training somehow amounted to an "undue hardship" because of purported concerns about the safety of the accommodations. Doc. 249 at SOUMF ¶ 110. But Werner never, at summary judgment or at trial, presented any actual evidence to support its assumption that accommodating a deaf driver in its training program would pose an increased safety risk. Nor has it provided any evidence for or an explanation as to why accommodating a deaf driver would fundamentally alter the nature of its interstate trucking business. In the absence of any evidence supporting Werner's claim of "undue hardship," the Court did not err in dismissing this defense on summary judgment and declined to instruct the jury on it.

3. The Court appropriately disposed of Werner's "direct threat" affirmative defense on summary judgment and correctly refused to instruct the jury on that defense.

Recognizing that there are times when an individual's disability may pose a health or safety risk in the workplace, Congress included a "direct threat" defense in the ADA. See 42 U.S.C. §§ 12111(3), 12113(b); see also 29 C.F.R. § 1630.2(r). But "in order to protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear," an employer may only assert the defense if, at the time it made the employment decision at issue, it relied on "the best current medical or other objective evidence." *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007) (citations omitted); *Baker v. Union Pac. R.R. Co.*, 580 F. Supp. 3d 647, 658–59 (D. Neb. 2022). Direct threat analysis requires "an individual assessment of the individual's ability to perform safely the essential functions of the job." *Huntley v. Watts Elec. Co.*, No. 4:21-CV-3002, 2022 WL 2715957, at *6 (D. Neb. July 13, 2022). It requires a "particularized enquiry" into the risks posed or faced by the employee. *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002).

The facts in this case were generally undisputed. Werner V.P. Jaime Hamm had one conversation with Robinson, and she claimed she made a few fruitless phone calls seeking information about how to train deaf drivers, Doc. 244 SOUMF ¶¶ 46–55, though evidence was presented at trial that called her claim into doubt. *See* Trial Transcript Vol. IV at 870–71 (testimony of Investigator Lance Knapp). Hamm did not consult Werner's own driving school, which Robinson had just graduated from, nor did she meet with Robinson to assess his skills or arrange for him to meet or talk with one of Werner's trainers to assess his abilities. Moreover, Werner did not gather or rely on any medical or other objective evidence related to Robinson or his ability to safely complete the driver training program. Based on these facts, the Court did not err in finding, as a matter of law, that Werner did not engage in the type of "individualized direct threat analysis" required by the ADA.

Since the Court properly resolved the defense on summary judgment, it was appropriate to exclude mention of the term "direct threat" during the trial, as that term has a specific legal meaning and could easily confuse the jury. The Court still permitted Werner to present evidence in support of its claim that deaf drivers cannot be safely trained, finding that evidence relevant to Werner's "business necessity" affirmative defense and whether Robinson was qualified for the job. And Werner never proposed a "direct threat" jury instruction. Doc. 295. Therefore, based on all the facts and the law, there is no basis for granting a new trial based on the Court's treatment of Werner's alleged "direct threat" affirmative defense.

4. The Court properly allowed evidence over Werner's objections, including a decisionmaker's participation in jokes and denigrating comments regarding deaf drivers and evidence regarding how other trucking companies successfully train deaf drivers.

A hotly contested issue at trial was the admissibility of evidence regarding recruiting manager Erin Marsh's participation in jokes and insults about deaf truck drivers and deaf applicants to Werner. Prior to allowing this evidence, the Court set clear parameters regarding what facts the EEOC would have to demonstrate before it could offer Marsh's comments into evidence. Doc. 303 at 11–12. Following the Court's requirements, the EEOC presented the content, context, and timing of Marsh's "jokes," including establishing that Marsh was closely involved in Robinson's application process by supervising his recruiter, communicating with Robinson about his application, speaking privately with Jaime Hamm about Robinson's application, being present on the phone call in which Werner rejected Robinson, and directing Robinson to make the call to the company in which he was rejected. Trial Transcript Vol. III at 486–535. Along with V.P. Hamm, Marsh was one of two high-level Werner officials involved in handling Robinson's application. Werner was not unfairly prejudiced by this evidence, as it was able to cross-examine Marsh freely about her communications and had "the opportunity to

explain, rebut, or deny its substance to reduce its evidentiary value for the jury." *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1045 (8th Cir. 2010).

Additionally, the Court properly admitted evidence about how other trucking companies accomplish over-the-road training. Werner had the opportunity to challenge the policies of these companies on cross-examination and inquire as to those companies' policies as they existed in 2016, when Werner rejected Robinson. In fact, Werner designated testimony for trial from all the companies' representatives, including testimony from Crete Carrier Corporation about training Andrew Deuschle in 2015. The evidence was relevant, and Werner was not unfairly prejudiced by its admission.

