IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff,

vs.

DRIVERS MANAGEMENT, LLC,
and WERNER ENTERPRISES, INC.

Defendants.

8:18-CV-462

MEMORANDUM AND ORDER

This matter is before the Court on the parties' post-trial motions. The defendants, Drivers Management, LLC and Werner Enterprises, Inc. (collectively, Werner), moved for a renewed judgment as a matter of law and for a new trial or to alter or amend the judgment. Filing 355. Werner has also requested this Court's review of costs taxed by the Clerk of the Court (filing 369). Filing 372. And the plaintiff, the Equal Employment Opportunity Commission, moved to amend the judgment to include prejudgment interest. Filing 358.

## I. BACKGROUND

Victor Robinson applied to work for Werner in January 2016 as an over-the-road truck driver. Trial ex. 2. He is deaf, and, at the time of his application, he had a commercial driver's license (CDL) and an exemption from the Federal Motor Carrier Safety Administration (FMCSA) physical qualification standards concerning hearing for interstate drivers. *See* 80 Fed. Reg. 18924-01 (Apr. 8, 2015). Robinson attended the Roadmaster driving school in

Indianapolis to obtain his CDL. Filing 344 at 102. Roadmaster is a wholly-owned subsidiary of Werner. Filing 345 at 41.

Werner did not hire Robinson. The EEOC sued Werner, alleging that Werner discriminated against Robinson on the basis of his deafness in contravention of the Americans with Disabilities Act. Werner's position was that it did not hire Robinson because it believed it could not safely train inexperienced deaf drivers, and no reasonable accommodation would enable it to do so. *E.g.,* filing 322 at 6, 12; filing 345 *passim*; *see also* filing 316 at 3-4.

At trial, and throughout the litigation, Werner argued that Robinson, and other FMCSA hearing exemption holders, could not safely complete the trainer-observed over-the-road component of Werner's training program, now called the "placement driver program." Under the placement driver program, Werner required drivers with less than six months' professional trucking experience to drive alongside a trainer on a real over-the-road trucking route. Werner claimed that it believed there was no way a trainer could safely communicate with a deaf driver while driving together, even with an accommodation.

The jury determined that Robinson was qualified to perform the job to which he applied, he could have safely performed the essential functions of the job with a reasonable accommodation, and Werner's refusal to hire Robinson was not based on business necessity. *See* filing 322; filing 323. The Court determined, because a jury found that Robinson was qualified and could have performed the essential functions of the job with a reasonable accommodation, the plaintiff had shown as a matter of law that Werner failed to hire Robinson because of his disability. Filing 316 at 5.

The jury also determined that Werner acted with malice or reckless indifference towards Robinson's right not to be discriminated against on the

basis of his deafness. And, the jury determined that Werner did not act in good faith when it rejected Robinson. Pursuant to those factual findings, the jury awarded damages intended to punish Werner for its misconduct. Filing 323.

The verdict exceeded the statutory cap for compensatory damages. Filing 323; 42 U.S.C. § 1981a(b)(3)(D). After a bench trial to determine any equitable relief, the Court awarded the statutory cap and an additional $35,682.25 in backpay. Filing 354. The Court also enjoined Werner to provide biannual reports to the EEOC regarding hearing-impaired job applicants. *Id.*

## II. WERNER'S RULE 50 AND RULE 59 MOTION

Werner argues that the Court erred in the following respects, warranting a new trial under Rule 59:

- Granting a partial directed verdict in favor of the EEOC,
- Dismissing some of Werner's affirmative defenses at summary judgment,
- Admitting evidence of "stray remarks" and excluding evidence of Robinson's job performance after Werner failed to hire him, and
- Submitting the issue of punitive damages to the jury.

Werner also requests judgment as a matter of law under Rule 50 because Robinson was not a qualified individual and the jury did not have a legally sufficient basis to award punitive damages. Filing 356 at 19. And Werner argues that the Court should eliminate or narrow the injunctive relief awarded. Filing 356 at 25.

### 1. STANDARDS OF REVIEW

#### (a) Rule 50

When considering a motion for judgment as a matter of law, a court must determine whether or not the evidence was sufficient to create an issue of fact

for the jury. *Lane v. Chowning*, 610 F.2d 1385, 1388 (8th Cir. 1979). The Court will grant a motion for judgment as a matter of law when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. *Ehrhardt v. Penn. Mut. Life Ins. Co.*, 21 F.3d 266, 269 (8th Cir. 1994). In considering the motion, the Court views the record in the light most favorable to the prevailing party. *Wash Solutions, Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 892 (8th Cir. 2005). The Court must also assume that all conflicts in the evidence were resolved in favor of the prevailing party, and the Court must assume as proved all facts that the prevailing party's evidence tended to prove. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003). The motion should be denied unless the Court concludes that no reasonable juror could have returned a verdict for the nonmoving party. *Billingsley v. City of Omaha*, 277 F.3d 990, 995 (8th Cir. 2002).

