IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DRIVERS MANAGEMENT, LLC and<br>WERNER ENTERPRISES, INC.,<br><br>Defendants. | CASE NO: 8:18-CV-462<br><br>BRIEF IN OPPOSITION TO<br>DEFENDANTS' MOTION TO STAY<br>PROCEEDINGS TO ENFORCE A<br>JUDGMENT PENDING APPEAL |

    Since at least February 2016, when Werner rejected Victor Robinson, the company has avoided responsibility for its unlawful hiring practices. To encourage Werner's compliance with the ADA, this Court ordered a simple injunctive remedy—for Werner to periodically submit information to the EEOC regarding deaf truck driver applicants. Now Werner seeks a stay of the Court's order, even though the law weighs against a stay. Werner cannot show that it is likely to prevail on the merits, especially since the company merely repeats arguments the Court already rejected. Nor can Werner show that the injunction's reporting requirement would cause irreparable harm to its business, and the company tellingly provides no evidence supporting its claim. Staying enforcement of the injunction would harm the overlapping interests of future deaf applicants and the public in ending Werner's discriminatory hiring practice and requiring it to comply with the ADA. Finally, reports of Werner's current assets alone are insufficient to justify waiving the posting of a supersedeas bond pending Werner's appeal.

1

# ARGUMENT

A. The Court should deny Werner's request to stay the injunctive relief because Werner cannot show a strong likelihood of success on the merits of its appeal, the limited injunction will not irreparably harm Werner, and the injunction serves the interest of others with an interest in the case as well as the public.

After finding Werner intentionally discriminated against Robinson, the Court ordered it to take a simple action to encourage compliance with the ADA: semiannual reporting to the EEOC of information about applicants with FMCSA Hearing Exemptions, including name, contact information, date of application, whether the applicant was hired, the dates of the decision to hire or not hire, the basis for declining any such applicant and whether, if hired, the applicant remained employed with Werner for six months and if not, why. Doc. 377. This modest requirement is substantially less comprehensive than the relief the EEOC sought and even less than what the Court initially ordered. *See* Docs. 349, 376, p. 16. But Werner nonetheless asks this Court to grant it a stay from compliance during its appeal.

In determining whether to issue a stay on injunctive relief, courts balance "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776–77 (1987). The first two factors are "the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Here, no factor weighs in favor of a stay.

1. Werner cannot show a strong likelihood of success on the merits of the appeal because it is only reiterating arguments the Court already rejected.

The burden of showing likelihood of success "is a heavy one and most movants will be unable to meet this standard." *Kuehl v. Sellner*, No. C14-2034, 2016 WL 11644382, *2 (N.D.

Iowa April 29, 2016) (internal quotation omitted). The likelihood of success on the merits of an appeal is not satisfied if the losing party is repeating arguments that the Court has already heard and rejected. *See id.* ("restating arguments made at trial, and subsequently rejected by the Court, does not meet this heavy burden"). Here, Werner repeats arguments it made, and the Court rejected, in its motion for summary judgment, at trial, and in post-trial briefing.

For instance, Werner argues that "[i]n granting Plaintiff's motion for directed verdict on the issue of causation, the Court relied on an out-of-circuit case, *Davidson v. Am. Online Inc.*, 337 F.3d 1179 (10th Cir. 2003)." Doc. 382, p.5. Instead, according to Werner, the Court should rely on a different out-of-circuit case, *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997). But *Matthews* is inapplicable because it does not apply to the facts here, not because the Court is choosing sides in an obvious and well-defined circuit split. *See* Doc. 376, p. 6. And the Court's reliance on *Davidson* was incidental to its holding. Indeed, the Court had no need to cite *Davidson* at all when ruling on the parties' post-trial briefs and rejecting Werner's arguments a final time. Doc. 376, pp. 5–8.

Werner's other arguments for its likelihood of success on appeal are similarly misplaced. In asking for a stay, Werner again raises what it calls "substantial and serious arguments . . . as to whether there was sufficient evidence" for the jury's finding that Robinson was a "qualified individual" under the act. Doc. 382, p.7. But nearly the entire trial was devoted to the subject. The undisputed evidence demonstrated that Robinson completed Werner's own driving school, went on to complete over-the-road training elsewhere, and that at least five other trucking companies successfully put deaf trainees through over-the-road training similar to Werner's. In addition, the EEOC called two expert witnesses who testified how Werner could safely accommodate Robinson and other deaf drivers.