Finally, Werner asserts that because the Court allowed evidence of other trucking companies and their training of deaf drivers, the Court should have instructed the jury that Werner is allowed to "enforce a higher level of safety than other companies." Doc. 356 at 14. According to Werner, the Court should have permitted it to inform the jury that Werner was entitled to enforce a higher level of safety than other companies. But the Court did not stop Werner from doing so, and the company did in closing. Trial Transcript Vol V at 946. Werner points to no authority requiring a jury instruction on the issue and the lack of such an instruction did not impair Werner's ability to present its case.

> 5. The Court was correct to exclude certain evidence related to Victor Robinson's subsequent employment.

The Court did not err in permitting evidence of Robinson's over-the-road training while excluding other evidence of Robinson's subsequent job performance for employers after Werner rejected him. Werner could not have relied upon any job performance issues at subsequent employers when it decided to reject Robinson. Pursuant to Fed. R. Evid. 403, any relevant or probative value of such evidence was outweighed by the risk of confusing the issues and wasting

11

the jury's time. The questioning would have devolved into the contested circumstances of accidents while with the subsequent employers, and there was no evidence Robinson's deafness contributed to any accidents. His performance at other companies was irrelevant to the subjects of Robinson's testimony—namely his training at Werner's trucking school, his personal experience with Werner and his knowledge about how trucking companies train deaf drivers, borne from his experience with these companies after Werner's rejection. The dispute in this case was about the safety of accommodations during over-the-road training, and Werner suffered no prejudice from this exclusion because the Court permitted it "to inquire as to any accidents or issues which occurred while Robinson was in training, because this is relevant to Werner's safety arguments." Doc. 303 at 4.[2] The Court did not err in excluding this at-best marginally relevant evidence, which would have confused the jury about the issues in the case and only served Werner's baseless fearmongering about deaf drivers.

> 6. The Court's decision to submit punitive damages to the jury was consistent with the evidence presented and the law.[3]

Punitive damages are permitted in ADA cases "in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529–30 (1999). The EEOC presented evidence from which the jury could—and did—find Werner acted with malice or reckless indifference to Robinson's federally-protected rights.

---

[2] In fact, Werner stipulated: "The only function Werner claims Victor Robinson could not perform, with or without accommodation, is the trainer-observed over-the-road component of its student driver program (now known as the "placement driver program"), where a trainer rides along with a student driver for observation and training." Pretrial Conference Order, Doc. 286 at 2.

[3] Werner raises this argument in its brief (Doc. 356), but not in its motion (Doc. 355).

First, Marsh's involvement in Robinson's application is detailed above, and it was proper to submit to the jury her denigrating comments, "jokes" and insults about Werner's deaf truck driver applicants. But second, and perhaps more compelling, was the controverted testimony of V.P. Hamm, who ultimately decided to reject Robinson. Hamm testified to the efforts she made to discover information about accommodating deaf drivers in training. Trial Transcript Vol. IV at 808–19. Nebraska Equal Opportunity Commission (NEOC) Investigator Lance Knapp contradicted this testimony on rebuttal. He investigated Robinson's charge for the NEOC, and at trial he testified that Hamm told him she made no efforts to learn about accommodations, other the phone call with Robinson in which she rejected him. Trial Transcript Vol. IV at 870–71.

Werner also asserts that punitive damages are unwarranted because the EEOC relied on a "novel" theory of discrimination which was rejected by the jury in the matter of *EEOC and Andrew Deuschle v. Werner Enter., Inc.*, 8:18cv329. But the EEOC's theory is not novel. The agency simply alleged that Werner could have provided Robinson reasonable accommodations, and when it did not, instead rejecting him for employment because he is deaf, Werner violated the ADA. The *Deuschle* verdict does not exonerate Werner here because it was a separate proceeding with different issues—including a proffered reason for rejecting the applicant that was not because of his disability—and is not evidence related to this case. *See Anderson v. General Parts Co., Inc.*, 128 F.3d 1267, 1272 (8th Cir. 1997).

The Court found that the evidence presented to the jury was such that the jury could reasonably find Werner acted with malice or reckless indifference to Robinson's right, and therefore instructed the jury regarding the issue of punitive damages. Doc. 322 at 18–19. The Court instructed the jury in accordance with the Eighth Circuit model instructions. *Id.* The Court did not err in giving this instruction, and it is not an appropriate basis for granting a new trial.