(b) Rule 59

A motion for new trial is governed by Federal Rule of Civil Procedure 59. The standard for granting a new trial is whether the verdict is against the great weight of the evidence. *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996). In evaluating a motion for a new trial pursuant to Rule 59(a), the key question is whether a new trial should have been granted to avoid a miscarriage of justice. *McKnight By & Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994).

Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 934 (8th Cir. 2006).

4

Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. *Id.*

### 2. CAUSATION

Werner requests a new trial because the Court allegedly erred when it granted the EEOC's motion for a partial directed verdict on the issue of causation, filing 316. Based on the evidence presented at trial, the Court ruled that if a jury determined the EEOC had met its burden of showing that Robinson was a qualified individual, the EEOC had proved that Robinson's disability was the but-for cause of Werner's hiring decision as a matter of law. Filing 316 at 4. The Court considered *all* of the evidence presented to the jury, including testimony by Werner's own employees and experts, and determined that there was insufficient evidence to create an issue of fact for the jury on the EEOC's causation element. *See* Rule 50; *Lane*, 610 F.2d at 1388; filing 345 at 21; filing 344 at 170; filing 345 at 48; filing 345 at 76; filing 345 at 79; filing 346 at 4-5; filing 346 at 136. Accordingly, the Court did not instruct the jury on the issue of causation.

The EEOC had the burden to prove that Robinson was qualified—that is, that Robinson could perform the essential functions of the job for which he applied with or without a reasonable accommodation. *See* 42 U.S.C. §§ 12112(a), 12111(8); *Knutson v. Schwan's Home Serv., Inc.*, 711 F.3d 911, 914 (8th Cir. 2013). The EEOC also had the burden to prove that Werner's failure to hire Robinson was on the basis of his disability. The EEOC proved the causation element of its claim, and Werner presented no evidence by which a reasonable juror could find otherwise. *See Ehrhardt*, 21 F.3d at 269.

In its post-trial brief, Werner primarily relies on *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997). Werner purports that the Eighth Circuit adopted the reasoning of *Matthews* . . . albeit in a

footnote. Filing 356 at 5 (citing *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1219 n.3 (8th Cir. 1999)). It's true that the ADA allows an employer to fire a disabled worker "because he is unable to do his job," even if the disability is the reason the worker cannot do the job. *Matthews*, 128 F.3d at 1197-98; *see also Harris v. Polk Cnty.*, 103 F.3d 696, 697 (8th Cir. 1996). But an employer *cannot* categorically deny employment to a group of individuals with a certain disability if any of those individuals are qualified to do the job.

The employer in *Matthews* implemented a reduction-in-force plan that scored employees based on work performance, and a disabled employee had too low of a score due to work he missed because of his disability. 128 F.3d at 1197. The *Matthews* court determined that the employer did not violate the ADA because it presented a facially neutral policy that adversely affected a disabled employee, and it was the *consequences* of the disability that caused the employee to be terminated. *Id.*

Contrary to Werner's assertions, that case doesn't fit the facts here. Werner decided Robinson was unable to do his job because he was deaf, not because of a collateral "consequence" of his deafness. Werner argues that it didn't hire Robinson because he couldn't "safely engage in contemporaneous communication with his trainer while driving, without diverting his eyes from the road." But that's just describing his deafness with more words, not identifying a "consequence" of it. *See* filing 356 at 5. As the EEOC put it, an employer cannot "escape liability for refusing to hire a wheelchair bound applicant by claiming it was really the applicant's inability to climb stairs . . . that led to the decision." Filing 283 at 9.

There's no facially neutral policy[1] at play here like in *Matthews*. There was not another qualified individual that Werner hired instead of Robinson. *Cf. Matthews*, 128 F.3d at 1196 (citing *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir. 1995)). Robinson did not have performance issues prior to applying to Werner, or during his application process. *Cf. Mole*, 165 F.3d at 1219 n.3; *Mitchell v. United States Postal Serv.*, 738 Fed. App'x 838, 847 (6th Cir. 2018). Robinson didn't have missing paperwork when he submitted his application. *Cf.* case no. 8:18-cv-369 (the *Deuschle* case). Robinson didn't violate any company policies. *Cf. McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008).