3

Finally, Werner again points to *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555 (1999), and argues that "reasonable minds could differ" on the case's applicability. Doc. 382, p.7. But, as the Court found on summary judgment, *Kirkingburg* is inapplicable. That case dealt with an experimental waiver program and regulatory language that had the "force of law, and . . . contain[ed] no qualifying language about individualized determinations." Doc. 265, p. 7 (citing *Kirkingburg*, 527 U.S. at 570).[1] But Robinson's hearing exemption is not the product of an experimental waiver program, and the regulations now contain the "qualifying language" absent when *Kirkingburg* was decided. Robinson "is physically qualified" under the regulations because he "obtained from FMCSA a medical variance from the physical qualification standards." 49 CFR § 391.41(b)(3)(ii). Put simply, the regulations changed, and Werner's reliance on outdated law undermines the company's arguments about the likelihood of success on appeal.[2]

2. Werner cannot show that enforcing the injunctive relief will cause the company certain and great irreparable harm.

To show irreparable harm, "the injury must be both certain and great; it must be actual and not theoretical." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). "The mere 'possibility' of irreparable injury fails to satisfy the second factor." *Kuehl*, 2016 WL 11644382 at *3 (citing *Nken*, 556 U.S. at 434–35). Werner asserts that complying with the injunction will cause "irreparable administrative injury" to the company.[3] But Werner is a sophisticated

---

[1] The regulation at issue was 49 CFR § 391.41(b)(10) (1998) regarding visual acuity.

[2] Werner also does not believe its own argument. It claims that, under *Kirkingburg*, Hearing Exemption-holders are not qualified because they do not meet the regulatory hearing requirement. Werner, however, hires experienced Hearing Exemption-holders. Tr. Transcript, Vol. IV, 741:8–9; 823:11–13. The only thing Werner claims Robinson could not do is the over-the-road component of its student driver program. Doc. 286, p. 2, ¶ 10 (Pretrial Order). But student and experienced drivers need the same CDL and are governed by the same regulations.

[3] The standard is, of course, "irreparable harm" not "irreparable administrative injury."

4

international company, and its motion provides no insight into how providing limited categories of information to the EEOC twice a year will produce a harmful administrative burden. Werner says compliance with the Court's order will involve "significant cost and time" but offers no explanation—and no evidence—demonstrating the cost or time it will take. If anything, the evidence at trial suggests Werner already collects information about some applicants with Exemptions. Tr. Transcript, Vol. III, 503:12–14 (Testimony of Erin Marsh: "[A]ny exemption, whether it be for deaf or limb or, you know, any waiver, would go in front of legal and safety."); Trial Tr. Vol. IV, 802:13–15 (Testimony of Jaime Hamm: "Q. And when an applicant has an exemption, is the applicant required to provide a copy of the exemption to Werner? A. They are.").

While it will undoubtedly take some effort for Werner to provide information to the EEOC, the Court's injunction is ultimately relatively modest. Rather than requiring Werner to make changes to its business practice that the EEOC requested, the Court ordered Werner to provide information only. From this litigation, it is apparent that Werner has centralized recruiting with standard procedures in place for contacting applicants and gathering information from them. Werner has no evidence that reporting the information will result in irreparable harm.

3. Delaying the Court's injunctive relief could injure other deaf drivers who apply to Werner during the pendency of the appeal.

While the EEOC brought this case to seek relief for a single driver, other drivers with FMCSA Hearing Exemptions have an interest in the outcome of these proceedings. Werner admits it receives applications from other deaf drivers and that it will reject them if they do not have sufficient experience to bypass its over-the-road training. We do not know how many deaf applicants will pass through Werner's system over the course of a year (or longer) stay, but Werner asserts in support of its motion that it receives over a thousand applications a week, and

it is undisputed that some of its applicants possess Hearing Exemptions. Werner points out that the EEOC did not identify at trial another deaf driver who it allegedly discriminated against in hiring. But the converse it also true—Werner did not identify any inexperienced deaf drivers who it did *not* discriminate against in hiring. Instead, Werner admitted throughout this litigation that it will not hire inexperienced deaf drivers because they are deaf. The fact that the EEOC did not specifically identify other victims at trial is irrelevant. Without the Court's injunction, Werner has no incentive to comply with the law and provide equal employment opportunities to otherwise qualified inexperienced driver applicants regardless of their ability to hear.

    4.   The public interest will be served by immediate implementation of the Court's order.

There is substantial public interest in ensuring equal employment opportunities for disabled workers, including deaf workers. *See* Americans with Disabilities Act, 42 U.S.C. § 12101 (1990) ("the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals"). The EEOC serves an important role in protecting the public interest through enforcement of the ADA, and the Court's order promotes that role by ensuring the agency can monitor Werner's compliance with the ADA's requirements. The EEOC's role is particularly crucial in combating hiring discrimination because applicants often do not know the reason for their rejection, nor will they be aware of evidence that an unlawful consideration motivated the rejection. Often, the general public is unaware that laws such as the ADA protect them from discrimination, and even if they have knowledge, they may lack the time and resources to pursue a claim. The EEOC is better positioned to identify and remedy discriminatory conduct. Here, the public interest demands immediate implementation of the Court's order.

II.     The Court should, in its discretion, require Werner to post a supersedeas bond pending the outcome of Werner's appeal.