      7. The Court properly instructed the jury on the issue of Werner's failure to accommodate Robinson.

Finally, Werner asks that if the Court grants its motion for new trial, that the Court not submit the failure to accommodate issue to the jury. Werner asserts that this instruction was improperly given. But the Pretrial Conference Order, which controlled the issues to be presented at trial, included this "controverted and unresolved issue": "Whether Werner failed to make reasonable accommodation to Victor Robinson's known physical limitations and/or failed to hire him based on Werner's need to make reasonable accommodation to Robinson's deafness in violation of the Americans with Disabilities Act, 42 U.S.C. §12112(b)(5)." Doc. 286 at 3. Instructing the jury on Werner's failure to accommodate Robinson was consistent with the facts presented and with the Pretrial Conference Order. "The final pretrial order 'supersedes all previous pleadings and controls the subsequent course of action unless modified by subsequent order.'" *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 830 (8th Cir. 2019) (citing *U.S. v. $84,615 in Currency*, 379 F.3d 496, 499 (8th Cir. 2004)). Thus, the Court did not err in instructing the jury on a failure to accommodate. If another trial is ordered, the jury instructions should be determined at the appropriate point in the process and not in response to Werner's current motion.

      B. There are no valid grounds on which the Court should grant judgment as a matter of law in favor of Werner.

Motions for judgment as a matter of law must be denied if any reasonable jury could have found for the nonmoving party. *Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017). In this case, the jury did find in favor of the EEOC, and there is no factual or legal basis for finding that it acted unreasonably.

      1. An FMCSA Hearing Exemption allows deaf and hard-of-hearing individuals to be qualified interstate truck drivers.

Werner renews its summary judgment argument that this case is bound by the holdings in *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999). Werner made this argument, and the Court soundly rejected it, at summary judgment. Doc. 265 at 11– 12. The Court in *Kirkingburg* held that the employer was not required to accept a truck driver who could not meet the federal vision standards, even though he hoped to enroll in an experimental vision waiver program in the future. But that case is not dispositive here, as it dealt with a different statute and did not address the relevant regulations or the FMCSA program at issue here. Moreover, unlike the Hearing Exemption program, the experimental program at issue in *Kirkingburg* was not a research-based exemption program at all. Its holding is inapplicable.

The U.S. Secretary of Transportation is empowered to create "exemption" programs. An exemption approves multi-year commercial driving for a class of individuals that the DOT has already found "would likely achieve **a level of safety that is equivalent to, or greater than**, the level that would be achieved absent such exemption." 49 U.S.C. § 31315(b) (emphasis added). A person is qualified to be a CMV driver either by meeting the standard physical requirements, or by having a "medical variance." 49 C.F.R. § 391.41(a)(3). And a "medical variance" is explicitly defined to include an "exemption letter," including for the hearing standard. 49 C.F.R. § 390.5. See also 49 C.F.R. Part 381 Subpart C (describing exemption programs and to which FMCSRs they apply). 49 C.F.R. § 391.11(b)(4) requires interstate trucking companies to ensure its drivers meet the physical qualification standards of the position, and that regulation clarifies that a driver is physically qualified by either passing the hearing test or obtaining an exemption.

Werner argues it is not required to sacrifice safety to follow the above-described regulations. But the Hearing Exemption is predicated on the DOT's finding that the exempted class of individuals "would likely achieve a level of safety that is equivalent to, or greater than,

15

the level that would be achieved absent such exemption." 49 U.S.C. § 31315(b). Any alleged reduction in safety standards is speculative on Werner's part. Also, notably absent is any data, research, or other evidence that drivers with FMCSA Hearing Exemptions are less safe than interstate truck drivers who do not require the Exemption. In fact, the evidence shows that they are just as safe and in certain respects safer. Trial Transcript Vol. II at 250 (testimony of Dr. Steve Arndt). Finally, Werner does not even believe that possession of an FMCSA Hearing Exemption automatically renders a driver unqualified—Jaime Hamm testified at trial that Werner has hired deaf drivers and employed three at the time of trial. Trial Transcript Vol. IV at 823.

2. The jury was presented with evidence from which it could find Robinson was a "qualified individual" within the meaning of the ADA.

There was sufficient evidence at trial from which a reasonable jury could find Robinson was qualified for Werner's driver position. The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Determining if someone is a "qualified individual" requires a two-step analysis. First, whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position." 29 C.F.R. § 1630(m). Second, whether the individual "with or without reasonable accommodation, can perform the essential functions of such position." *Id.*; *Willnerd v. First Nat. Neb., Inc.*, 558 F.3d 770, 781 (8th Cir. 2008) ("Analyzing whether a person is a qualified individual is a two-step process[.]"). In this case, Werner never disputed the first part of the test, instead focusing their opposition on whether Robinson could perform the essential functions of the job.

Werner was unsuccessful in arguing this point on summary judgment, and it added no new facts to this issue at trial. As discussed above, the position at issue was OTR driver; for that position, Werner requires an inexperienced driver to complete the company's training program, while performing the duties of an over-the-road truck driver for Werner. Thus, there was evidence that Robinson's lack of experience did not render him unqualified for the position. There was sufficient evidence from which a reasonable jury could find Robinson was qualified, and judgment as a matter of law should be denied.