Rather, Robinson was deaf, so Werner didn't hire him. Filing 345 at 21-22. The evidence indicated that Werner would treat every other deaf driver in Robinson's position *exactly* the same way. Werner argues that it proffered a "legitimate, nondiscriminatory reason" for not hiring Robinson, but those arguments are misplaced: the *McDonnell-Douglas* burden-shifting paradigm was not applicable in this case. *See Baker v. Union Pac. R.R. Co.*, 580 F. Supp. 3d 647, 659 (D. Neb. 2022); *Belk v. S.W. Bell Tel. Co.*, 194 F.3d 946, 951-52 (8th Cir. 1999). There was direct evidence of discrimination—Werner *told* Robinson it didn't hire him because he's deaf. And Werner admitted it would *never* hire a deaf driver with less than six months' experience. An employer need not have malice or animus to have violated the ADA. *See Cushman v. Union Pac. R.R. Co.*, No. 8:23-cv-196, 2024 WL 1094703, at *7 (D. Neb. Mar. 12, 2024) (citing

---

[1] Werner claimed, as an unwritten company policy, drivers with less than six months' experience were required to engage in simultaneous two-way communication during the trainer-observed on-the-road component of its placement driver program. This isn't a neutral policy because, on its face, it can only be accomplished by hearing drivers.

*Bostock v. Clayton Cnty, Georgia*, 590 U.S. 644, 663 (2020); *Murray v. UBS Sec., LLC*, 144 S. Ct. 445, 453 (2024)).

According to *Matthews*, even if an individual is qualified, "if his employer fires him for any reason other than that he is disabled there is no discrimination 'because of' the disability." *Id.* at 1196. But the cases relied on by the *Matthews* court are actually premised on whether an individual is qualified, *not* whether the individual's disability caused the adverse employment action. *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 667 (7th Cir. 1995); *Daugherty v. City of El Paso*, 56 F.3d 695, 698 (5th Cir. 1995); *accord Lipp v. Cargill Meat Sol. Corp.*, 911 F.3d 537, 544 (8th Cir. 2018) ("Ultimately, we conclude she was not a qualified individual. Lipp has not demonstrated that at the time of her termination she could regularly and reliably attend work, an essential function of her employment."); *Grant v. Cnty of Erie*, No. 12-cv-65, 2017 WL 2180796, at *7 (W.D.N.Y. May 18, 2017).

There was no evidence from which a jury could find that Werner would ever hire a deaf driver with less than six months' experience. As the Court previously ruled, the issues in this case have always been whether Robinson was qualified to perform the job for which he applied, and whether any reasonable accommodation would have enabled him to do so. And Werner did not present any evidence to warrant submitting the question of causation to the jury.[2] Werner's motion for a new trial on this basis is denied.

---

[2] The EEOC moved *in limine* to prevent Werner from presenting any other reason that it did not hire Robinson. The Court overruled that motion without prejudice to reassertion. *See* filing 303 at 6. The EEOC never had to reassert their objection because Werner never proffered any evidence or argument that it failed to hire Robinson for any reason other than his deafness. Werner claims the Court "inexplicably departed" from the reasoning in its order on the parties' motions *in limine*. Filing 356 at 6 (quoting filing 303). But the departure is

3. AFFIRMATIVE DEFENSES—UNDUE HARDSHIP AND DIRECT THREAT

At the summary judgment stage, the Court dismissed Werner's undue burden and direct threat affirmative defenses. *See* filing 265 at 11-12, 14-15. Werner argues it is entitled to a new trial based on these alleged errors. The Court will reject Werner's motion for a new trial on these grounds for the same reasons it dismissed the affirmative defenses on summary judgment.

### (a) Undue Hardship

On summary judgment, Werner provided the conclusory assertion that the EEOC's proposed accommodations would have "fundamentally alter[ed] the nature of the business operation" by "prevent[ing] a trainer from providing instantaneous safety training." *See* filing 252 at 34. But Werner presented no evidence by which a trier of fact could make such a determination. At summary judgment, Werner's evidence neither provided what the fundamental nature of its business was, nor how "contemporaneous minute-by-minute training for inexperienced drivers" was a part of it. *See* filing 252 at 34-35. The Court appropriately dismissed this affirmative defense because Werner failed to carry its burden on summary judgment. Filing 265 at 15 (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 686-91 (2001)).