"At any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). Such a bond "secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir. 1979). Werner admits that posting a supersedeas bond is practicable and possible, but argues the Court has discretion to waive bond because its "ability to pay the judgment is so plain that the cost of a bond would be a waste of money." *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988).[4] The EEOC does not dispute the accuracy of Werner's annual reports. In considering whether to waive the bond, however, the Court can also consider "the complexity of the collection process" and "the amount of time required to obtain a judgment after it is affirmed on appeal." *Dillon*, 866 F.2d at 904. Werner points to its annual reports but does not propose a mode of payment that would guarantee it will ultimately pay the judgment without a "cumbersome and time consuming" process. *See Skrovig v. BNSF Rwy. Co.*, No. Civ. 10-4022, 2012 WL 2505749, *3 (D.S.D. June 28, 2012) (denying BNSF waiver of supersedeas bond even when the company's net railway operating income was over $3 billion). Werner does not "give any indication that the collection process will not be lengthy and complicated." *See id.* at *3 (quoting *Sorrano v. New York Life Insurance Co.*, 96 C 7822, 2006

---

[4] Werner cites several criteria that a court may consider in deciding whether to waive a bond but argues only this one point in its briefing. *See Dillon v. City of Chicago,* 866 F.2d 902, 904–05 (7th Cir. 1988).

WL 1005902 (N.D. Ill. April 13, 2006)). Having to implement a collections process would be time-consuming and an avoidable waste of public resources.[5]

Further, appeals take time and, following rejection by the Eighth Circuit, the company may seek redress from the United States Supreme Court, causing further delay. It may be 2026 by the time this matter is fully resolved, and Werner's assertion that it has the resources to pay today does not account for years into the future. While the Court may have no doubt about Werner's ability to pay the full amount of the judgment today, it "has no crystal ball to predict what the future may hold 18 to 24 months from now when the appellate process may be completed." *Skrovig*, 2012 WL 2505749 at *4. Even a guarantee of continued existence of the entity and financial capability to cover the judgment can be insufficient to avoid posting a supersedeas bond, absent other assurances. *See Hirsch v. Lecuona*, 8:06CV13, 2008 U.S. Dist. LEXIS 72896, **3–4 (D. Neb. Sept. 23, 2008) ("the plaintiff's ability to recover the judgment would be hampered by a stay without some assurance that [defendant] intends to pay the judgment should it be affirmed on appeal"); *Skrovig*, 2012 WL 2505749 at *4 ("Even Fortune 500 companies can engage in questionable accounting practices, be forced to restate their financials and declare bankruptcy."). The Court has wide discretion in determining how to protect the creditor's rights. In *Hirsch v. Lecuona*, for example, collection was stayed pending appeal if the State of Nebraska filed "an unequivocal undertaking, without reservation or

---

[5] Werner's argument repeatedly cites to a ruling in what it claims was a nearly "identical" case, *Petrone v. Werner Enters., Inc.*, No. 8:11-cv-401 (D. Neb.). The factual differences between the two cases are, however, vast. Although it involved the same defendants, Werner was the prevailing party, and the bond would have been for sanction money the plaintiffs paid to Werner, but the sanction had been reversed. This belies Werner's assertion that, in *Petrone*, "the court was faced with almost identical facts."

condition, to pay any judgment which may ultimately be affirmed on appeal." 2008 U.S. Dist. LEXIS 72896 at *4 (in the context of the State indemnifying a judgment for acts by its official).

The EEOC does not object to the Court staying enforcement for thirty days following approval of a bond amount covering sufficient securities to secure the final judgment, including interest and costs.

## CONCLUSION

All arguments for Werner's appeal have been considered and rejected, some of them repeatedly, by this Court. Werner cannot demonstrate a strong likelihood of success on appeal, and the simple reporting ordered by the Court will not inflict substantial cost or harm to the company, while it will advance the interests of future deaf applicants and the public. Werner posting a supersedeas bond or other security in the judgment amount pending its appeal is within the discretion of the Court, and such a bond is warranted in this case. Given Werner's current resources, the bond would guard against any future events that could impact the EEOC's ability to collect on the judgment. For these reasons, the Court should deny Werner's request to stay compliance with the ordered injunctive relief and require Werner to post a bond pending its appeal.

Respectfully submitted,

*/s/ Meredith S. Berwick*
Meredith Berwick, MO Bar No. 64389
Equal Employment Opportunity Commission
1222 Spruce Street, Room 8.100
St. Louis, MO 63103
Phone: (314) 798-1909
Fax: (314) 539-7895
meredith.berwick@eeoc.gov

9

Joshua M. Pierson, KS Bar No. 29095
Lauren M. Wilson, FL Bar No. 1024850
Equal Employment Opportunity Commission
400 State Avenue, Suite 905
Kansas City, Kansas 66101
Phone: (913) 359-1807
Facsimile: (913) 551-6957
joshua.pierson@eeoc.gov
lauren.wilson@eeoc.gov

*Attorneys for Plaintiff EEOC*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief contains 3127 words, which includes all text, including the caption, headings, footnotes, and quotations, as determined by Microsoft Word for Office 365 ProPlus.

*/s/ Meredith S. Berwick*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Meredith S. Berwick*