> 3. The EEOC provided ample evidence from which a jury could find punitive damages appropriate.

For the same reasons addressed above as to why Werner is not entitled to a new trial because the Court submitted the issue of punitive damages to the jury, the Court should not grant Werner judgment as a matter of law on punitive damages. The EEOC presented evidence from which the jury could find punitive damages warranted, and the Court properly instructed the jury.

> C. The Court's order requiring Werner to report basic information to the EEOC for a period of three years is reasonable and workable, is supported by the evidence, and is consistent with the jury's verdict and the law.

Injunctive relief is consistent with the ADA's incorporation of Title VII's enforcement provisions, providing courts a broad grant of equitable authority to prevent future discrimination against people with disabilities. 42 U.S.C. § 12117; *Gibson v. Arkansas Dep't of Correction*, 265 F.3d 718, 721 (8th Cir. 2001). After determining an employer "has intentionally engaged in or is intentionally engaging in an unlawful employment practice . . . the court may enjoin the [employer] . . . and order such affirmative action as may be appropriate." 42 U.S.C. § 2000e-5. Injunctive relief is appropriate "even where [EEOC] does not allege a pattern or policy of discrimination." *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 468 (6th Cir. 1999) (citing, as an example, *EEOC v. HBE Corp.*, 135 F.3d 543, 557 (8th Cir. 1998)). "The section of

Title VII authorizing injunctive relief does not itself require that a pattern or practice of unlawful conduct be shown . . . . [I]njunctive relief is appropriate even where the Commission has produced no evidence of discrimination going beyond the particular claimant's case." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997); see also *Baker*, 2022 WL 4120188 at *4 ("[T]he Court finds the [employer's] argument that the Court is without authority to issue an across-the-board injunction in an individual case is without merit.").

Here, after making its Findings of Fact and Conclusions of Law, this Court entered judgment in favor of the EEOC and ordered Werner to report basic information to the agency semi-annually for the next three years. This information includes the name, contact information, and general application and employment-related information for each hearing-impaired applicant for over-the-road truck driving position. Doc. 354. The Court clearly stated its reasoning for ordering injunctive relief in its Findings of Fact and Conclusions of Law (Doc. 353). It noted the jury both rejected Werner's safety arguments and returned a substantial punitive damages award intended to punish the company's wrongdoing (though Werner has the benefit of statutory caps that limit the jury's award to less than one percent of the verdict in this case). Doc. 353 at 11–12.

The injunctive relief granted by the Court is less than what was sought by the EEOC and does not specifically require Werner to hire or provide reasonable accommodation to any individual with a hearing disability. Yet even after the jury's verdict and the Court's findings, Werner resists even the most minimally burdensome reporting requirement. Although the company admitted in discovery that it does not track applicants with FMCSA Hearing Exemptions, it now asks this Court to limit its reporting to only those who have such an Exemption. But the disability at issue in this case is hearing impairment, and the Court's order is tailored to that disability. Werner did not reject Robinson because he had a Hearing Exemption;

it rejected him because he is deaf. Werner's concern that the Court's order will require it to report information about some applicants who may not be disabled is unwarranted and misplaced; the scope of the Court's order is necessary to ensure no hearing-disabled applicants are missed in the reporting. There are likely more drivers with hearing-related disabilities who may need accommodation in training than only those who require exemptions. The scope of the Court's order is reasonable and workable, and it will promote the purposes of the ADA.

II.     Conclusion

The Court did not err in its rulings on summary judgment, evidentiary issues at trial and jury instructions. Werner is not entitled to a new trial nor judgment as a matter of law. The Court's rulings were well-founded, and the jury's verdict should not be disturbed.

Respectfully submitted,

*/s/ Meredith S. Berwick*
Meredith S. Berwick, MO Bar No. 64389
Equal Employment Opportunity Commission
1222 Spruce Street, Room 8.100
St. Louis, MO 63103
Phone: (314) 798-1909
Fax: (314) 539-7895
meredith.berwick@eeoc.gov

Joshua M. Pierson, KS Bar No. 29095
Lauren M. Wilson, FL Bar No. 1024850
Equal Employment Opportunity Commission
400 State Avenue, Suite 905
Kansas City, Kansas 66101
Phone: (913) 359-1807
Facsimile: (913) 551-6957
joshua.pierson@eeoc.gov
lauren.wilson@eeoc.gov

*Attorneys for Plaintiff EEOC*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief contains 6100 words, which includes all text, including the caption, headings, footnotes, and quotations, as determined by Microsoft Word for Office 365 ProPlus.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Meredith S. Berwick*