### (b) Direct Threat

The Court dismissed Werner's "direct threat" affirmative defense because Werner failed to perform a "particularized enquiry" into the risks posed or faced by the employee. Filing 265 at 12 (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002)). Werner claims that its safety director,

---

explicable: the Court carefully listened to the evidence adduced at trial, and determined that the EEOC had met its burden for its Rule 50 motion. *See* filing 316.

Jamie Hamm, researched the relevant objective medical and safety data prior to making a determination about whether to hire Robinson, and this created a contestable issue on Werner's direct threat defense.

Werner was able to present all the same evidence and argue for a verdict in its favor based on the elements of the EEOC's prima facie case.[3] *See* filing 303 at 7. So, the only harm Werner could have suffered was that it didn't get a jury instruction on direct threat. . . and it didn't ask for one. *See* filing 295 (Werner's proposed jury instructions); filing 347 at 903-918 (formal jury instruction conference). The Court didn't err in failing to give an instruction that no one asked for. *See* Fed. R. Civ. P. 51(d)(1)(B); *Weber v. Strippit, Inc.*, 186 F.3d 907, 915 (8th Cir. 1999). A new trial is not warranted.

## 4. EVIDENTIARY RULINGS

Werner additionally moves for a new trial based on certain evidentiary rulings, outlined in the Court's order on the parties' motions in limine (filing 303). Specifically, Werner argues the Court should have excluded certain emails and chat messages where employees made discriminatory remarks

---

[3] A person is not qualified under the ADA if he presents a "direct threat" to the health or safety of others that cannot be eliminated by a reasonable accommodation. 42 U.S.C. §§ 12113(b), 12111(3). Werner was able to present evidence and argument that Robinson presented a safety risk, and he was therefore unqualified. Under the "direct threat" affirmative defense, the burden would be on Werner to show that Robinson was *not* qualified, rather than the burden being on the plaintiff to show that Robinson *was* qualified. *See Baker*, 580 F. Supp. 3d at 659 n.2 (citing *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007)). But here, the jury found that the EEOC met its burden, despite Werner's evidence. *Even if* the Court erred in dismissing Werner's affirmative defense, such error was harmless because Werner was still able to present evidence regarding its argument that Robinson posed an unreasonable safety risk—evidence the jury necessarily rejected.

about deaf applicants. Werner also argues the Court should have permitted evidence of Robinson's driving record at trucking companies after he was not hired by Werner.

### (a) Erin Marsh

The Court admitted emails between Erin Marsh and the recruiter in charge of Robinson's application, where Marsh and the recruiter mocked and complained about deaf applicants for the over-the-road trucking position. Werner contends that Marsh lacked a significant connection to the alleged adverse employment action, and so any statements by her were "stray remarks" that did not bare on any alleged discrimination. Werner also contends that the statements admitted were made years after Werner did not hire Robinson. Werner objected to the admission of the emails based on Fed. R. Evid. 403, and on foundation.

 The EEOC laid sufficient foundation to admit the emails. The evidence demonstrated that, at the time Robinson was not hired, Marsh was a manager of student and driver recruiting; Marsh spoke directly with Jamie Hamm, who ultimately decided not to hire Robinson; Marsh spoke with Robinson about his application personally; and Marsh participated in the phone call with Robinson and Hamm when Robinson was told he would not be hired because Werner would not accommodate his deafness. *See* filing 345 at 83. The Court determined the timing of the emails was not so far removed from the relevant period, especially considering that Marsh held the same position when she sent the emails as when Robinson was not hired. *See Fitzgerald v. Action, Inc.*, 521 F.3d 867, 876-77 (8th Cir. 2008). The EEOC presented evidence that Marsh was part of the decision-making process for Robinson's application, and Marsh's comments demonstrated a discriminatory animus in the decisional process. *See Arraleh v. Cnty of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006).

11

The Court determined that the emails were sufficiently relevant to Werner's decision not to hire Robinson, based on the emails' context, content, and timing. *Fitzgerald*, 521 F.3d at 877. Further, Marsh was given the opportunity to explain her comments to the jury, and explain her attitude and Werner's attitude towards deaf people. The Court did not err in admitting these statements.

### (b) Robinson's Subsequent Job Performance

The Court excluded evidence under Fed. R. Evid. 403 of Robinson's job performance after he was not hired by Werner. The accidents had little relevance to the safety of a deaf driver communicating with another person in the cab of a truck while training, which was the issue presented to the jury. *See* filing 322 at 6. This evidence presented risks of confusing the issues, inflaming prejudice against deaf truck drivers generally, and needlessly extending the trial to include "mini-trials" about the facts and circumstances of each accident in which Robinson was involved, so the Court did not allow the jury to hear evidence of those accidents. The jury did hear evidence of Robinson's experience *training* at other trucking companies. *E.g.,* filing 344 at 128. No new trial is warranted.[4]

### 5. QUALIFIED INDIVIDUAL

Werner also argues that no reasonable juror could find that Robinson was qualified for the position for which he applied because Robinson did not meet the hearing standard in 49 C.F.R. § 391.41(b)(11). Filing 356 at 20.

---

[4] Robinson's later job performance at other companies was relevant to the Court's consideration of backpay. The Court properly considered this mitigating evidence in determining that Robinson was not entitled to backpay beyond 2018. *See* filing 353.

Werner argues it did not have to accept Robinson's exemption to the FMCSA hearing requirement. The Court rejected that argument on summary judgment. Filing 265 at 6-7.

Under the federal regulations, a person is physically qualified to drive a commercial motor vehicle if that person meets physical qualification standards in § 391.41(b), *or if* that person "obtained from FMCSA a medical variance from the physical qualification standards in paragraph (b)." § 391.41(a)(3)(i)-(ii). Robinson obtained an FMCSA medical variance from § 391.41(b)(11), *see* 80 Fed. Reg. 18924-01 (Apr. 8, 2015), so he was qualified under the federal regulations. Werner's reliance on *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), *see* filing 356 at 21-22, is misplaced for the reasons explained in the summary judgment order. Filing 265 at 6-7.

Werner additionally argues that the EEOC did not present evidence that Robinson was qualified for the over-the-road driving position at Werner. At the time Robinson was hired, Werner required that applicants have at least six months experience, otherwise applicants would be put in the "placement driver program." Werner characterized the "placement driver" position as separate and distinct from the "over-the-road driver" position, though Robinson's job application indicated he was applying as an "over-the-road truck driver." *See* trial ex. 2.

While the Court distinguished the "placement driver" and "over-the-road driver" positions in its summary judgment order, there's no evidence that Robinson applied to the "placement driver" position. There was no reason to instruct the jury that Robinson applied for a "placement driver" position when all the evidence indicated he applied for an over-the-road truck driving position, regardless of the position for which *Werner* considered him. In any event, the EEOC presented sufficient evidence by which a jury could determine

whether the trainer-observed over-the-road component of the placement driver program was an essential function of the over-the-road truck driver position, and whether Robinson could complete that function with or without a reasonable accommodation.

According to Werner, simultaneous communication during the trainer-observed component of the placement driver program was essential, and Werner argues its determination is dispositive. The jury was instructed on how to determine whether a purported job duty was an essential function. *See* filing 322 at 14. *One factor* to consider is the employer's judgment as to which functions of the job are essential. *Knutson*, 711 F.3d at 914. But other factors, such the written job descriptions provided to prospective employees, the amount of time on the job spent performing the function, the consequences of not requiring the function, and the current work experience of those in similar jobs, are also properly considered, and are to be weighed by a jury. *Id.*

The EEOC presented evidence that the "simultaneous communication" element was not essential, and Robinson could have been safely accommodated to be able to perform the trainer-observed component of Werner's training program. *EEOC v. Convergys Cust. Mgmt. Grp., Inc.*, 491 F.3d 790, 796 (8th Cir. 2007). Specifically, the EEOC presented evidence from other trucking companies about possible accommodations, as well as expert testimony. Sufficient evidence supports the jury's verdict.

6. PUNITIVE DAMAGES

Werner argues that the Court erroneously submitted the issue of punitive damages to the jury, warranting a new trial. Filing 356 at 15. Werner alternatively argues that the jury did not have a legally sufficient basis to award punitive damages, and Werner is entitled to judgment as a matter of law on the EEOC's claim. Filing 356 at 24.

An employer may be held vicariously liable in the punitive damages context for the discriminatory employment decisions of "managerial agents" acting within the scope of their employment. *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 553 (8th Cir. 2013); *Heaton v. The Weitz Co.*, 534 F.3d 882, 889 (8th Cir. 2008); *E.E.O.C. v. Siouxland Oral Maxillofacial Surgery Assocs., L.L.P*, 578 F.3d 921, 925 (8th Cir. 2009) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999)). A jury instruction on punitive damages is warranted if a plaintiff presents evidence that an employer acted with malice or reckless indifference to an employee's right not to be discriminated against on the basis of his disability. *See* 42 U.S.C. § 1981a(b)(1).

Marsh's emails provided *some* evidentiary support for punitive damages, but those emails were neither dispositive nor the primary evidence of maliciousness or reckless indifference. Other support came from the cross-examination of Jamie Hamm, Werner's vice president of safety. Hamm testified that she had one conversation with Robinson for about half an hour. Hamm testified that she was familiar with federal antidiscrimination laws, and she testified that Werner accommodated other employees. Filing 346 at 133-34. She stated she conducted an investigation about ways to possibly accommodate Robinson in the placement driver program, but she could not come up with any to her satisfaction. Filing 346 at 139. Notably, Hamm did not communicate with any of Werner's trainers to identify anyone who might know American Sign Language, or any concerns (or lack thereof) the trainers might have about training deaf drivers. Filing 346 at 187.

The EEOC presented rebuttal testimony from Lance Knapp, an employee of the Nebraska Equal Opportunity Commission, who called into question Hamm's characterization of her "investigation." According to Knapp, Hamm said that she had not done *any* research about possible

15

accommodations. Filing 346 at 201. Knapp also testified that Hamm did not say she reached out to the FMCSA, the EEOC, or the Nebraska Department of Transportation, contrary to Hamm's own testimony. *Id.* It's distinctly possible that a jury did not find Hamm's characterization of her hiring decision to be credible.

Also supporting punitive damages was Robinson's own testimony. He testified that he was told Werner could not hire him due to his deafness after having him as a student in its CDL school. Werner encouraged him to apply, pre-approved his application, and conducted a 30-minute phone conversation— only to tell him that Werner thought he could not safely complete its training program. Robinson's testimony about his experience, Marsh's discriminatory remarks, and Hamm's testimony all support the submission of punitive damages to the jury. Werner's motion is denied.

### 7. INJUNCTIVE RELIEF

Werner also requests that this Court eliminate or amend its injunctive relief. The judgment requires Werner to submit biannual reports to the EEOC regarding any "hearing-impaired applicant for an over-the-road truck driving position." Filing 354. Werner asks to vacate the injunctive relief altogether. That request will be denied. Injunctive relief was awarded for the reasons detailed in the Court's findings of facts and conclusions of law, filing 353, and those reasons will not be revisited here.

Werner requests that the injunctive relief be narrowed because "hearing-impaired applicant" is too broad and might extend to non-disabled individuals. Filing 356 at 26. The Court agrees, and will amend the injunctive relief to only apply to individuals with an FMCSA hearing exemption, which was the type of discrimination proved in this case. *See Easley v. Anheuser-Busch, Inc.*, 758 F.2d 251, 263 (8th Cir. 1985).

16

### III. WERNER'S OBJECTIONS TO BILL OF COSTS

Werner also objects to some of the costs taxed. Filing 372. District courts have substantial discretion in awarding costs. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762 (8th Cir. 2006) (citing *Computrol, Inc. v. Newtrend, L.P.,* 203 F.3d 1064, 1072 (8th Cir. 2000)); *see also* Fed. R. Civ. P. 54(d). However, courts may only award the types of costs enumerated in 28 U.S.C. § 1920. *E.g., Brisco-Wade v. Carnahan,* 297 F.3d 781, 782 (8th Cir. 2002). The prevailing party bears an initial burden to verify that costs were "necessarily incurred," and the "services for which fees have been charged were actually and necessarily performed." § 1924; *see also, e.g.,* Bill of Costs Handbook for the U.S. District Court for the District of Nebraska § IV(C)(2). And the prevailing party is presumptively entitled to recover verified costs; the losing party bears the burden of overcoming that presumption. *Thompson v. Kanabec Cnty.*, 958 F.3d 698, 709 (8th Cir. 2020) (citing *Janis v. Biesheuvel*, 428 F.3d 795, 801 (8th Cir. 2005)); *168th and Dodge, LP v. Rave Reviews Cinemas, LLC,* 501 F.3d 945, 958 (8th Cir. 2007).

### 1. DEPOSITIONS IN *DEUSCHLE* CASE

Werner primarily argues that several of the costs for depositions should be reduced by half because certain individuals were only deposed once, but were witnesses in both this and the companion *Deuschle* case. The EEOC was not successful in the *Deuschle* case and, Werner argues, it should not be able to recover costs incurred for that case. The Clerk of the Court taxed Werner in the amount of $37,898.88. Filing 369. By contrast, in the companion *Deuschle* case, the Clerk taxed the EEOC in the amount of $12,275.13. *See* filing no. 373 in case no. 18-cv-329. The difference is primarily because Werner only requested half of the costs of each deposition. *See id.*

The EEOC argues that Werner has cited no authority warranting reducing the costs because the depositions were used in two cases. *See* filing 374. According to the EEOC, it would have incurred those costs regardless of the *Deuschle* case, and should be able to recover the full amount here. But Werner presented a logical reason for reducing the EEOC's requested award. In the interests of fairness, and to promote efficiency in discovery through consolidated cases, the Court, in its discretion, will reduce by half the costs of depositions that were used in both this and the *Deuschle* cases.

Werner also argues that some costs should be eliminated because they were not "necessarily incurred" for this case. Filing 373 at 5. Specifically, Werner argues some witnesses were only relevant to the *Deuschle* case, and were not called to testify in this case. The Court is not persuaded. The EEOC has verified that costs were necessarily incurred; that the EEOC made certain strategic decisions to call certain witnesses does not make those depositions unnecessary. Werner has not overcome the presumption that the EEOC is entitled to recover those costs.

## 2. VIDEO AND STENOGRAPHIC DEPOSITION COSTS

Werner argues that the EEOC should not be able to recover costs for video transcripts of video depositions not shown at trial. Werner recovered costs for both printed transcripts and video recordings in the *Deuschle* case, but argues the EEOC should not be afforded the same costs in this case. Filing 373 at 7 n.2.

Costs for both a video recorded deposition and a printed transcript are recoverable if the prevailing party explained how the deposition was useful in resolving contested issues, if the losing party did not object to the video recording of the depositions, and if the prevailing party demonstrated why both expenditures were reasonably necessary at the time the costs were expended.

Handbook § IV(C)(3)(e); *see also Stanley v. Cottrell, Inc.*, 784 F.3d 454, 465 (8th Cir. 2015) (quoting *Smith v. Tenet Healthsystem SL, Inc.,* 436 F.3d 879, 889 (8th Cir. 2006)); *JBS USA*, 2015 WL 2212644, at *2 ("where the prevailing party demonstrates both paper and electronic copies were reasonably necessary, the court may tax costs for both"); *Alt. Med and Pharmacy, Inc. v. Express Scripts, Inc.,* No. 4:14-cv-1469, 2016 WL 3443574, at *2 (E.D. Mo. June 23, 2016); *Jo Ann Howard & Assoc., P.C. v. Cassity*, 146 F. Supp. 3d 1071, 1077-78 (E.D. Mo. 2015) (citing *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir. 1997)).

The EEOC explained how the depositions were useful. And Werner did not object to the EEOC's notice that it would video-record the depositions. The EEOC also sufficiently verified why video was important. *See* filing 374 at 9. Because the case involved a deaf claimant, it was reasonably necessary to have transcripts synced to the videos so that Robinson could assist the EEOC in developing the case. The Court has considered the complexity of this case, the importance of the witnesses, and the Court's standard procedure for video depositions. The EEOC's costs for both video and stenographic deposition transcripts were reasonably necessary. Werner will be taxed these costs.

### 3. EXPERT COSTS

Finally, Werner argues it should not be taxed $581.94 for costs related to Don Olds' stay in Omaha while Werner presented its defense. Filing 373 at 8. Werner asserts that Olds already knew what Werner's experts would testify to, because they already did in the *Deuschle* case, and the EEOC knew or should have known it would not call Olds as a rebuttal witness. But, as has been discussed, this case and the *Deuschle* case were different and presented different issues. The EEOC reasonably wanted Olds in the courtroom during Werner's defense, if any of Werner's experts testified differently than in the

19

*Deuschle* case. There's no guarantee that nothing would have changed in Werner's experts' testimony. Werner has not persuaded the Court that the EEOC is not entitled to these costs.

### 4. COST AWARD

To summarize, the following costs will be awarded:

| Description of Costs | Costs Requested | Costs Awarded |
|---|---|---|
| Erin Marsh Deposition | $3,527.72 | $1,763.86 |
| Ben Pile Depositions | $5,768.35 | $2,884.18 |
| Richard Johnson Deposition | $2,141.20 | $1,070.60 |
| William C. Adams Deposition and Expert Fee | $3,429.70 | $1,714.85 |
| Jaime Hamm Deposition | $4,458.25 | $2,229.13 |
| Christopher Hilkemann, Clarence Easterday, Jr., Lathen Whited, Wayne Cederholm, and Lindsey Wilbert Depositions | $3,390.40 | $1,695.20 |
| Morgan Baker-Maloy Deposition | $1,532.25 | $766.13 |
| Andrew Deuschle and Victor Robinson Deposition | $898.45 | $449.23 |
| First 30(b)(6) Deposition (Scott Hollenbeck, Theresa Tibbels, and Steve Tisinger)[5] | $6,468.48 | $3,234.24 |
| Second 30(b)(6) Deposition (Brett Ramsey and Scott Hollenbeck) | $1,553.80 | $776.90 |
| Scott Hollenbeck Deposition | $795.00 | $397.50 |
| Printing Fees | $508.82 | $508.82 |
| Transcript Fees | $5,137.10 | $5,137.10 |
| Don Olds' Travel | $2,300.50 | $2,300.50 |
| **TOTAL** | $41,910.02 | **$24,928.24** |

---

[5] The Clerk's award already reduced these costs, and the costs of the second 30(b)(6) deposition, by half.

*See* filing 359-1. Werner will be taxed costs in the amount of $24,928.24.

## IV. PREJUDGMENT INTEREST

In accordance with the Court's findings of fact and conclusions of law (filing 353), the EEOC has moved to amend the judgment to include prejudgment interest on the backpay award. Filing 358. The parties have stipulated that $11,060.67 is an appropriate calculation, using the IRS interest rate compounded annually. *Id.* at 2; filing 358-1 at 1. According to the EEOC, the "IRS rate closely tracks the federal prime rate," which other courts have approved as appropriate rates to calculate prejudgment interest. Filing 358 at 2 (citing *Sanders v. Union Pac. R.R. Co.*, No. 4:20-cv-3023, 2022 WL 3446132 at *2 (D. Neb. Aug. 17, 2022); *Arroyo v. Volvo Group N.A., LLC*, No. 12-cv-6859, 2017 WL 2985649 at *10 (N.D. Ill. July 13, 2017)).

In its discretion, the Court will amend the judgment to award $11,060.67 in backpay. *See Cont'l Indem. Co. v. IPFS of N.Y., LLC*, 7 F.4th 713, 717 (8th Cir. 2021); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 313 F.3d 1087, 1093 (8th Cir. 2002) (quoting *Cargill, Inc. v. Taylor Towing Serv., Inc.*, 642 F.2d 239 (8th Cir. 1981)).

## V. CONCLUSION

During the course of this six-year litigation, Werner made inconsistent arguments. It claimed it didn't discriminate against deaf people, but even if it did, that's allowed because actually, inexperienced deaf drivers can't possibly be qualified for an over-the-road trucking job at Werner. Werner presented evidence that it did not, and would not ever, hire *any* deaf driver who had to engage in its placement driver program. At the same time, Werner argued it didn't outright reject any inexperienced deaf applicants . . . contrary to the evidence Werner actually provided. This doublespeak has been difficult for the

21

Court to sort throughout the entire case—from the pleading stage to discovery to trial.

Ultimately, the evidence provided by both the EEOC and Werner indicated that Werner categorically excluded deaf drivers who needed training. That categorical exclusion was properly posed to the jury, and the jury could have found that Werner's hiring decision was justifiable as a business necessity, *see* filing 322 at 12, supportable as Werner exercising its business judgment, *see* filing 322 at 16, or a valid assessment that Robinson in particular, or deaf drivers generally, were not qualified for the job. But, a fully-informed jury believed the EEOC's characterization of deaf drivers, reasonable accommodations, and Werner's training program.

As much as Werner tried to prove that it was manifestly, unreasonably unsafe for deaf drivers to *ever* take their eyes off the road, a jury believed that Robinson could have been accommodated to safely perform the essential functions of the job for which he applied, and Werner failed to make the reasonable accommodations that others in the trucking industry had. A jury found that Robinson was qualified. The type of discrimination alleged in this case is the type of discriminatory hiring decision the ADA is intended to eliminate. *See* 42 U.S.C. § 12101(a)(5). For these reasons, Werner's post-trial motions will be denied.[6]

Accordingly,

IT IS ORDERED:

---

[6] Because Werner's request for a new trial is denied, the Court need not address Werner's arguments about instructing the jury on the EEOC's failure-to-accommodate claim. *See* filing 356 at 18.

1.    Werner's motion for judgment as a matter of law or, in the alternative, motion for a new trial or to *alter or amend the judgment* (filing 355) is granted in part and denied in part.

2.    Werner's motion to review taxation of costs (filing 372) is granted in part and denied in part.

3.    Costs in the amount of $24,928.24 are taxed in favor of the EEOC and against Werner and will be added to the judgment.

4.    The EEOC's motion to amend the judgment (filing 358) is granted.

5.    An amended judgment will be entered.

Dated this 23rd day of May, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge